No. 24-542

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

KIM RHODE; GARY BRENNAN; CORY HENRY; EDWARD JOHNSON; SCOTT LINDEMUTH; RICHARD RICKS; DENISE WELVANG; ABLE'S SPORTING, INC., A TEXAS CORPORATION; AMDEP HOLDINGS, LLC, A FLORIDA LIMITED LIABILITY COMPANY D/B/A AMMUNITION DEPOT; R & S FIREARMS, INC., AN ARIZONA CORPORATION D/B/A SAM'S SHOOTERS EMPORIUM; CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, A CALIFORNIA CORPORATION,
*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA
*Defendant-Appellant.*

———————————

**On Appeal from the United States District Court
for the Southern District of California**
No. 3:18-cv-00802-BEN-JLB
The Honorable Roger T. Benitez, Judge

———————————

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR AN IMMEDIATE ADMINISTRATIVE STAY AND STAY PENDING APPEAL

### IMMEDIATE RELIEF REQUESTED

———————————

ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General
JOHN D. ECHEVERRIA
MEGHAN H. STRONG
Deputy Attorneys General

CHRISTINA R.B. LÓPEZ
Deputy Attorney General
State Bar No. 312610
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6106
  Fax: (916) 324-8835
  E-mail: Christina.Lopez@doj.ca.gov
*Attorneys for Defendant-Appellant*

January 31, 2024

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................... 1

Background ............................................................................................... 4

I.　　The Ammunition Laws ............................................................... 4

II.　　Procedural History ................................................................... 8

　　　A.　　Pre-*Bruen* Proceedings ..................................................... 8

　　　B.　　Post-*Bruen* Proceedings .................................................... 9

Argument ................................................................................................ 11

I.　　The Attorney General  Is Likely to Succeed on the Merits .......... 12

　　　A.　　The Ammunition Laws Comport With the Second Amendment ........ 12

　　　B.　　The Ammunition Laws Do Not Violate the Dormant Commerce
　　　　　　Clause ............................................................................ 18

　　　C.　　The Ammunition Laws Are Not Preempted by Federal Law ............. 19

II.　　The Equitable Factors Weigh Strongly in Favor of a Stay ............ 21

Conclusion .............................................................................................. 24

Statement of Related Cases ...................................................................... 25

Certificate of Compliance ........................................................................ 26

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abbassi v. INS*
143 F.3d 513 (9th Cir. 1998) ...............................................................11

*Bauer v. Becerra*
858 F.3d 1216 (9th Cir. 2017) ...............................................................7

*Boland v. Bonta*
9th Cir. No. 23-55276 (Mar. 31, 2023)..................................................2

*Coal. for Econ. Equity v. Wilson*
122 F.3d 718 (9th Cir. 1997) ...............................................................21

*Dist. of Columbia v. Heller*
554 U.S. 570 (2008)........................................................12, 13, 16, 17

*Duncan v. Bonta*
19 F.4th 1087 (9th Cir. 2021) .............................................................14

*Duncan v. Bonta*
9th Cir. No. 23-55805 (Oct. 10, 2023) ..................................................2

*Fresno Rifle & Pistol Club, Inc. v. Van de Kamp*
746 F. Supp. 1415 (E.D. Cal. 1990) ....................................................21

*FTC v. Qualcomm Inc.*
935 F.3d 752 (9th Cir. 2019) .................................................................2

*Gen. Motors Corp. v. Tracy*
519 U.S. 278 (1997)..............................................................................18

*Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*
512 F.3d 1112 (9th Cir. 2008) .............................................................21

*Hilton v. Braunskill*
481 U.S. 770 (1987)..............................................................................11

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Humane Soc'y of U.S. v. Gutierrez*
  558 F.3d 896 (9th Cir. 2009) ................................................................11

*Jackson v. City & Cnty. of S.F.*
  746 F.3d 953 (9th Cir. 2014) ...............................................................12

*Kanter v. Barr*
  919 F.3d 437 (7th Cir. 2019) ..............................................14, 15, 16

*Leiva-Perez v. Holder*
  640 F.3d 962 (9th Cir. 2011) ...............................................................11

*Maryland v. King*
  567 U.S. 1301 (2012) ............................................................................2

*Nat'l Pork Producers Council v. Ross*
  598 U.S. 356 (2023) .......................................................................18, 19

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*
  434 U.S. 1345 (1977) ..........................................................................21

*New York State Rifle and Pistol Association, Inc. v. Bruen*
  597 U.S. 1 (2022) .......................................................................*passim*

*Nken v. Holder*
  556 U.S. 418 (2009) ..............................................................................2

*Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda*
  768 F.3d 1037 (9th Cir. 2014) .............................................................18

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*
  550 U.S. 330 (2007) ............................................................................19

*United States v. Skoien*
  614 F.3d 638 (7th Cir. 2010) ...............................................................16

*United States v. Vongxay*
  594 F.3d 1111 (9th Cir. 2010) .............................................................14

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Winter v. Nat'l Res. Def. Council, Inc.*
    555 U.S. 7 (2008)........................................................................11

**STATUTES**

United States Code, Title 18
    § 922(g)...................................................................................4
    § 923(c)..................................................................................20
    § 926A.................................................................3, 19, 20, 21
    § 927......................................................................................20

California Code of Regulations, Title 11
    § 4282.................................................................................6, 7
    § 4282(a)..................................................................................6
    § 4282(c)..................................................................................6
    § 4283..................................................................................5, 6
    § 4283(a)..................................................................................6
    § 4283(b)..................................................................................6
    § 4283(c)..................................................................................6
    § 4284......................................................................................8

An Act Regulating Crimes and Punishments, § 282, 1868 Kan. Sess.
    Laws 317, 378.........................................................................15

Assembly Bill No. 1621.................................................................18

Proposition 63
    §§ 2.5-2.8..................................................................................4
    §§ 2.6-2.7..................................................................................4

Senate Bill 1235 (2016 Cal. Stat., ch. 55)....................................4

California Penal Code
    § 11106....................................................................................6
    § 28180....................................................................................6
    § 28180(a)................................................................................7
    § 29800....................................................................................4
    § 29805....................................................................................4

iv

## TABLE OF AUTHORITIES
### (continued)

Page

§ 30000................................................................................7
§ 30005................................................................................7
§ 30312................................................................................4
§ 30312(a)............................................................................1
§ 30312(b)........................................................................1, 5
§ 30314.........................................................................*passim*
§ 30314(a)............................................................................1
§ 30352...........................................................................4, 5
§ 30352(a)............................................................................1
§ 30352(b)........................................................................1, 5
§ 30352(c)........................................................................1, 5
§ 30352(d)........................................................................1, 5
§ 30370...........................................................................1, 5
§ 30370(a)............................................................................5
§ 30370(a)(1)........................................................................6
§ 30370(a)(3).....................................................................5, 6
§ 30370(b)............................................................................8
§ 30370(d)........................................................................6, 8
§ 30370(e)............................................................................6
§ 30385(d)............................................................................4
§ 32310...............................................................................25

California Welfare and Institutions Code
§ 8103................................................................................4

## CONSTITUTIONAL PROVISIONS

United States Constitution
Second Amendment....................................................2, 8, 9, 12

## OTHER AUTHORITIES

132 Cong. Rec. H4102-03 (June 24, 1986) .................................20

87 Fed. Reg. at 24662 ............................................................17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Journals of the Continental Congress 1774-1789* (Worthington
    Chauncey Ford Ed., 1906) (Mar. 14, 1776)..................................................15, 16

# EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR AN IMMEDIATE ADMINISTRATIVE STAY AND A STAY PENDING APPEAL

## INTRODUCTION

The Attorney General respectfully requests that the Court grant a stay pending appeal of the district court's permanent injunction and judgment, and an immediate administrative stay until this motion is resolved.  The district court enjoined the State's longstanding restrictions requiring that (1) ammunition transactions take place in a face-to-face interaction at a licensed ammunition vendor, (2) purchasers submit to a background check before the ammunition sale or transfer may be completed, (3) purchasers demonstrate proof of lawful presence in this country, and (4) ammunition vendors report certain information to the California Department of Justice.  Cal. Penal Code §§ 30312(a), 30312(b), 30314(a), 30370, 30352(a)-(d) (the "Ammunition Laws").  Together, the Ammunition Laws serve to prevent individuals who are prohibited from purchasing, possessing, or owning a firearm or ammunition from purchasing any ammunition.  The district court's judgment would make it possible for such individuals to purchase ammunition for the first time in years.  Because the district court declined to grant even a temporary stay of its judgment, and vendors are already advertising their willingness to fulfill ammunition orders without complying with the Ammunition

1

Laws while the injunction remains in effect, immediate interim administrative relief is necessary to preserve the status quo.

The purpose of a stay is to "simply suspend[] judicial alteration of the status quo," *FTC v. Qualcomm Inc.*, 935 F.3d 752, 757 (9th Cir. 2019), "ensuring that appellate courts can responsibly fulfill their role in the judicial process," *Nken v. Holder*, 556 U.S. 418, 427 (2009). Because an injunction barring enforcement or application of a duly enacted statute poses a substantial risk of harming the public interest, courts routinely issue stays pending appeal when a statute is enjoined. *See, e.g.*, *Maryland v. King*, 567 U.S. 1301, 1302–03 (2012); Order, *Boland v. Bonta*, 9th Cir. No. 23-55276 (Mar. 31, 2023); Order, *Duncan v. Bonta*, 9th Cir. No. 23-55805 (Oct. 10, 2023). Indeed, this Court previously stayed enforcement of the district court's preliminary injunction in this case to preserve the status quo during appeal, after the district court denied a stay. 9th Cir. No. 20-55437, Dkt. 13-1; Dist. Ct. Dkt. 62. The same considerations support the issuance of a stay now, given the strength of the Attorney General's merits arguments and because the equitable considerations overwhelmingly favor maintaining the status quo until this Court has ruled on those arguments.

On the merits of the Second Amendment claim, the district court purported to apply the framework in *New York State Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), but ignored many critical lessons of that decision. While the

2

Supreme Court has reiterated that background checks are constitutional, the district court struck down the Ammunition Laws following a flawed application of *Bruen*'s standards.  Under a proper application of *Bruen*, the Attorney General is likely to succeed on the merits on appeal, and at minimum has presented substantial questions on the merits for this Court's consideration.  The Attorney General is also likely to succeed on Plaintiffs' dormant Commerce Clause claim because the Ammunition Laws are not discriminatory, and on the claim that 18 U.S.C. § 926A preempts California Penal Code section 30314 because § 926A does not apply to ammunition.

The equitable considerations also overwhelmingly favor a stay.  Prohibited persons are currently free to purchase ammunition in the State for the first time in years, jeopardizing public safety.  Even if the challenged provisions of the ammunition laws are later upheld, it would be difficult for the State to reverse those transactions, identify prohibited persons who purchased ammunition during the appeal in violation of the ammunition laws, and restore the status quo.

The Court should maintain the status quo during the pendency of this appeal, while the State makes its case on the merits.  If the Court denies the motion, the Attorney General requests a 14-day administrative stay from the date of the denial to allow the State to consider whether to seek further relief.

3

# BACKGROUND

## I.  THE AMMUNITION LAWS

California's Ammunition Laws guard against the purchase of ammunition by prohibited persons, by requiring face-to-face transactions and background checks.

Federal and state law prohibit certain groups of people, including violent felons, from possessing firearms and ammunition.  *See, e.g.*, 18 U.S.C. § 922(g); Cal. Penal Code §§ 29800, 29805; Cal. Welf. & Inst. Code § 8103.  Before the passage of the Ammunition Laws, loopholes in the State's gun safety laws allowed prohibited persons to obtain ammunition to perpetuate gun violence.  Prop. 63 §§ 2.5-2.8.  With the passage of Proposition 63, California voters decided that the law should "require background checks for ammunition sales just like gun sales[.]" Prop. 63 §§ 2.6-2.7.

Prop. 63 amended the California Penal Code to regulate the sale or transfer of ammunition.[1]  As of January 1, 2018, ammunition sales, deliveries, or transfers in California must be conducted by, or processed through, a licensed ammunition vendor in a face-to-face transaction.  Cal. Penal Code §§ 30312, 30352, 30385(d).  Californians are free to purchase ammunition online or from other lawful sources that do not have a physical location in California, so long as those purchases are

---

[1] References to Prop. 63 are to the law as amended by Senate Bill 1235 (2016 Cal. Stat., ch. 55).

4

first received and processed by a California-licensed ammunition vendor. *See id.*
§ 30312(b).  Similarly, California residents may bring home ammunition obtained
from outside the State, if they first deliver it to a licensed ammunition vendor for
processing. *Id.* § 30314.

As of July 1, 2019, licensed ammunition vendors must also conduct
background checks before selling or transferring ammunition to a California buyer,
Cal. Penal Code §§ 30352, 30370, and must submit certain information about the
purchaser to the California Department of Justice (the "Department"), Cal. Penal
Code §§ 30352(b)–(d), 30370(a).  In the first month the background check
requirement was in effect, it stopped over 100 prohibited persons from purchasing
ammunition.  López Decl. Ex. 3 ¶ 49.  From July 2019 through January 2020, it
thwarted over 750 prohibited persons from purchasing ammunition. *See id.* Ex. 6
¶ 6 & tables 1.1, 2.1.  The background check requirement has prevented
approximately 200 prohibited persons from purchasing ammunitions each year
since. *See id.* ¶¶ 39–42.

There are two types of background checks commonly used for ammunition
purchases: the "Basic Ammunition Eligibility Check" and the "Standard
Ammunition Eligibility Check."  Basic Checks cost $19 and authorize the purchase
of any quantity of ammunition for one single transaction. *See* Cal. Penal Code
§ 30370(a)(3); Cal. Code Regs., tit. 11, § 4283.  To run a Basic Check, the vendor

5

submits the purchaser's information to the Department through the online Dealer Record of Sale Entry System ("DES") by swiping the purchaser's California driver's license or other government ID card (generally, "ID").  Cal. Penal Code § 28180.  DES then determines whether the purchaser is prohibited from purchasing ammunition by comparing the information against four state databases. Cal. Code Regs., tit. 11, § 4283(b)–(c); López Decl. Ex. 4 ¶ 13.  If the database search yields no hits, the transaction is approved, and the vendor may proceed with the sale.  Cal. Penal Code § 30370(a)(3); Cal. Code Regs., tit. 11, § 4283(a).  If the purchaser's information results in a hit, a Department analyst will manually check whether the purchaser is in fact prohibited from purchasing ammunition.  López Decl. Ex. 4 ¶ 14.  Purchasers who are not prohibited are approved to take possession of the ammunition, but purchasers who are prohibited are denied and the vendor cannot transfer ammunition to them.  Cal. Penal Code § 30370(d).

Standard Checks currently cost $1 and streamline the background check process for purchasers who have up-to-date firearms records in the Department's Automated Firearms System ("AFS"), which keeps a record of sales, transfers, and ownership of firearms.  Cal. Penal Code §§ 11106, 30370(a)(1), (e); Cal. Code Regs., tit. 11, § 4282  To run a Standard Check, the vendor enters the prospective purchaser's information into DES by swiping the person's ID.  Cal. Code Regs.,

6

tit. 11, § 4282(a), (c); Cal. Penal Code § 28180(a).  DES then searches for a

matching record in the AFS.

In transactions where the prospective purchaser's information matches a

record in the AFS, the background check is processed almost instantaneously, and

the entire transaction takes a matter of minutes.  López Decl. Ex. 3 ¶¶ 53–69.  If

the information matches a record in the AFS, DES will check the purchaser's

information against California's Armed Prohibited Persons System.  López Decl.

Ex. 3 ¶ 19.  That system "enforces California's prohibitions on firearm possession

by identifying 'persons who have ownership or possession of a firearm' yet who,

subsequent to their legal acquisition of the firearm, have later come to 'fall within a

class of persons who are prohibited from owning or possessing a firearm' due to a

felony or violent misdemeanor conviction, domestic violence restraining order, or

mental health-related prohibition."  *Bauer v. Becerra*, 858 F.3d 1216, 1219 (9th

Cir. 2017) (quoting Cal. Penal Code §§ 30000, 30005).  If the purchaser's

identifying information does not appear in the Armed Prohibited Persons System,

the transaction is approved.  *See* Cal. Code Regs., tit. 11, § 4282.  A hit in the

7

Armed Prohibited Persons System results in a denial, and the purchaser may not take possession of the ammunition. Cal. Penal Code § 30370(b), (d).[2]

If the information entered in DES does not match a record in the AFS, the transaction is rejected. Cal. Penal Code § 30370(d). Purchasers who are rejected may still seek to purchase ammunition by 1) passing a Basic Check; 2) submitting a Firearms Ownership Report to the Department or purchasing a firearm to create a new record in the AFS that can then be used for Standard Checks in future ammunition transactions, *see* Cal. Code Regs.,tit. 11, § 4284; or 3) updating their records in the AFS using the California Firearms Application Reporting System on the Department's website. López Decl. Ex. 3 ¶ 20. Many purchasers who have had a Standard Check rejected have gone on to purchase ammunition. *Id.* Ex. 6 ¶¶ 43–52 & table 2.3.

## II. PROCEDURAL HISTORY

### A. Pre-*Bruen* Proceedings

Plaintiffs raise Second Amendment challenges to California's Ammunition Laws. Dist. Ct. Dkt. 1. After the Ammunition Laws' background check requirements went into effect in July 2019, Plaintiffs moved for a preliminary

---

[2] People who have a transaction denied because the Department's records show they are prohibited receive a letter after the Standard Check is complete providing details about how they can contest that designation. López Decl. Ex. 3 ¶ 5, Exs. A–B.

injunction.  Dist. Ct. Dkt. 32.  On April 23, 2020, the district court preliminarily enjoined enforcement of the Ammunition Laws.  Dist. Ct. Dkt. 60.  The court denied Defendant's request for stay of the injunction the next day.  Dist. Ct. Dkt. 62.

Defendant appealed the judgment and obtained an administrative stay and then a stay pending appeal from this Court.  9th Cir. No. 20-55437, Dkts. 4, 13-1.  While the appeal was pending, the Supreme Court decided *Bruen*.   After ordering supplemental briefing, this Court vacated the district court's preliminary injunction and "remanded to the district court for further proceedings consistent with the United States Supreme Court's decision in [*Bruen*]."  9th Cir. No. 20-55437, Dkt. 110.

### B.    Post-*Bruen* Proceedings

After remand, the district court presided over a consolidated hearing for this case and three other cases raising Second Amendment challenges to other California laws: *Miller v. Bonta*, No. 3:19-cv-1537-BEN-JLB (challenge to California's 30-year-old Assault Weapons Control Act); *Duncan v. Bonta*, No. 3:17-cv-1017-BEN-JLB (challenge to large-capacity magazine restrictions); and *Fouts v. Bonta*, No. 3:19-cv-1662-BEN-JLB (challenge to restrictions on billy clubs).  After the hearing, the court directed Defendant to create "a survey or spreadsheet of relevant statutes, laws, or regulations in chronological order"

9

relevant to *Bruen*'s standards and ordered the parties to submit contemporaneous supplemental briefing.  Dist. Ct. Dkt. 77.  Defendant filed surveys identifying analogous regulations throughout the relevant time periods, López Decl. Ex. 9, along with supplemental briefing, Dist. Ct. Dks. 81, 82, 86.

The district court set a hearing on Plaintiffs' Motion for Preliminary Injunction and stated that it intended to consolidate the hearing with a trial on the merits.  Dist. Ct. Dkt. 88.  At the hearing on July 17, 2023, the district court heard argument and ordered further briefing and discovery.  Dist. Ct. Dkt. 90.

On August 16, 2023, Defendant submitted expert declarations regarding the history and tradition of background checks and analogous regulations of firearms and ammunition.  Dist. Ct. Dkt. 92; López Decl. Exs. 10–12.  Defendant also submitted additional information requested by the court regarding the background check rates and processing times and persons identified as prohibited persons, as well as additional briefing.  Dist. Ct. Dkt. 92, 95, 100, 101; López Decl. Exs. 13, 14.

On January 31, 2024, the court issued its decision and permanently enjoined the Attorney General from enforcing the Ammunition Laws.  Dist. Ct. Dkts. 105, 106.[3]  Defendant immediately renewed a request for a stay pending appeal in the

---

[3] Although the decision and judgment are dated January 30, 2024, they were not entered on the docket or served on the parties until the morning of January 31.

district court and filed a notice of appeal. Dist. Ct. Dkts. 107, 108.  After the renewed stay request was denied, Dist. Ct. Dkt. 109, Defendant filed this emergency motion in this Court to stay the judgment.

## ARGUMENT

A movant seeking a stay pending appeal "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest." *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009) (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  To obtain a stay, the party "need not demonstrate that it is more likely than not that they will win on the merits" or that "ultimate success is probable." *Leiva-Perez v. Holder*, 640 F.3d 962, 966–67 (9th Cir. 2011).  Rather, a "substantial case on the merits" or "serious legal questions" will suffice "so long as the other factors support the stay." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987) and *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)).  While this is not the place for an exhaustive discussion of the merits, the Attorney General readily satisfies the standard for a stay pending appeal.

## I.   THE ATTORNEY GENERAL  IS LIKELY TO SUCCEED ON THE MERITS

The Attorney General is likely to succeed on the merits of this appeal—and the legal questions are surely of sufficient seriousness to justify a stay pending appeal.

### A.   The Ammunition Laws Comport With the Second Amendment.

In *Bruen*, the Supreme Court reaffirmed that the Second Amendment is not a "regulatory straightjacket." *Bruen*, 142 S. Ct. at 2133.  The Court also reiterated that the Second Amendment does not protect an unfettered right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 2128 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).  And Justice Kavanaugh, joined by Chief Justice Roberts, wrote separately to underscore the "limits of the Court's decision," explaining that the Second Amendment "allows a 'variety' of gun regulations," and reiterating *Heller*'s pronouncement that one of the presumptively lawful category of laws includes those "imposing conditions and qualifications on the commercial sale of arms." *Id.* at 2161-62 (Kavanaugh, J., concurring).  The district court's application of *Bruen* was flawed in several respects.

First, *Bruen* reaffirmed that the Second Amendment does not forbid requirements or conditions applied to firearms use.  To the contrary, the purchasing of ammunition "may be subjected to governmental restrictions." *Jackson v. City &*

*Cnty. of S.F.*, 746 F.3d 953, 970 (9th Cir. 2014). *Bruen* did not change this. Indeed, several Justices emphasized that the decision in *Bruen* did not "disturb[] anything" that the Court previously said "about restrictions that may be imposed on the possession or carrying of guns." 597 U.S. at 72 (Alito, J., concurring); *id.* at 80–81 (Kavanaugh, J., concurring). Rather, *Bruen* explicitly acknowledged that "nothing" in its analysis casts doubt on the constitutionality of licensing regimes that require applicants to "undergo a background check or pass a firearms safety course" as a condition of carrying firearms in public. *Id.* at 38 n.9. Concurring justices confirmed that various regulatory measures described in *Heller*—which include but are not limited to laws "imposing conditions and qualifications on the commercial sale of arms" and "longstanding prohibitions on the possession of firearms by" prohibited persons—remain "presumptively lawful." *Id.* at 81 (Kavanaugh, J., concurring) (internal quotation marks omitted).

These are the exact types of regulations that the Ammunition Laws codify. The core requirement of the Ammunition Laws is to require purchasers to undergo a background check. The remaining requirements are all intended to prevent purchasers from avoiding that central obligation. *Bruen* confirmed that States may impose such conditions, which are "designed to ensure . . . that those bearing arms … are, in fact, 'law abiding responsible citizens.'" *Bruen,* 597 U.S. at 38 n.9.

13

Even if the Ammunition Laws regulated presumptively protected conduct, they are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. As Defendant has shown through surveys of historical analogues and expert reports, governments have long restricted certain prohibited persons from carrying or possessing weapons, while allowing responsible, law-abiding citizens to keep and bear certain weapons for self-defense purposes. The Ammunition Laws are a part of that tradition. Courts have recognized that these laws comprise a robust tradition of firearm regulation that can justify contemporary restrictions on the ability of certain individuals to acquire and possess firearms and ammunition. *See, e.g.*, *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010) (noting that "the right to bear arms was 'inextricably . . . tied to' the concept of a 'virtuous citizen[ry]' . . . and that 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals)'"); *Duncan v. Bonta*, 19 F.4th 1087, 1157 & n.27 (9th Cir. 2021) (Bumatay, J., dissenting) ("Prohibiting the possession of arms by those found by the state to be dangerous, like violent criminals, dates to the Founding." (citing *Kanter v. Barr*, 919 F.3d 437, 464 (7th Cir. 2019) (Barrett, J., dissenting)), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022), *vacated and remanded*, 49 F.4th 1228 (9th Cir. 2022). As explained by then-Judge Barrett, history "support[s] the proposition that the state can take the right to bear arms away from a category of people that it deems dangerous."

14

*Kanter*, 919 F.3d at 464 (Barrett, J., dissenting). This power "is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court. Instead the legislature can make that judgment on a class-wide basis. And it may do so based on present-day judgments about categories of people whose possession of guns would endanger the public safety." *Id.* (internal quotation marks and citations omitted).

The Attorney General provided numerous examples of historical precursors that fall within this tradition. Those precursors include founding-era laws disarming loyalist and other citizens who opposed the American cause or refused to swear allegiance to the new Republic. *See* 4 *Journals of the Continental Congress 1774-1789*, at 205 (Worthington Chauncey Ford Ed., 1906) (Mar. 14, 1776) (recommending that the colonies "disarm[]" all persons "who are notoriously disaffected to the cause of America, or who have not associated, and shall refuse to associate, to defend, by arms, these United Colonies"). During Reconstruction, loyalty oaths were again imposed as a condition to exercise a range of constitutional rights, including accessing firearms and ammunition. López Decl. Ex. 11 ¶¶ 7–20; *cf.* An Act Regulating Crimes and Punishments, § 282, 1868 Kan. Sess. Laws 317, 378 (prohibiting any person "who has ever borne arms against the government of the United States" from carrying "any pistol,

15

bowie-knife, dirk or other deadly weapon"). When compared with their historical counterparts, the Ammunition Laws are a continuation of this historical tradition and impose a comparably minimal burden on the right of "law-abiding, responsible citizens," *id.* at 26 (quoting *Heller*, 554 U.S. at 635), to acquire ammunition.

This history and tradition is confirmed by *Heller* and *Bruen*. Even though the first category of prohibited persons designated under federal law (convicted felons) did not appear until 1938,[4] the Supreme Court has indicated that 20th century "prohibitions on the possession of firearms by felons and the mentally ill," as well as "conditions and qualifications on the commercial sale of arms," are examples of "presumptively lawful regulatory measures." *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626–27 & n.26). *Bruen* likewise endorsed background checks based on objective criteria to ensure that prohibited people are not authorized to carry firearms in public. 597 U.S. at 38 n.9. Such requirements are "'lineal descendants' of historical laws banning dangerous people from possessing guns." *Kanter*, 919 F.3d at 464 (Barrett, J., dissenting). The Supreme Court's endorsement of background checks for the public carry of firearms and other conditions and qualifications on the commercial sale of arms logically extends to ammunition purchases as well.

---

[4] *See United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc).

16

As with the requirements identified as presumptively constitutional in *Heller* and *Bruen*, California's Ammunition Laws ensure that people prohibited under federal and state law from possessing firearms or ammunition are unable to acquire ammunition. The Ammunition Laws are consistent with the Second Amendment's plain text and the historical tradition—dating back to the founding—of disarming groups of people perceived to be dangerous or unvirtuous.

The district court would require governments to identify a "historical *twin*" or a "dead ringer," which the text-and-history standard expressly does not require. *Bruen*, 597 U.S. at 30. And the district court did not meaningfully engage with the "more nuanced approach" required under *Bruen*, even though additional care is required where a case "implicat[es] . . . dramatic technological changes." *Id.* at 27. Background checks (in their modern form) became feasible only after the development of a reliable and fast internet, computer databases, and other technological changes that enable the accurate and efficient processing of ammunition sales. The Ammunition Laws also address the modern-day proliferation of "ghost guns": self-assembled, fully-functional firearms that are typically made from user-friendly kits that can be purchased online, and without the vendor running a background check. 87 Fed. Reg. at 24662. As the California Legislature has recognized, ghost guns have become "a leading source of crime guns, including firearms built by people such as minors who cannot legally possess

17

or acquire firearms in our state, as well as individuals seeking to conceal their

involvement in firearm trafficking and other crimes."  Assembly Bill No. 1621; *see*

*also* López Decl. Ex. 15.  While ghost guns may allow persons prohibited from

possessing firearms to evade a background check, the Ammunition Laws serve as a

backstop by imposing an additional background check requirement that may

prevent such firearms from being used in the first instance.

**B.    The Ammunition Laws Do Not Violate the Dormant Commerce Clause**

The Attorney General is also likely to succeed on Plaintiffs' dormant

Commerce Clause claim.  The Supreme Court has observed that "'[e]xtreme

caution' is warranted" in cases involving claims that a state law violates the

dormant Commerce Clause.  *Nat'l Pork Producers Council v. Ross* (*National

Pork*), 598 U.S. 356, 390 (2023) (quoting *Gen. Motors Corp. v. Tracy*, 519 U.S.

278, 310 (1997)).  In *National Pork*, the Supreme Court reaffirmed that the

"concern with preventing purposeful discrimination against out-of-state economic

interests is what lies at the "very core" of dormant Commerce Clause

jurisprudence.  *Id.* at 369, 371.

The Ammunition Laws are not discriminatory.  Laws that apply equally to in-

state and out-of-state entities do not discriminate against interstate commerce.  *Id.*

at 369-70; *Pharm. Research & Mfrs. of Am. v. Cnty. of Alameda*, 768 F.3d 1037,

1042 (9th Cir. 2014) (laws that treat "all private companies exactly the same" do

18

not discriminate against interstate commerce) (quoting *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342 (2007))). By their terms, the Ammunition Laws apply equally to all entities, regardless of their location. To comply with the Ammunition Laws, any vendor—whether in- or out-of-state—must obtain a license and process sales in a face-to-face transaction via a background check—or find a licensed vendor to process the transaction for him. And the Ammunition Laws do not bar out-of-state vendors from selling to California residents; they simply require out-of-state vendors to comply with the same requirements in-state vendors must abide by. Because the Ammunition Laws "impose[] the same burdens on in-state [vendors] that [they] impose[] on out-of-state ones," they are not discriminatory, and Defendant is likely to succeed on the merits of the claim. *Nat'l Pork*, 598 U.S at 370.

### C. The Ammunition Laws Are Not Preempted by Federal Law

Finally, Defendant is likely to succeed on Plaintiffs' claim that California Penal Code section 30314 (prohibiting residents from bringing ammunition into the State without first delivering it to a licensed vendor for processing) is preempted by 18 U.S.C. § 926A. Section 926A provides a safe harbor for any law-abiding citizen "to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm." Congress did not intend for § 926A to

19

occupy the field of firearms regulation; it preempts state law only in the narrow circumstance where "there is a *direct and positive* conflict between" the two laws, such that "the two cannot be reconciled or consistently stand together." 18 U.S.C. § 927 (emphasis added). But section 926A does not protect the transportation of ammunition, and even if it did, it can be reconciled with section 30314. The district court's conclusion that ammunition is including in § 926A's safe harbor is inconsistent with the plain text of the statute. By its terms, § 926A authorizes an individual "to transport a firearm," not ammunition. If Congress had intended for the safe harbor to include ammunition, it could have written the statute to allow persons "to transport a firearm *and ammunition*," as it did with other sections in the same chapter. *See, e.g.*, 18 U.S.C. § 923(c) (providing that a license issued by the Attorney General "shall entitle the licensee to transport, ship, and receive firearms *and ammunition*" (emphasis added)). And the legislative history confirms that ammunition was not meant to be included within § 926A's scope. *See* 132 Cong. Rec. H4102-03 (June 24, 1986) (noting that the provision mentioning ammunition in § 926A was added only "to protect law enforcement officers who may be making traffic stops by requiring that the weapon be unloaded and clarifying that it not be readily accessible." (statement of Rep. Hughes)).

Even if § 926A's safe harbor could be read to protect a right to transport ammunition, there is still no "direct and positive conflict" between it and section

20

30314. To take advantage of § 926A's safe harbor, the person transporting a weapon must be entitled, by law, to possess it in the place to which it is being transported. *Fresno Rifle & Pistol Club, Inc. v. Van de Kamp*, 746 F. Supp. 1415, 1427 (E.D. Cal. 1990). Here, the Ammunition Laws make it unlawful to possess ammunition in California that has not been processed through a licensed vendor in a face-to-face transaction. Thus, if an individual does not comply with section 30314's requirements, that ammunition may not be lawfully possessed in California—a precondition to application of the safe harbor. There is no "direct and positive conflict," and § 926A does not preempt section 30314.

## II. THE EQUITABLE FACTORS WEIGH STRONGLY IN FAVOR OF A STAY

The remaining equitable factors all tilt sharply in favor of a stay. As a general matter, the "public interest" is harmed where, as here, a court invalidates and enjoins a duly enacted statute. *See*, *e.g.*, *Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*, 512 F.3d 1112, 1126 (9th Cir. 2008) (recognizing that the "public interest may be declared in the form of a statute"). And as the Supreme Court and this Court have often recognized, a State necessarily "suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see also New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers).

There is an especially grave threat of irreparable harm here. California's restrictions on ammunition sales have been in place for years. Allowing the judgment to take effect during the pendency of the appeal would remove an important safeguard against violent felons and others accessing ammunition. Indeed, Plaintiff Ammunition Depot took to social media within hours of the district court's issuance of a preliminary injunction in 2020, inviting customers to purchase ammunition online. *See* López Decl. Ex. 19 ("Californians may again purchase ammo without a background check and order ammo online!"). It did the very same when the district court issued its permanent injunction without a stay, as did another ammunition dealer. *See* López Decl. Exs. 20, 21. Even with the Ammunition Laws in effect, prohibited persons regularly attempt to purchase ammunition: Data from the California Department of Justice's Bureau of Firearms show that over 750 prohibited persons attempted to purchase ammunition from July 1, 2019 through January 31, 2020, *id.* Ex. 6 ¶ 6; 298 did so in 2020, *id.* Ex. 16 at 21; and nearly 200 did so in each of 2021 and 2022, *id.* Ex. 17 at 28, Ex. 18 at 26.

Even if this Court ultimately reverses the district court on appeal, it would be impracticable if not impossible for the State restore the status quo and collect and dispose of ammunition purchased by prohibited persons during the pendency of the appeal. This is not a hypothetical concern. In March 2019, "high-capacity

magazines flooded into California" during the one-week period after the district court entered judgment in *Duncan v. Bonta*. *See* López Decl. ¶ 53, Ex. 22. An immediate stay is necessary to prevent a similar disruption of the status quo here.

At the same time, any harm to Plaintiffs from a stay would be comparatively minor. Plaintiffs will remain able to lawfully purchase ammunition any time they wish, including from online vendors, so long as they comply with the Ammunition Laws' procedural requirements. And as the record below establishes, those requirements are hardly burdensome: a Standard Check is processed "almost instantaneously," the transaction takes "a matter of minutes"; the Basic Check offers a separate convenient way of satisfying the Ammunition Laws requirements, and any disputes about eligibility can be resolved quickly. *See supra*, pp. 5–7. Any temporary inconvenience to Plaintiffs from continuing to abide by the Ammunition Laws while this Court considers the issues presented by this appeal would not outweigh the harm posed to the State by allowing prohibited persons to purchase ammunition, potentially for use in ghost guns and criminal activities. There is no reason to allow such ammunition purchases for any period of time before this Court has resolved the important questions at issue in this appeal.

## CONCLUSION

The Court should issue an immediate administrative stay to preserve the status quo while the Court considers this motion and then stay the district court's judgment pending appeal.

Dated:  January 31, 2024          Respectfully submitted,

ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General
JOHN ECHEVERRIA
MEGHAN H. STRONG
Deputy Attorneys General

*s/ Christina R.B. López*

CHRISTINA R.B. LÓPEZ
Deputy Attorney General
*Attorneys for Defendant-Appellant*

24

## STATEMENT OF RELATED CASES

The Attorney General is aware of the following related case:

- *Duncan v. Bonta*, C.A. No. 23-55805 (9th Cir.): Appeal from a decision

  permanently enjoining enforcement of California Penal Code Section

  32310, which restricts large-capacity magazines, defined as firearm

  magazines capable of holding more than 10 rounds of ammunition.

  The matter below was transferred to the district court as a case related

  to *Duncan* at plaintiffs' request.  Dist. Ct. Dkts. 3, 7.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing emergency motion complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3(2) because it consists of 5,256 words, excluding the documents listed at Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f). This emergency motion complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: January 31, 2024        *s/ Christina R.B. López*

                            CHRISTINA R.B. LÓPEZ
                            Deputy Attorney General
                            *Attorneys for Defendant-Appellant*