Case No. 24-542

In the United States Court of Appeals
for the Ninth Circuit

KIM RHODE, et al.
*Plaintiffs-Appellees*,

v.

ROB BONTA, in his official capacity as Attorney General of the State of California,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the Southern District of California
Case No. 3:18-cv-00802-BEN-JLB
Honorable Roger T. Benitez

**APPELLEES' OPPOSITION TO APPELLANT'S EMERGENCY MOTION TO STAY ORDER GRANTING PERMANENT INJUNCTION PENDING APPEAL**

C. D. Michel
Sean A. Brady
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
sbrady@michellawyers.com

*Counsel for Plaintiffs-Appellees*

February 1, 2024

## INTRODUCTION

This Court should deny Defendant-Appellant's Emergency Motion Under Circuit Rule 27-3 for an Immediate Administrative Stay and a Stay Pending Appeal. On January 31, 2024, the district court enjoined enforcement of California Penal Code sections 30312(a)-(b), 30314(a), 30352, and 30370(a)-(e), and the criminal enforcement of California Penal Code sections 30365(a), 30312(d), and 30314(c) (the "Challenged Provisions"), for violating either the Second Amendment or Commerce Clause of the United States Constitution or for being preempted by federal law. Basically, the Challenged Provisions require anyone seeking to purchase ammunition to do so in-person through a licensed ammunition vendor located in California and pass a background check before taking receipt. Failure to comply is subject to criminal prosecution. Defendant-Appellant California Attorney General Rob Bonta ("the State") requested that the district court stay its ruling while the parties litigate the State's appeal. The district court denied that request. In response, the State filed an emergency motion asking this Court for that same relief and for an immediate administrative stay until that motion is resolved. This Court should deny both of the State's stay requests.

The State has failed to meet its burden to establish that the extraordinary relief of a stay on the district court's injunction is warranted here. It has not—and cannot—establish that it will suffer any real harm absent a stay. The Challenged Provisions are objectively offensive. The State conveniently omits the fact that those laws preclude

thousands of Californians from exercising their constitutional right to acquire ammunition not because they are ineligible to do so, but for something as trivial as California not having the person's current address on record. To make matters worse, California offers no meaningful guidance to those individuals on how to overcome their rejection. It is no wonder that over one-third of people who are erroneously denied never go on to successfully purchase ammunition. On the other hand, of the relatively small number of prohibited people that tried to buy ammunition, the State arrested just 2% of them, betraying that the Challenged Provisions are not the critical crime fighting tool the State makes them out to be. Thus, the Challenged Provisions harm Plaintiffs-Appellees ("Plaintiffs") and countless law-abiding citizens, not the State. Plaintiffs, and not the State, are thus likely to succeed on the merits of their claims and the State cannot show any of the other factors support a stay. With the injunction in place, California has simply returned to the status quo of 2019, which is where every other state in the country is, with one possible exception (New York). In other words, the result of the injunction is hardly radical.

The State's motion should be denied. If, however, this Court decides to grant either an administrative stay or a full stay pending appeal, in the interest of justice this Court should set a specific time and date for that stay to take effect with at least two days' notice of when the stay would take effect. The State has already informed ammunition vendors that the Challenged Provisions are enjoined. Brady Decl. Ex. A. Relying on that representation, out-of-state companies have already begun servicing

2

Californians seeking to exercise their constitutional right to acquire ammunition. An abrupt stay of the injunction without fair notice could result in people who reasonably relied on the State's representation that their conduct is legal unwittingly and unintentionally violating the law.

## LEGAL STANDARD

Federal Rules of Appellate Procedure Rule 8 allows this Court to suspend, modify, restore, or grant an injunction while an appeal in pending. Fed. R. App. P. 8(a). "A stay is not a matter of right, even if irreparable injury might otherwise result," rather, a stay is "an exercise of judicial discretion" and the "propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34. This standard holds regardless of how the applicant styles the stay application. *See Benham v. Namba (In re Maria Vista Estates)*, No. LA CV 13-cv-05286, 2014 U.S. Dist. LEXIS 188139 (C.D. Cal. Sept. 30, 2014) (discussing the denial of a both a request for a stay pending appeal and administrative appeal).

In determining whether to issue a stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434. The

3

first two factors "are the most critical." *Id.* As for the first factor, this Court has characterized a "strong showing" in various ways, including "reasonable probability," "fair prospect," "substantial case on the merits," and "serious legal questions . . . raised." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011). When an applicant relies on "serious legal questions," as the State has done here, it must establish irreparable harm and that the balance of harms tips *sharply* in his favor. *See id.* at 966; *Tribal Village of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988).

## ARGUMENT

### I. THE STATE HAS NOT SHOWN A STRONG LIKELIHOOD OF SUCCESS

The State cannot establish that it is likely to succeed in its attempt to overturn the district court's decision. Simply put, the district court correctly concluded that the Challenged Provisions are unconstitutional. What's more, keeping the injunction in place would preserve the status quo; the State's argument otherwise relies on a misunderstanding of authority.

#### A. The District Court correctly applied the law

Plaintiffs will not rehash all of their arguments for why the Challenged Provisions fail constitutional scrutiny here. With its detailed opinion and its subsequent order denying the State's motion for an emergency stay, the district court sufficiently acquits itself in justifying its ruling in Plaintiffs' favor and its refusal to stay that ruling. Emergency Mot. Under C.R. 27-3 Stay Pending App. ("Emergency Mot.") Ex. 1; Brady Decl. Ex B. Plaintiffs, however, highlight a few features of the

Challenged Provisions that may go unnoticed due to the enormity of the record below and the State's ignoring them. These features help objectively show the Challenged Provisions' patent unconstitutionality.

### 1. The State's Background Check System Violates the Second Amendment

As the district court explained, the State "correctly concedes that, '[e]ven though the Second Amendment does not reference a right to acquire or purchase Arms or mention ammunition, it 'protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense.' " Emergency Mot. Ex. 1 at 8. Of course, the State must make that concession. *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (holding that "the right to possess firearms for protection implies a corresponding right to obtain the bullets necessary to use them"). Thus, the only constitutional question to be decided is whether the burdens the Challenged Provisions place on the exercise of that right meet constitutional scrutiny. They do not.

As the trial court correctly concluded, whether there is a historical tradition supporting ammunition background checks *generally* is irrelevant here. Rather the issue is whether *this* ammunition background check system is the sort of abusive permitting scheme that *Bruen* said would be unconstitutional. Emergency Mot. Ex. 1 at 12, discussing *Bruen*, 142 S. Ct. at 1238 n.9. The trial court correctly concluded that it is, given that "record data mismatches, lengthy and occasionally infinite wait times, and

5

sometimes exorbitant fees, are currently denying ordinary citizens their right to public carry." *Id.*

Indeed, in its first seven months of operation, the State's most popular background check option rejected 101,047 purchasers from receiving ammunition, not because the State confirmed that those people are legally ineligible to acquire ammunition, but because the State could not confirm some trivial information like the person's current address. Emergency Mot. Ex. 1 at 13. That is about 16.4% of attempted purchasers. *Id.* Perhaps "growing pains" can be expected. But the erroneous rejection rate remains unacceptably high several years later. "In the first six months of 2023, there were 538,359 background checks. Of those, 58,087 individuals were rejected because of a failure to match an AFS record." *Id.* That's a failure rate of 11%. There is no reason to believe that has significantly changed in the last year.

What's more, purchasers who are rejected ammunition are not informed of the reason for rejection, at least not specifically. Nor is official guidance on what steps they can take to remedy their situation provided; they are left to their own devices to figure it out. Unlikely a coincidental result, "of the 7,342 people who were rejected by a Standard background check in January of last year, 2,722 individuals (37%) had still not successfully purchased ammunition six months later. Some have likely given up trying." *Id.* This is simply not the way fundamental rights work. If burdens imposed by a state's regulatory scheme resulted in this rate of attrition for voting, there would not even be a discussion; such a scheme would be dispensed with automatically.

This rate of erroneous rejections is also critical to the *Bruen* analysis. The State has not shown, nor claimed to show, any historical analogues that wrongly denied such a huge proportion of law-abiding citizens. To the contrary, the State ignores that inconvenient reality at every turn. "[W]hether modern and historical regulations impose a **comparable burden** on the right of armed self-defense and whether that burden is comparably justified are " '*central*' " considerations when engaging in an analogical inquiry." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 29 (2022) (bold added). The burden is not comparable here with any historical analogue the State presents. Thousands of Californians are wrongly denied ammunition purchases, and over a third of them never go on to successfully purchase ammunition. For this reason alone, the State has no likelihood of success on the merits, and this particular ammunition background check system must remain in the garbage bin where it belongs.

2. **The State's Requirement that All Ammunition Transfers Occur "Face-to-Face" Violates the Dormant Commerce Clause**

While there are various reasons the State's "face-to-face" requirement violates the dormant Commerce Clause, Plaintiffs want to make sure that this Court understands that, under the Challenged Provisions, businesses physically located in California that sell ammunition have complete discretion over whether or at what price businesses not physically located in California can sell to people in California. This is because ammunition vendors that are not physically located in California can

only sell to California purchasers by sending the ammunition to a vendor that is physically located in California. Cal. Penal Code §§ 30312(b). It is undisputed that ammunition vendors physically located in California may legally refuse to process third-party ammunition transfers from out-of-state ammunition vendors, or that they are, in fact, doing just that. Plaintiffs' Omnibus Brief, *Rhode v. Becerra*, No. 3:18-cv-00802-BEN-JLB (Dec. 13, 2023), ECF No. 104 at 18. Nor is it disputed that an in-state vendor willing to process such a transaction may charge the purchaser any fee amount it wishes. *Id*; Cal. Code Regs. tit. 11 § 4263(b). As a practical matter, this includes all transactions originating from out-of-state. In other words, ammunition vendors located in other states, like Plaintiffs Able's Ammo, AMDEP Holdings, and R&S Firearms, are at the complete mercy of businesses located in California in accessing the California consumer.

The only way for ammunition vendors located in other states to avoid control of in-state vendors is to have a physical presence in California. This Court has made clear that a statute requiring a business to have a physical presence in a state to do business there violates the Commerce Clause. *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 736-37 (9th Cir. 2017), *cert. denied sub nom* (finding a statute violated the Commerce Clause because it "requires any corporation that wants to engage in a certain kind of business within the state to become a resident"); *see also Granholm v. Heald*, 544 U.S. 460, 472 (2005) ("The mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States.") The State's attempt

8

to confuse the issue by arguing that the Challenged Provisions do not discriminate because in-state vendors are also prohibited from shipping ammunition, misses the point. Emergency Mot. 18-19. "The Attorney General has pointed to no other laws in the nation that erect a similar barrier to this one, keeping away out-of-state ammunition sellers and guaranteeing all sales originate with, or flow through, only in-state ammunition sellers." Emergency Mot. Ex. 1 at 28. Because out-of-state businesses can only access California's ammunition market with permission from an in-state business, California's scheme violates the dormant Commerce Clause.

### 3. Preemption by 18 U.S.C. § 926A

The State's argument that the Firearm Owner's Protection Act does not protect ammunition is unserious. Emergency Mot. at 20. It ignores that the law necessarily contemplate transportation of ammunition by expressly requiring that ammunition be kept separate from firearms during transport. 18 U.S.C. § 926A.

The district court thus correctly concluded that "[f]or California residents travelling home with newly acquired ammunition for their firearm, the metaphorical harbor is anything but safe…California Penal Code § 30314(a) directly conflicts with 18 U.S.C. § 926A and is therefore preempted to the extent that it criminalizes a resident who transports a firearm and ammunition in compliance with the requirements of § 926A." Emergency Mot. Ex. 1 at 31.

### 4. Staying the district court's ruling would not preserve the status quo.

As courts around the country have long held, the status quo is judged by the

9

last peaceable uncontested status existing between the parties before the dispute developed. *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963); *see also N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018); *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005). "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (citing *Tanner Motor Livery, Ltd.*, 316 F.2d at 809.).

Here, Plaintiffs sued to stop the unconstitutional ammunition laws from ever taking effect in the first place. They sought and obtained a preliminary injunction. While that injunction was stayed by the Ninth Circuit (pre-*Bruen*), the legal status quo is the time before the law went into effect. Issuing a stay would disrupt that status quo. Because the status quo favors Plaintiffs, no administrative stay should be issued either. This Court has repeatedly ruled that an administrative stay is meant to preserve the status quo. *See Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019) ("A temporary stay in this context (sometimes referred to as an administrative stay) is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits."); *Nat'l Urb. League v. Ross*, 977 F.3d 698, 701 (9th Cir. 2020) ("Based on our preliminary review of the record, we conclude that the status quo would be seriously disrupted by an immediate stay of the district court's order."); *Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019) ("Because granting

10

the stay request would preserve the status quo, we grant the government's motion for a temporary stay to preserve the status quo pending a decision on the motion for stay pending appeal.").

### 5. A Serious Legal Question Alone Does Not Justify Staying an Injunction

The State also argues that a stay may be warranted because this case raises "serious legal questions." Emergency Mot. 11. "Serious questions are substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). Surely, the legal questions at the heart of this matter are "serious." *Silvester v. Harris*, No. 11-cv-2137, 2014 WL 661592, at *3 (Nov. 20, 2014) (recognizing that a case challenging California's 10-day waiting period for gun purchases raised serious questions because "Second Amendment law is evolving"). But this is true of many appeals, especially those involving constitutional challenges like this one. Thus, cases that raise important questions rarely warrant a stay of injunctive relief *unless the moving party also establishes that the remaining factors all counsel in favor of a stay*. In such cases, the State must prove that it "will suffer irreparable harm" without the stay *and* that the balance of the hardships "tips *sharply* in their favor." *Se. Alaska Conserv. Council v. U.S. Army Corps of Eng'rs.*, 472 F.3d 1097, 1100 (9th Cir. 2006) (emphasis added). As explained below, and in more detail by the district court in its order denying the State's request for a stay, Brady Decl. Ex B at 2, the State has failed to meet this

11

burden.

## II. THE STATE HAS NOT SHOWN THAT IT WILL SUFFER IRREPARABLE HARM

"[T]he factor of irreparable harms is a 'bedrock requirement' for issuance of a stay." *Leiva-Perez v. Holder,* 640 F.3d 962, 965 (9th Cir. 2011). Indeed, because the State must rely on the "serious legal questions" this case presents to satisfy the first factor for a stay, the State bears a heavy burden to show that it "will suffer irreparable" harm if a stay does not issue. *Se. Alaska*, 472 F.3d at 1100. Here, the State argues that it is necessarily harmed because the injunction prevents it from enforcing " 'an enactment of its people or representatives.' " Emergency Mot. 21. (quoting *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997)). It also argues that irreparable harm will befall the state if Californians are able to purchase ammunition unrestricted by the Challenge Provisions while this case is on appeal because persons prohibited from ammunition possession might acquire it, implying they will commit crimes with it. Emergency Mot. 22-23. Neither of these purported harms justify a stay of the Court's well-reasoned judgment.

A party "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law.") (citations omitted). Even so, the State relies on a passage from *Coalition for Economic Equity v. Wilson*, which in turn

12

relied on a chambers order from former Justice Rehnquist, to argue that the government necessarily suffers irreparable injury anytime its laws are enjoined. Emergency Mot. 21 (quoting *Coal. for Econ. Equity*, 122 F.3d at 719). But the "the Supreme Court has never adopted Justice Rehnquist's opinion that this form of harm is an irreparable injury" sufficient to justify a stay. *Silvester*, 2014 WL 661592, at *3 (citing *Latta v. Otter,* 771 F.3d 496, 500, n. 1 (9th Cir. 2014)).[1] As a result, this Court has held that "to the extent a state suffers an abstract form of harm whenever one of its acts is enjoined, that harm is *not dispositive* because such a rule would eviscerate the balancing of competing claims of injury." *Id.* (discussing *Indep. Living Ctr.*, 572 F.3d 644) (emphasis added). An "abstract harm" can be "outweighed by other factors." *Id.* (discussing *Latta*, 771 F.3d at 500).

The State also claims that leaving the injunction in place will "remove an important safeguard against violent felons and others accessing ammunition.". Emergency Mot. 22. This speculative harm that prohibited persons might acquire ammunition and inflict harm with it does not constitute irreparable injury. *See, e.g.*, *Pac. Merchant Shipping Ass'n v. Cackette*, 2007 WL 2914961 (E.D. Cal. 2007) (holding that the defendant's claim that enjoined regulations would prevent 31 deaths and 830 asthma attacks is "nebulous at best" and insufficient to establish irreparable harm). The State's purported harm is at least not "probable," as it must be to justify a stay. *See*

---

[1] This Court has also held the cited language from *Coalition for Economic Equity* is "dicta." *Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly,* 572 F.3d 644, 658 (9th Cir. 2009).

13

*Leiva-Perez*, 640 F.3d at 968. As the district court explained in denying the State's request for a stay, "[w]hile there is the possibility that prohibited California residents will be able to acquire ammunition without a stay, there continues to exist criminal laws against the possession of ammunition by prohibited persons under both state and federal law. This Court's decision in no way affects those laws and the Defendant is free to continue to enforce the same. Consequently, the second factor does not weigh in favor of a stay." Brady Decl. Ex B at 2.

  The State's feigned fears of prohibited people buying ammunition is belied by its own statistics on how often it relies on the Challenged Provisions to thwart crime. As discussed in the district court's ruling, from July 1, 2019 through January 31, 2020, about 750 ammunition buyers were rejected for being prohibited from possessing ammunition. Emergency Mot. Ex. 1 at 13. But even though it has now been several years since then, the state conducted only 51 investigations, and arrested just 15 individuals, resulting in just 6 convictions. *Id.* For all the panic of supposed imminent harm in its emergency motion, this statistic shows that the Challenged Provisions are hardly a major crime fighting tool. This is in the context of almost 60,000 erroneous rejections in the first half of last year, 11% of the total attempted purchases. *Id.* Orders of magnitude more people are wrongly denied than correctly denied, and even of the very few that are correctly denied, the State rarely does anything about it.

  Because a specific showing of irreparable injury to the applicant is a threshold requirement for every stay application, the State's failure to demonstrate that it will

experience irreparable harm means that "a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965.

## III. THE STATE HAS NOT SHOWN THAT THE BALANCE OF HARMS TIPS IN ITS FAVOR

The State has failed to establish that it will suffer any irreparable harm absent a stay. And any abstract and speculative harms it might suffer do not outweigh the constitutional and practical harms that befall Plaintiffs. Each day the injunction is delayed is another day Californians are denied the exercise of their right to acquire ammunition free from the Challenged Provision's unlawful burdens. Denial of a fundamental right is irreparable injury—even if for a moment. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that deprivation of constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury"). This ongoing constitutional harm is no less severe simply because, as the State argues, the exercise of that right has already been prohibited for too long. Emergency Mot. 22. In fact, it perhaps makes the continued denial of the right *worse*.

What's more, the State cannot credibly argue that it will suffer any real harm by the issuance of this preliminary injunction. California is only having to return to how it had always regulated ammunition transactions until 2019. That is, it will be put in essentially the same place as every other state in the country, none of which have ammunition background checks or, with the exception of New York, have restrictions on shipping ammunition directly to consumers. The notion that *temporarily* enjoining

15

such anomalous, short-lived laws causes the State harm sufficient to satisfy its extraordinarily high burden is dubious, at best.

For Plaintiffs, Californians, and ammunition vendors both inside and outside of California, the harm of a stay from this Court is much worse. The State has already informed industry that the Challenged Provisions are enjoined and not being enforced. Brady Decl. Ex A. A sudden reversal by this Court will cause chaos and potentially legal trouble for those currently buying and selling ammunition. For that reason, even if this Court is inclined to grant any sort of stay, it should give plenty of notice and a date certain when the stay will take effect.

Because the State cannot identify any concrete irreparable harm and given that a stay would allow the State to resume violating the fundamental rights of millions of Californians, the balance of equities does not tip sharply in the State's favor—it does not tip in its favor at all. The State's motion should be denied on this basis alone.

## CONCLUSION

For these reasons, the Court should deny the State's motion for an emergency stay pending the appeal of this matter and also deny an emergency administrative stay pending this Court's decision on that motion.

Date: February 1, 2024  **MICHEL & ASSOCIATES, P.C.**

s/ Sean A. Brady
Sean A. Brady
*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2024, an electronic PDF of APPELLEES' OPPOSITION TO APPELLANT'S EMERGENCY MOTION TO STAY ORDER GRANTING PERMANENT INJUNCTION PENDING APPEAL was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Date: February 1, 2024          **MICHEL & ASSOCIATES, P.C.**

                                                 s/ Sean A. Brady
                                                 Sean A. Brady
                                                 *Counsel for Plaintiffs-Appellees*

17