No. 24-542

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

KIM RHODE; GARY BRENNAN; CORY HENRY; EDWARD JOHNSON; SCOTT
LINDEMUTH; RICHARD RICKS; DENISE WELVANG; ABLE'S SPORTING, INC., a Texas
corporation; AMDEP HOLDINGS, LLC, a Florida limited liability company doing
business as Ammunition Depot; R&S FIREARMS, INC., an Arizona corporation
doing business as Sam's Shooters Emporium; CALIFORNIA RIFLE & PISTOL
ASSOCIATION, a California corporation,

*Plaintiffs-Appellees*,

v.

ROB BONTA, in his official capacity as Attorney General of the State of California,

*Defendant-Appellant*,

BRADY CENTER TO PREVENT GUN VIOLENCE; GIFFORDS LAW CENTER TO PREVENT
GUN VIOLENCE; EVERYTOWN FOR GUN SAFETY,

*Amici Curiae*.

On Appeal from the United States District Court for the Southern District
of California, No. 3:18-cv-00802-BEN-JLB

## BRIEF FOR PLAINTIFFS-APPELLEES

C.D. MICHEL
SEAN A. BRADY
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
sbrady@michellawyers.com

PAUL D. CLEMENT
ERIN E. MURPHY
 *Counsel of Record*
MATTHEW D. ROWEN
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Plaintiffs-Appellees*

July 24, 2024

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Able's Sporting, Inc., R&S Firearms, Inc., and California Rifle & Pistol Association certify that they do not have a parent corporation and that no publicly held corporation owns more than ten percent of their stock. AMDEP Holdings, LLC, certifies that its parent organization is JHP Partners, LLC, and that no publicly held corporation owns more than ten percent of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .......................................................... i

TABLE OF AUTHORITIES ..................................................................... iv

INTRODUCTION ................................................................................. 1

STATEMENT OF JURISDICTION ................................................................ 4

STATEMENT OF THE ISSUES .................................................................. 4

CONSTITUTIONAL AND STATUTORY PROVISIONS ...................................... 4

STATEMENT OF THE CASE ..................................................................... 4

I.    Factual Background ..................................................................... 4

    A.    California Requires Individuals to Run a Byzantine Gauntlet Just to Acquire Ammunition, Without Which Firearms Cannot Fire ................................................................ 5

    B.    California Prohibits its Residents from Personally Bringing into California Ammunition Lawfully Acquired Out of State .......... 17

II.    Procedural Background ............................................................ 18

SUMMARY OF ARGUMENT .................................................................. 21

STANDARD OF REVIEW ...................................................................... 25

ARGUMENT ..................................................................................... 26

I.    California's Novel Ammunition Background Check Regime Violates The Second Amendment ............................................... 26

    A.    California's Ammunition Background Check Regime Regulates Conduct Covered by the Second Amendment's Text ......................................................................... 27

    B.    California's Novel and Burdensome Ammunition Regime Flouts Our Nation's Historical Tradition .......................... 31

C.   Far From Helping the State's Cause, *Bruen*'s Brief Discussion of Background Checks Confirms that California's Novel Regime Is Unconstitutional .................................................. 39

II.   California's Novel Ammunition Regime Violates The Commerce Clause .................................................................................. 46

III.   Federal Law Squarely Preempts California's Prohibition On Transporting Ammunition Into The State ..................................... 52

CONCLUSION .................................................................................. 57

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Atkinson v. Garland*,
70 F.4th 1018 (7th Cir. 2023)............................................................30

*Black Star Farms LLC v. Oliver*,
600 F.3d 1225 (9th Cir. 2010)...........................................................48

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
476 U.S. 573 (1986).........................................................................51

*C&A Carbone, Inc. v. Town of Clarkstown*,
511 U.S. 383 (1994)................................................................... 47, 49

*Coal. of N.J. Sportsmen v. Florio*,
744 F.Supp. 602 (D.N.J. 1990) .........................................................56

*Dean Milk Co. v. Madison*,
340 U.S. 349 (1951)................................................................... 47, 49

*District of Columbia v. Heller*,
554 U.S. 570 (2008)............................................................. 28, 29, 30

*Fresno Rifle & Pistol Club, Inc. v. Van de Kamp*,
746 F.Supp. 1415 (E.D. Cal. 1990)...................................................56

*Granholm v. Heald*,
544 U.S. 460 (2005)............................................................. 47, 48, 51

*Healy v. Beer Inst.*,
491 U.S. 324 (1989).........................................................................51

*Ill. Nat'l Guard v. Fed. Lab. Rels. Auth.*,
854 F.2d 1396  (D.C. Cir. 1988) .......................................................54

*Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Rels.*,
730 F.3d 1024 (9th Cir. 2013)...........................................................25

*Jackson v. City & Cnty. of S.F.*,
746 F.3d 953 (9th Cir. 2014)........................................... 19, 28, 30, 31

iv

*Leisy v. Hardin*,
    135 U.S. 100 (1890)......................................................................51

*Lewis v. BT Inv. Managers, Inc.*,
    447 U.S. 27 (1980)........................................................................48

*N.J. Air Nat'l Guard v. Fed. Lab. Rels. Auth.*,
    677 F.2d 276 (3d Cir. 1982)..........................................................55

*N.J. Thoroughbred Horsemen's Ass'n v. NCAA*,
    584 U.S. 453 (2018)......................................................................54

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022).................................................................. *passim*

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023)......................................................................47

*Or. Waste Sys., Inc. v. Or. Dep't of Env't Quality*,
    511 U.S. 93 (1994)........................................................................46

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970)......................................................................51

*Rhode v. Becerra*,
    445 F.Supp.3d 902 (S.D. Cal. 2020)...................................... *passim*

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
    550 U.S. 330 (2007)......................................................................46

*United States v. Knights*,
    534 U.S. 112 (2001)......................................................................39

*United States v. Miller*,
    307 U.S. 174 (1939)......................................................................28

*United States v. Perez-Garcia*,
    96 F.4th 1166 (9th Cir. 2024)........................................... 26, 28, 29

*United States v. Rahimi*,
    144 S.Ct. 1889 (2024)........................................................... *passim*

## Constitutional Provisions

U.S. Const. amend. II ......................................................................................27

U.S. Const. amend. XXI ................................................................................50

U.S. Const. art. VI ........................................................................................53

## Statutes

11 Cal. Code Regs. §4045.1 ........................................................................6, 7

11 Cal. Code Regs. §4260 .............................................................................50

11 Cal. Code Regs. §4263 .............................................................................18

11 Cal. Code Regs. §4281 ........................................................................ 8, 14

11 Cal. Code Regs. §4282 ..................................................................... *passim*

11 Cal. Code Regs. §4283 .................................................... 8, 13, 15, 17

11 Cal. Code Regs. §4284 ...................................................................... 6, 16

11 Cal. Code Regs. §4285 .................................................................. 6, 16, 17

11 Cal. Code Regs. §4351 .............................................................................12

11 Cal. Code Regs. §4353 ............................................................... 12, 13, 42

18 U.S.C. §922 ..............................................................................................45

18 U.S.C. §926A ................................................................................... *passim*

18 U.S.C. §927 ..............................................................................................54

Cal. Pen. Code §16151 ............................................................................ 5, 50

Cal. Pen. Code §30000 ...................................................................................8

Cal. Pen. Code §30312 ......................................................................... 5, 17, 18

Cal. Pen. Code §30314 ......................................................................... 5, 18, 53

Cal. Pen. Code §30348 ...................................................................................17

Cal. Pen. Code §30352.......................................................................6

Cal. Pen. Code §30370............................................................ 5, 15, 17

Cal. Veh. Code §12801.9 ...................................................................7

Pub. L. No. 99-308, §107, 100 Stat. 449 (May 19, 1986) ......................52

Pub. L. No. 99-360, §1, 100 Stat. 766 (July 8, 1986).............................52

**Other Authorities**

132 Cong. Rec. H4102-03, 1986 WL 792564 ......................................55

132 Cong. Rec. S5358-04, 1986 WL 774609 .......................................55

4 William Blackstone, *Commentaries*..................................................38

Act of June 13, 1777, ch. 756, 9 *The Statutes at Large of Pennsylvania from 1682 to 1801* (1903) ...................................................34

Firearm Ownership Report, *Cal. Dep't of Justice*, https://tinyurl.com/2p9v7ujf (last updated Jan. 2020).......................................11

Gavin Newsom (@GavinNewsom), Twitter (Aug. 6, 2019, 3:33 PM), https://bit.ly/2OYVB3l ...........................................33

Press Release, Office of Governor Gavin Newsom, *Ahead of Implementation Date of New Gun Safety Policies in California, Governor Newsom and State Leaders Reaffirm Commitment to Ending Epidemic of Gun Violence* (Jun. 25, 2019), https://bit.ly/3xK5QfM.................33

Scott Shafer, *Cox, Newsom Face Off in Final California Gubernatorial Debate*, KQED (Oct. 8, 2018), https://bit.ly/3xId3wM......................................33

**INTRODUCTION**

California's requirement that law-abiding citizens undergo a new background check each and every time they purchase ammunition is one of a kind for all the wrong reasons. The novelty of the law is not the product of some dramatic technological development or societal shift. "[T]here may be some things new under the sun, but the commercial availability of ammunition and the risk that dangerous individuals might avail themselves of it is not one of them." 1-ER-21. And background checks have been around for over a century. Yet no state has ever before seen fit to require them every time a citizen purchases ammunition—likely because the burdens such prophylaxis-on-prophylaxis imposes are unlike anything earlier generations would have tolerated. Consistent with "the balance struck by the founding generation," our Nation's historical tradition generally "presume[s] that individuals ha[ve] a right to [keep and] carry" arms unless and until they prove otherwise. *United States v. Rahimi*, 144 S.Ct. 1889, 1898, 1902 (2024) (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 29, 56 (2022)). California's novel regime turns that principle on its head, "effectively presum[ing] that no citizen ha[s] such a right" even if she has passed a background check as recently as 18 hours earlier. *Id.* at 1902. To countenance such an incursion would be to convert the Second Amendment into a "second-class right." *Bruen*, 597 U.S. at 70.

California's unabashed departure from the principles underlying our Nation's historical tradition is not the only (or even most glaring) problem with the state's novel regime. *Bruen* specifically cautioned that even a traditional "permitting scheme"—which a-good-for-one-use-only background check is decidedly not—"can be put toward abusive ends." *Id.* at 38 n.9. This scheme proves the wisdom of that cautionary note. Under California's new regime, not even a state-issued driver's license is good enough to get in the door, and things as capricious and minor as typos *in the state's own databases* can send law-abiding citizens on a months-long wild goose chase just to get the state to conduct the background check that it now requires. It should come as no surprise, then, that tens of thousands of law-abiding Californians have been arbitrarily denied their Second Amendment rights simply because the state refused to conduct the background check to which they agreed to submit, and countless more have been deterred from even trying to acquire the ammunition necessary to render their lawful firearms operable. If that is not an abusive regime, it is difficult to imagine what is.

Making matters worse, California's new regime precludes out-of-state sellers from accessing California's ammunition market *at all* unless they obtain the consent of their California-based competitors *and* their customers pay whatever price those California-based competitors set to process transactions in accordance with California's novel and burdensome demands. The only regime in our Nation's

history that bears any resemblance to California's is the uniquely restrictive regime for alcohol distribution that exists in some states. But it took a constitutional amendment—actually two—to authorize aspects of that regime, which would otherwise blatantly violate the Commerce Clause. And even with a constitutional amendment expressly authorizing restrictive state laws, the Supreme Court has still invalidated alcohol laws that are *less* expressly discriminatory than this one.

Finally, California's effort to prohibit residents from bringing into the state ammunition that they acquired elsewhere is preempted by federal law. The Firearm Owners Protection Act ("FOPA") entitles individuals to transport firearms and ammunition from any place where their possession is lawful to any other place where their possession is lawful, "[n]otwithstanding any other provision of any law … of a State." 18 U.S.C. §926A. California allows the possession of ammunition (as it must under the Second Amendment), yet, under Penal Code §30314(a), its residents are now prohibited from personally transporting into the state ammunition that they lawfully purchased and possessed elsewhere, and instead must "first ha[ve] that ammunition delivered to a licensed ammunition vendor." The whole point of having a federal Bill of Rights is to prevent such balkanization when it comes to fundamental rights. It is little surprise, then, that FOPA preempts that direct state interference with the federal right to transport ammunition across state lines.

For any and all of those reasons, this Court should affirm.

3

## STATEMENT OF JURISDICTION

Plaintiffs agree with the state's jurisdictional statement.

## STATEMENT OF THE ISSUES

1. Whether California's novel and burdensome ammunition regime violates the Second Amendment.

2. Whether California's novel and discriminatory ammunition regime violates the Commerce Clause.

3. Whether 18 U.S.C. §926A, which protects the right of firearm owners to transport ammunition across state lines, preempts California Penal Code §30314, which prohibits residents from bringing into California ammunition acquired out of state.

## CONSTITUTIONAL AND STATUTORY PROVISIONS

Except for the following, all applicable constitutional provisions, statutes, and regulations are contained in Appellant's addendum: 18 U.S.C. §§926A, 927; Cal. Pen. Code §§16151, 30000, 30348, 30385; 11 Cal. Code Regs. ("CCR") §§4045.1, 4260, 4263, 4281-85, 4351, 4353.

## STATEMENT OF THE CASE

### I.   Factual Background

California requires individuals to undergo a background check each and every time they purchase ammunition.  That novel regime is the product of a voter initiative (Proposition 63) and legislation (Senate Bill 1235) from 2016.   Under the new

4

system, with few exceptions, "the sale of ammunition by any party shall be conducted by or processed through a licensed ammunition vendor," a category limited to sellers physically in California. Cal. Pen. Code §30312(a)(1); *see id.* §16151. Citizens cannot take possession of a single round of ammunition unless the California Department of Justice ("CDOJ") approves the transaction, which requires a background check that is good for only a single transaction, no matter how many times or how recently the individual has already passed a background check. *Id.* §30370. And even though federal law expressly preempts state laws that prohibit law-abiding citizens from transporting ammunition from one state to another, 18 U.S.C. §926A, California residents are no longer allowed to buy ammunition out of state "and bring it with them back into California," 1-ER-6. All of a California resident's ammunition transactions—even those conducted out of state—must instead be processed by CDOJ-approved vendors in California. Cal. Pen. Code §§30312(a)(2), (b), 30314.

## A. California Requires Individuals to Run a Byzantine Gauntlet Just to Acquire Ammunition, Without Which Firearms Cannot Fire.

Although California generally allows the possession and use of most types of ammunition, it now conditions its residents' ability to obtain ammunition on obtaining CDOJ approval each and every time they attempt to acquire any. Yet California inexplicably makes it exceedingly difficult to procure the very background check it now requires.

5

There are four types of requests for CDOJ approval. *See* 11 CCR §§4282-4285. CDOJ provides no formal guidance to purchasers on which of the four options they should try or on the form(s) of identification each one requires. 1-SER-139. Nor has CDOJ provided any formal instruction to vendors on how to advise prospective customers about which option to use or how to increase their odds of successfully procuring the requisite background check and approval. *Id.* That information is instead buried on CDOJ's website. 1-SER-278-85. And even if a purchaser is fortunate enough to decipher how California's convoluted scheme works, navigating it requires running a formidable gauntlet.[1]

### 1.      Proof of Lawful Presence in the United States

Before purchasers can even begin the process of seeking CDOJ approval, they must present a licensed vendor with identification proving not just their identity, but that they are lawfully present in the United States. 11 CCR §4045.1(a)-(b). That is quite unusual. Proof of lawful presence is not necessary to obtain California's standard-issue driver license or identification card; it is necessary only to obtain an identification that does not bear the designation "FEDERAL LIMITS APPLY"

---

[1] For those who successfully secure CDOJ approval, all ammunition sales are electronically recorded with CDOJ at the time of delivery. The records kept by CDOJ include the date of transfer; the transferee's ID number and the state in which it was issued, residential address and telephone number, date of birth, and full name; the brand, type, and amount of ammunition being sold or transferred; and the name of the salesperson. Cal. Pen. Code §30352(a). CDOJ also requires the dealer to print a copy of the transaction and have the customer sign it. 1-SER-273, 275.

("FLA"). California issues FLA IDs by default as proof of identity and residence without regard to lawful presence, and it accepts FLA IDs as sufficient for virtually all purposes. *Rhode v. Becerra*, 445 F.Supp.3d 902, 913-14 (S.D. Cal. 2020). The federal government likewise accepts FLA IDs as sufficient to undergo a background check to purchase *a firearm*. 2-SER-387-89. Yet CDOJ will not accept the state-issued documents that Californians may use for just about everything, from banking to interstate travel, to process ammunition transactions. *See* 11 CCR §4045.1. CDOJ will instead accept only an identification that does not bear the FLA designation. So because California chooses to issue FLA IDs without regard to lawful presence, *see* Cal. Veh. Code §12801.9, CDOJ will not even process a request to purchase ammunition if the purchaser presents a California-issued FLA ID.

Instead, purchasers who have only an FLA ID must present additional compliant documentation, such as a valid U.S. passport or a certified copy of a U.S. birth certificate. 11 CCR §4045.1(b). Obtaining that documentation can be time consuming and costly. *Rhode*, 445 F.Supp.3d at 916-17. And even if purchasers are fortunate enough to have the requisite additional documentation on hand when they go to purchase ammunition, should their documents not *exactly* match the information on their FLA ID, further documentation must be provided explaining the discrepancy. *See* 11 CCR §4045.1(c).

7

California's refusal to accept its own standard-issue ID has predictably caused considerable confusion. Vendors have reported turning away up to half of their customers in a day for lacking sufficient ID. *See, e.g.*, 2-SER-348-49.

### 2. Background Check Options

If purchasers overcome the ID hurdle, CDOJ-approved vendors will then collect their personal information and enter it into CDOJ's Dealer Record of Sale Entry System ("DES"). 11 CCR §§4282(c), 4283(c). What happens next depends on which of the four background check options the purchaser selects.

### a. "Standard Check"

The Standard Ammunition Eligibility Check is the quickest and cheapest way to try to secure CDOJ approval. It costs $1 and averages several minutes to process. 11 CCR §4282(b); 3-ER-410. Likely for that reason, virtually everyone (99%) chooses this option—but often to no avail. 3-ER-410.

CDOJ runs a Standard Check by determining whether the would-be purchaser is in the Armed Prohibited Person System ("APPS"), the database CDOJ uses to track persons prohibited from possessing firearms. 11 CCR §4282(a); Cal. Pen. Code §30000(a); *see also* 11 CCR §4281(m). If the purchaser is in APPS, then CDOJ will deny approval. If the purchaser is not, then CDOJ will approve the transaction. 11 CCR §4282(a). But that approval is valid for only 18 hours and one transaction. 1-SER-275.

8

While that sounds easy enough, it is considerably complicated by the fact that APPS is not a comprehensive database of prohibited persons. CDOJ uses it to track only individuals who are in California's Automated Firearm System ("AFS") database, which contains records of firearm sales, transfers, and ownership that have been recorded with the state. So CDOJ will not run a Standard Check unless it determines that the purchaser's information matches an entry in AFS. And CDOJ will not find a match unless all the information the purchaser provides is an *exact* match to the information in AFS. 3-ER-412. CDOJ thus will "reject" a transaction (i.e., refuse to run a Standard Check at all) for reasons as trivial as typos or minor discrepancies in its own records, like failing to include or exclude a hyphen in a compound name. And because AFS is not updated to reflect changes the state learns of through other means (like by processing a new state-issued ID), CDOJ will reject a transaction if any of a purchaser's information has changed since she last purchased a firearm—e.g., she got married and changed her surname, or she moved and changed her address. A "rejection" due to the absence of a match to an AFS record "is not a determination that the purchaser is ineligible to purchase ammunition," 3-ER-412, or even ineligible for a Standard Check (i.e., not in AFS). It is just a determination that CDOJ will not run a Standard Check. But it nonetheless precludes the transaction from going forward unless and until whatever discrepancy led CDOJ to refuse to run a Standard Check is resolved by the would-be purchaser.

9

According to California, of the 538,359 Standard Checks processed between January 2023 and June 2023, only 141 (or 0.03%) resulted in a determination that the would-be purchaser was in APPS.  3-ER-422.  But a whopping 58,087—about 10.8%—were rejected, with no check against APPS at all, for mundane things like spelling, date of birth, or address mismatches (or some combination thereof) in AFS, or an AFS entry that is "no longer valid."[2]  3-ER-410, 423.  And roughly 37% of the individuals whose efforts to submit to a Standard Check were rejected still had not been able to purchase ammunition six months later.  3-ER-415, 426.[3]

That is unsurprising, as fixing whatever prompted CDOJ to refuse to run a check can be a herculean task.  If CDOJ rejects a request, the vendor must provide the would-be purchaser with a copy of the attempted transaction with the words "DENY/REJECT" and a "DROS NUMBER" printed at the top.  1-SER-268.  While nothing on that document informs its recipient of as much, the DROS number doubles as an Ammunition Transaction Number ("ATN"), *see* 11 CCR §4282(e), which can be used "to obtain the reason for the rejection" through CDOJ's California

---

[2] "Invalid" AFS records can result from a person no longer owning a firearm.  4-ER-571.

[3] Those numbers are consistent with the data the state produced covering July 2019 to January 2020.  Over those seven months, CDOJ processed 616,257 Standard Checks.  4-ER-569.  Only 188 (0.03%) were denied because the would-be purchaser was on APPS.  *Id.*  But 101,047 were rejected for mundane things like typos or address mismatches in AFS.  *Id.*  And most of the individuals rejected were still unable to purchase ammunition as of January 2020.  4-ER-589.

Firearms Application Reporting System website, known as "CFARS." *Id.* But nothing on the document the vendor provides to rejected customers directs them to CFARS. 1-SER-10-13. And even if they find their way, CFARS does not provide the specific reason for rejection; it just gives a boilerplate statement that the rejection was "for one of the following reasons: 1) you do not have an AFS record or 2) the information you provided to the ammunition vendor does not match the AFS record that is on file." 1-SER-10-13, 74.

That is unhelpful, because there are two very different solutions for those two very different issues. Individuals who already lawfully own a firearm may create a new AFS record by submitting a "Firearm Ownership Report" and $19 fee to CDOJ. *See* 1-SER-280; 4-ER-619; Firearm Ownership Report, *Cal. Dep't of Justice*, https://tinyurl.com/2p9v7ujf (last updated Jan. 2020). Of course, that requires both awareness of whether one already has an AFS record and awareness of this option. But CDOJ never tells would-be purchasers whether they have an AFS record, and it does not directly inform them of how to create one, either on CFARS or elsewhere. What is more, individuals who have tried to do so have reported significant difficulties with the process, including CDOJ rejecting their applications for no reason at all. *See* 1-SER-78-80; 2-SER-356.

Ironically, a mismatched AFS record can be more difficult to fix than not having an AFS record at all. Again, CDOJ never tells purchasers whether they have

an AFS record, let alone what information in their record is causing the problem. Purchasers must "glean" that themselves. 1-SER-12-13. And even if they can make an educated guess as to what the problem may be, updating existing AFS records is no simple task. Individuals must create a CFARS account (which requires knowledge of CFARS' existence) and provide their personal information *exactly* "as it was, at the time when a firearm was purchased or transferred into the individual's ownership, as reported to" CDOJ, plus their current name, address, zip code, date of birth, and identification type and number. 11 CCR §§4351, 4353(b)-(c). They must also provide specific information about the firearm, including its make, model, caliber, serial number, and/or type. *Id.* §4353(d).

California does not require residents to keep records of their firearm acquisitions, so many individuals who have sought to update existing AFS records have reported difficulties in doing so, because they do not know what information is in CDOJ's records. *See* 2-SER-356. And while individuals may request a copy of their AFS records from CDOJ, 1-SER-290, that request must be notarized, and CDOJ has taken as long as 110 days to process them, *Rhode*, 445 F.Supp.3d at 920; 2-ER-59. So an individual whose first attempt to purchase ammunition through a Standard Check was rejected could find herself waiting months before she can even try to fix the problem. And once she identifies the problem, any updates or

corrections to her name, date of birth, identification type and/or number require sufficient documentation verifying the change:

- A change of name requires uploading a copy of a marriage license, or an endorsed court order regarding restoration or change of a name;

- A change to the date of birth requires a copy of a birth certificate; and,

- A change to the ID type or number requires uploading a California Driver's License, ID, or out-of-state Driver's License.

11 CCR §4353(f)(1)-(3).

CDOJ claims it can take as little as 10 minutes to update an AFS record, *see* 4-ER-633, but that ignores not only how long it takes individuals to prepare a request, but also how long it takes CDOJ to process one. On top of the months it may take to figure out what the problem with the AFS record is, individuals have reported that it takes at least a week for CDOJ to process requests (assuming there are no issues with the submission). 1-SER-74-75. All of that just to get the state to conduct the background check that it demands people secure before they may exercise a fundamental constitutional right.

### b. "Basic Check"

California residents who do not have an AFS record may use what CDOJ calls the Basic Ammunition Eligibility Check option. A Basic Check costs $19, 11 CCR §4283(a), which it is undisputed can dwarf the cost of the ammunition itself, *see* 4-ER-669-70. And unlike the Standard Check, which (at least if not rejected at the threshold owing to immaterial "discrepancies") typically takes only a matter of

13

minutes, Basic Checks on average take "five to six days to process." AG.Br.8. They thus often require at least two trips to the vendor—one to comply with the requirement to submit to the check in person, and another to go back and pick up the ammunition if and when the state gets around to approving the purchase. So people are exceedingly unlikely to select the Basic Check unless they have reason to think they are not in AFS—which is rare, since most people who purchase ammunition in California have purchased a firearm in California. And that is what the state expected, as the Basic Check is designed to be only a backstop, not a primary option for securing the requisite background check. *See* 3-ER-415 (noting that only 0.5% of checks from January to June 2023 were processed using the Basic Check).

That additional time and expense is owing to what a Basic Check entails. Notwithstanding the moniker "Basic," it is a more substantial undertaking than a Standard Check. To process a Basic Check, CDOJ runs the purchaser's acceptable form of identification (which, again, cannot be a state-issued ID unless it lacks the FLA designation) against DMV records to confirm the information matches a valid ID, and then consults four state databases to determine if the purchaser is prohibited from possessing ammunition. 3-ER-416; *see also* 11 CCR §4281(e). If that database search comes back clean, the person is approved. 3-ER-416. But that happens only about 25% of the time. 3-ER-418. More often, something in one of the databases (e.g., an arrest record that does not note the offense) necessitates further time-

14

consuming manual investigation, although that rarely leads to a determination of ineligibility. *See* 3-ER-416-17. While approval through a Basic Check is valid for 30 calendar days, 1-SER-275, it can be used for only one transaction, and CDOJ does not input the information from the initial check into its AFS and APPS databases to obviate the need to go through the full check all over again. *See* 1-SER-193; *Rhode*, 445 F.Supp.3d at 921. Purchasers thus must pay another $19 and endure the same multi-day wait *each time* they purchase ammunition via a Basic Check. 11 CCR §4283(b), (d)(1); AG.Br.7-8.

Unsurprisingly, the Basic Check is considerably less popular than the Standard Check. CDOJ processed 3,033 Basic Checks (as compared to 538,359 Standard Checks) between January 2023 and June 2023. 3-ER-415, 430. Of those 3,033 Basic Checks, 136 were denied because the purchaser was identified as a prohibited person, while another 90 were rejected (i.e., CDOJ refused to conduct or failed to complete a background check) for other reasons. 3-ER-430. Of those 90 miscellaneous rejections, 23 were rejected because the person's ID did not match DMV records and 67 were rejected because CDOJ's records regarding the person's criminal history were "incomplete"—meaning that, simply because the state could not definitively conclude whether the applicants were eligible, CDOJ treated them as if they were not. 3-ER-430; *see* Cal. Pen. Code §30370(a)(3).

### c. Firearms Eligibility Check

Individuals purchasing a firearm from a CDOJ-approved vendor may purchase ammunition alongside the firearm. 11 CCR §4284. For this option, a purchaser "shall only pay the fee for the firearms eligibility check," *id.* §4284(b), which currently is $37.19, 1-ER-8. If the purchaser wants to take possession of ammunition immediately, however, she must use one of the other options, as California will otherwise subject the ammunition transaction to the same 10-day waiting period to which it subjects firearms transactions. 11 CCR §4284(c).

### d. COE Verification Process

Finally, individuals may obtain a CDOJ-issued Certificate of Eligibility ("COE") to present to vendors to verify their eligibility to purchase ammunition. *Id.* §4285. To obtain a COE, an individual must apply via the CFARS website. 2-SER-298-99. The application process "includes a firearms eligibility criminal background check" following the submission of the applicant's fingerprints through a Live Scan. 2-SER-298-99. Applicants must pay CDOJ a $71 fee just to submit an application and must also pay any fee charged by the Live Scan Operator for the required fingerprint submission. 2-SER-299-300. Using a COE to purchase ammunition costs another $1. 11 CCR §4282(b). And, like a Standard Check, a COE verification is valid only for 18 hours and one purchase, so COE holders must

16

pay that fee every time they purchase ammunition. 1-SER-275. A COE is good, moreover, for only one year, and costs another $22 to renew. 2-SER-298, 301.

The state processed 1,323 COE verifications between January and June 2023, 115 of which were rejected. 3-ER-434. That was not owing to any determinations that someone was a prohibited person; once again, those are simply instances in which CDOJ refused to process the verification due to data mismatches or because the COE was not current. 3-ER-419.

### B. California Prohibits its Residents from Personally Bringing into California Ammunition Lawfully Acquired Out of State.

As explained, only a licensed "ammunition vendor" may process a request for CDOJ approval, and only sellers with a physical presence in California are eligible to obtain the requisite licenses. Cal. Pen. Code §30370; *see* 11 CCR §§4282(c), 4283(c), 4285(c). So when neither party to an attempted ammunition transaction is an approved vendor, the seller must "deliver the ammunition to a vendor to process the transaction," and the approved vendor in turn will "deliver the ammunition to the purchaser, if the sale is not prohibited." Cal. Pen. Code §30312(a)(2). Thus, while Californians may purchase ammunition "over the Internet or through other means of remote ordering," they cannot take possession of the ammunition until a licensed vendor "initially receives the ammunition and processes the transaction," which requires the purchaser to be present in person ("face-to-face"). *Id.* §§30312(b), 30348(a). As a result, a California resident generally cannot bring into California

17

any ammunition acquired outside of the state. Rather, California requires residents who purchase ammunition out of state to have it shipped to an approved vendor in California for in-person processing. *Id.* §30314(a)-(b); *see* 1-ER-6.

Vendors may charge a fee to process any third-party transactions. Cal. Pen. Code §30312(c). "If the purchaser will be present for immediate delivery of the ammunition, the fee shall not exceed five dollars ($5)." 11 CCR §4263(a). "If the purchaser will not be present for immediate delivery of the ammunition, the vendor may charge an additional storage fee as agreed upon with the purchaser prior to the vendor receiving the ammunition." *Id.* §4263(b). There is no cap on what vendors may charge purchasers who are not present for immediate delivery, which, as a practical matter, will almost always be the case for transactions originating out-of-state. And vendors may refuse to process third-party transactions at all, whether they originate with out-of-state sellers or with Californians simply seeking to ship home ammunition they acquired elsewhere. 2-SER-361; *see also* Cal. Pen. Code §30312(a). In-state vendors thus have veto power over ammunition transactions originating out of state. Unsurprisingly, out-of-state transactions have suffered considerably under the new regime. 2-ER-64-65, 67-69.

## II. Procedural Background

Plaintiff Kim Rhode, a six-time Olympic medal winner in trap and skeet shooting, filed this lawsuit in April 2018 along with six other California residents,

three out-of-state ammunition vendors, and the California Rifle & Pistol Association, Incorporated ("CRPA"). As relevant here, Plaintiffs alleged that California's novel ammunition background check regime violates the Second Amendment and the Commerce Clause and is preempted by 18 U.S.C. §926A. 4-ER-646-77.

Shortly after California's regime took effect on July 1, 2019, and in light of numerous reports of significant and substantial issues with its implementation, Plaintiffs moved for a preliminary injunction. The district court granted Plaintiffs' motion, finding that California's regime likely violates both the Second Amendment and the Commerce Clause. *Rhode*, 445 F.Supp.3d 902. After granting an administrative stay mere days later, a divided panel of this Court granted the state's motion for a stay pending appeal. *See* C.A.Dkts.4, 13-1.[4]

After completion of briefing, this Court ordered the parties to file additional briefing on "whether there exists 'persuasive historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical scope of the Second Amendment.'" C.A.Dkt.64 (quoting *Jackson v. City & Cnty. of S.F.*, 746 F.3d 953, 960 (9th Cir. 2014)). The Court then held oral argument and, a week later, ordered the parties to file another round of "supplemental briefs addressing the

---

[4] "C.A.Dkt." refers to No. 20-55437 (9th Cir.).

constitutionality of the Basic Check in its own right." C.A.Dkt.75. The Court subsequently stayed the appeal pending the first round of en banc proceedings in *Duncan v. Bonta*, No. 19-55376. C.A.Dkt.82. After the Supreme Court issued its decision in *Bruen*, this Court vacated its earlier order and directed the parties to file more supplemental briefing addressing *Bruen*'s impact. C.A.Dkt.87. The Court ultimately vacated and remanded "for further proceedings" in light of *Bruen* without resolving any issues in the appeal, over the dissent of Judge Bumatay. C.A.Dkt.110.

On remand, the district court ordered the state to proffer additional evidence of historical laws that it claimed support its novel ammunition restrictions. In response, the state filed two charts listing 148 laws spanning from 1403 in England to 1938 in the United States. 3-ER-508-40. The district court then consolidated the still-pending motion for preliminary injunction with a trial on the merits pursuant to Rule 65(a)(2) and, after receiving briefing and hearing argument, issued a decision permanently enjoining the ammunition background check requirements on three independent grounds.

First, the court concluded that the regime violates the Second Amendment. At the threshold, the court noted that "[a]ll agree that the ammunition necessary to use a gun is covered by the Second Amendment's protection for keeping and bearing arms." 1-ER-10. Turning to historical tradition, the court concluded that California was "unable" to carry its burden, 1-ER-10, as the state failed to "identif[y] a single

historical law that required a citizen to pass a background check in order to purchase ammunition." 1-ER-21.

Second, the court concluded that California's anti-importation provisions (Penal Code §§30312 & 30314) discriminate against interstate commerce and thus violate the Commerce Clause. "[N]o other laws in the nation," the court explained, "erect a similar barrier to this one," which "guarantee[s that] all sales originate with, or flow through," in-state sellers. 1-ER-30. "[S]uch purposeful discrimination … lies at the core" of what the Commerce Clause forbids. 1-ER-30.

Finally, the court held that 18 U.S.C. §926A, which protects the right of lawful firearm owners to transport firearms and ammunition across state lines, preempts California Penal Code §30314, which prohibits California residents from bringing ammunition back into the state, because "§30314 criminalizes that which §926A immunizes." 1-ER-32.

The state appealed and once again sought a stay pending appeal, which this Court granted. C.A.Dkt.13-1.

## SUMMARY OF ARGUMENT

California's novel ammunition regime is triply invalid. The district court was eminently correct to enjoin it. This Court should affirm.

First, California's requirement that law-abiding citizens undergo onerous and duplicative background checks every time they want to purchase ammunition

21

violates the Second Amendment. At the threshold, the state does not deny that Plaintiffs are among "the people" whose rights the Amendment protects or that the challenged laws apply to the general public. And the state concedes that the Second Amendment protects the right to obtain the bullets necessary to use firearms. The state thus cannot deny that Plaintiffs' proposed course of conduct—purchasing ammunition so that they may keep and bear firearms for lawful purposes such as self-defense—comes within the Amendment's coverage. And while the state tries to recharacterize Plaintiffs' proposed conduct as purchasing ammunition "without complying with any background check requirements" or "hav[ing] ammunition shipped directly to their homes," AG.Br.19-20, *Bruen* and *Rahimi* make clear that the government cannot escape its burden by redefining a plaintiff's proposed conduct by reference to the absence of its (novel) regulatory hoops.

California thus bears the burden to "affirmatively prove that" its restrictions are consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. It cannot. American governments may have long sought to keep arms out of dangerous felons' hands, but none before California had ever seen fit to force citizens who have already (and often repeatedly and recently) demonstrated their eligibility to keep and bear arms to pass a background check every time they want to acquire ammunition. That is not because ammunition sales or background checks are newfangled. It is because one of the

22

most fundamental principles underlying our Nation's historical tradition is that law-abiding citizens should not be presumed unsuitable and forced to disprove their ineligibility ad infinitum just to exercise a fundamental right.

Even if *some* ammunition screening regime might theoretically pass muster, moreover, this one decidedly does not. *Bruen* cautioned that even a regulatory scheme that is consistent with historical tradition as a general matter would be unconstitutional if "put toward abusive ends." 597 U.S. at 38 n.9. That last phrase describes this regime to a T. California has demanded that its residents pass a background check each and every time they purchase ammunition—yet it routinely refuses to conduct those background checks, for reasons as arbitrary as its own failure to correct typos or stale information in the incomplete and often out-of-date records that it has chosen to use to conduct them. Indeed, the record demonstrates that over 10% of background check requests are "rejected," which means the state simply refuses to conduct a check at all. Yet the state neither tells the citizen why it refused to do so nor explains how to remedy whatever is causing the problem (which, again, is typically deficiencies in the state's own records). A regime that requires citizens to pass a background check every time they want to exercise a fundamental constitutional right, but then systematically rejects their efforts to secure one owing to problems of the state's own making, and without even explaining the nature of the disconnect to the applicant, is the very definition of an abusive regulatory scheme.

Second, California's interlocking web of laws that grant in-state vendors a monopoly on California's ammunition market violates the Commerce Clause. Under Penal Code §§30312 and 30314, "California's resident businesses are the only businesses that may sell [ammunition] directly to" California residents. *Rhode*, 445 F.Supp.3d at 950. Even if a California resident travels to Nevada and lawfully purchases ammunition through a face-to-face transaction with a Nevada seller that has the same federal firearms license as vendors in California, §§30312 and 30314 require the ammunition to be shipped to and processed by a CDOJ-approved vendor in California before it can be delivered to the purchaser—all for a fee of the California's vendor's choosing, assuming the California vendor is willing to accept shipment at all, which it is not required to do. As a result, in-state vendors have unfettered discretion to condition out-of-state sellers' access to the California market on their customers' agreement to pay a King's ransom. That is about as discriminatory as state laws get. And the burdens California's regime imposes on interstate commerce are clearly excessive in relation to the putative local benefits, as the state has adduced no evidence that federally licensed out-of-state vendors are selling ammunition to prohibited persons with any kind of frequency.

Finally, federal law expressly preempts California's prohibition on personally transporting ammunition into the state. FOPA contains an express preemption clause: "Notwithstanding" any contrary state law, law-abiding citizens may

transport firearms and ammunition from any place they may lawfully be possessed to any other place they may lawfully be possessed, provided that, "during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle."  18 U.S.C. §926A.  California ignores FOPA's express preemption clause, but that ostrich defense cannot save Penal Code §30314.  California has made it a crime for California residents to "transport into this state any ammunition that [they] … obtained from outside of this state unless [they] first ha[ve it] delivered to a licensed ammunition vendor."  Because that law prohibits what FOPA protects, it is expressly preempted.

## STANDARD OF REVIEW

"When a district court consolidates its ruling on a preliminary injunction with its decision on the merits under Rule 65(a)(2)," this Court reviews factual findings for clear error and legal conclusions de novo.  *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Rels.*, 730 F.3d 1024, 1031 (9th Cir. 2013).[5]

---

[5] Though the facts here are materially undisputed, to the extent the district court made any factual findings, they should be reviewed for clear error.  The state claims that, "[w]hile the parties did not formally style their submissions as summary judgment briefs, both sides requested judgment as a matter of law."  AG.Br.17.  But neither the court nor the parties referred to the respective omnibus briefs as briefs in support of or opposition to summary judgment.  Dist.Ct.Dkts.103, 104.

**ARGUMENT**

**I.   California's Novel Ammunition Background Check Regime Violates The Second Amendment.**

"The threshold question in a Second Amendment claim is whether the Amendment presumptively protects the individual's conduct." *United States v. Perez-Garcia*, 96 F.4th 1166, 1178 (9th Cir. 2024) (citing *Bruen*, 597 U.S. at 24).  To answer that question, a court "ask[s] whether the [challengers] [a]re among 'the people' within the plain meaning of the Second Amendment and then ask[s] whether the plain text of the Amendment encompasses [their] 'proposed course of conduct.'" *Id.* (quoting *Bruen*, 597 U.S. at 31-32).  If the answer is yes, then the government must show that "the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S.Ct. at 1898.  That, in turn, requires proving that the challenged restriction imposes similar burdens on the right to keep and bear arms (the "how") for similar reasons (the "why") as representative historical analogues. *Bruen*, 597 U.S. at 17, 29-30; *Rahimi*, 144 S.Ct. at 1898-1903.

The district court correctly resolved both inquiries here.  There is no dispute that plaintiffs are among the "people" protected by the Second Amendment, and California's novel ammunition regime unquestionably burdens "conduct covered by the plain text of the Second Amendment."  1-ER-10.  But the state "has failed to carry its burden to demonstrate that the ammunition background check laws 'are consistent with this Nation's historical tradition of firearm regulation.'"  1-ER-28.

26

While early American governments deployed a host of strategies to keep arms out of the hands of those unfit to exercise the right to keep and bear them, none adopted any measure that even remotely resembled this regime. And even if some form of screening regime for ammunition acquisitions might survive constitutional scrutiny, California's byzantine, needlessly error-prone regime would not, as it routinely deprives individuals of their Second Amendment rights for reasons having nothing to do with whether they are prohibited from exercising them. That is the very model of an "abusive" background check regime. *Bruen*, 597 U.S. at 38 n.9.

### A. California's Ammunition Background Check Regime Regulates Conduct Covered by the Second Amendment's Text.

The threshold textual inquiry here is simple, as it will be in most cases. The state does not dispute that its new ammunition regime applies to "the people" protected by the Second Amendment. Nor does it dispute that Plaintiffs are among those "people." And "the plain text of the Second Amendment" plainly "protects" the "conduct" in which Plaintiffs seek to engage. *Bruen*, 597 U.S. at 32. The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. Plaintiffs would like to purchase ammunition so that they may keep and bear operable firearms for lawful purposes such as self-defense, but California's regime restricts their ability to do so. Because "the challenged condition restricts [Plaintiffs'] ability to bear or keep [an operable] firearm—even those [they] would

27

lawfully store at home for self-defense—[it] unquestionably implicates [their] Second Amendment rights." *Perez-Garcia*, 96 F.4th at 1181.

The state briefly suggests that, because the Second Amendment does not disambiguate "ammunition" from "arms," the right to acquire ammunition is not actually covered by the plain text. AG.Br.24. But it never raises this argument in full voice, and for good reason. Even before *Bruen*, this Court held that the right to keep and bear arms includes the right "'to obtain the bullets necessary to use them.'" AG.Br.19 (quoting *Jackson*, 746 F.3d at 967); *accord* 1-ER-10. Far from disturbing that conclusion, *Bruen* reinforces it by reiterating that the "general definition" of the term "arms" "covers modern instruments that facilitate armed self-defense." *Bruen*, 597 U.S. at 28; *see also District of Columbia v. Heller*, 554 U.S. 570, 581 (2008). That obviously includes ammunition, for when a citizen uses an operable firearm for armed self-defense, both the firearm and the ammunition loaded within it facilitate that use. *See United States v. Miller*, 307 U.S. 174, 180 (1939) ("The possession of arms also implied the possession of ammunition."). The district court was thus plainly correct to conclude that Plaintiffs' proposed course of conduct—acquiring ammunition—passes *Bruen*'s threshold textual inquiry.

In arguing to the contrary, the state tries to recharacterize Plaintiffs' proposed course of conduct as purchasing ammunition "without complying with any background check requirements," or "hav[ing] ammunition shipped directly to their

28

homes." AG.Br.19-20. But the state cannot escape its burden to justify incursions on the right to keep and bear arms by redefining an individual's proposed course of conduct by reference to its (novel) regulatory hoops. Both *Bruen* and *Rahimi* make that clear. *Bruen* did not define the conduct in which plaintiffs sought to engage as carrying a firearm in public "without first showing a special need above and beyond that of ordinary citizens," *see Bruen*, 597 U.S. at 32-33, and *Rahimi* did not ask whether the plain text of the Second Amendment protects "keeping firearms despite having been civilly adjudicated a domestic abuser," *see Rahimi*, 144 S.Ct. at 1903. In both cases, the Court required the government to meet its historical-tradition burden simply because the challenged laws restricted the ability to keep and/or bear arms. So too here. Plaintiffs can neither keep nor bear what they do not have, so the state must fit its restrictions on their right to obtain ammunition within a settled tradition of imposing similar restrictions for similar reasons.

California tries to escape that conclusion by arguing that *Heller* preemptively immunized "'conditions and qualifications on the commercial sale of arms'" from the historical-tradition analysis that *Bruen* laid out. AG.Br.1, 20-21 (quoting *Heller*, 554 U.S. at 626-27 & n.26). But as this Court recently held, *Bruen* makes clear "that the government bears the burden of showing that *any* regulation infringing on Second Amendment rights is consistent with this nation's historical tradition of firearm regulation." *Perez-Garcia*, 96 F.4th at 1175; *accord, e.g.*, *Atkinson v.*

*Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023). So did *Rahimi*, which reiterated that "when the Government regulates arms-bearing conduct, … it bears the burden to justify its regulation." *Rahimi*, 144 S.Ct. at 1897. The Court did not say "unless the law involves felons," or imposes "conditions and qualifications on commercial sale," or does not "operate on [its] face to prevent any person from keeping or bearing arms." AG.Br.23. It said that so long as the government "regulates arms-bearing conduct," the government bears the burden to justify that regulation, full stop. *Rahimi*, 144 S.Ct. at 1897. And a law that, like California's, acts as a gatekeeper restricting citizens' ability to acquire the arms they want to keep and bear plainly fits that bill.

At any rate, *Heller* described as "presumptively lawful" only "*longstanding* … laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27 & n.26 (emphasis added). A first-of-its-kind ammunition background check regime that was not enacted until 2016 does not come close to qualifying as "longstanding." Moreover, "*Heller* does not include ammunition regulations in the list of 'presumptively lawful' regulations," *Jackson*, 746 F.3d at 968, making that language doubly inapplicable here. The state insists that *Jackson* does not mean what it says and could not have "superseded" *Heller*'s statement that its list "d[id] not purport to be exhaustive." AG.Br.24 (citing *Heller*, 554 U.S. at 627 n.26). But this Court did not purport to supersede anything. It simply recognized

that it must conduct its own historical analysis since ammunition regulations were not on *Heller*'s list. *Jackson*, 746 F.3d at 968. And *Bruen* confirmed that the Court was eminently correct to do so. *Heller*'s dicta thus cannot relieve the state of its burden to "affirmatively prove that" its novel ammunition background check regime is consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19.

> **B. California's Novel and Burdensome Ammunition Regime Flouts Our Nation's Historical Tradition.**

To justify a restriction on arms-bearing conduct, the government bears the burden of identifying "an enduring American tradition of [similar] regulation." *Id.* at 30, 69. That is a particularly tall task here, as California's ammunition background check regime is concededly the first of its kind, and only one state has adopted laws even remotely similar in the eight years since California enacted it. Unsurprisingly, the state does not come close to meeting the daunting burden of identifying an enduring historical tradition supporting a regulatory regime that remains an extreme outlier even today.

When determining whether a modern law is consistent with our Nation's historical tradition, "[w]hy and how the regulation burdens the right are central to th[e] inquiry." *Rahimi*, 144 S.Ct. at 1898, 1902; *see Bruen*, 597 U.S. at 29. While the state's "why" here—keeping operable firearms out of the hands of those who are ineligible "to possess and carry" them, AG.Br.29—may not be particularly novel, its

31

"how" unquestionably is. Not once in the first 240 years of our Nation's history did any jurisdiction require individuals to submit to a state investigation into whether they may lawfully possess ammunition each and every time they try to purchase it, and California remains one of only two states to do so to this day. That is not owing to lack of opportunity. Ammunition sales predate the founding, and, as the state's own expert documented, background checks for firearms became prevalent early in the 20th century. 2-ER-105-06. Yet it took more than 100 more years before any state even proposed a duplicative background check regime for ammunition sales,[6] and it took even longer for California to become the first state to actually implement such a regime.

California does not deny any of that. Nor could it. Governor Newsom (the regime's lead proponent) openly touted the new regime as the "first-in-the-nation requir[ing] point-of-sale background checks for the purchase of ammunition." Press Release, Office of Governor Gavin Newsom, *Ahead of Implementation Date of New*

---

[6] In 2013, New York adopted a law requiring point-of-sale background checks for ammunition, but the state suspended the law before it took effect, concluding that it could not be implemented without imposing onerous and arbitrary burdens on a fundamental right. *See* James B. Jacobs & Zoe A. Fuhr, *Universal Background Checking – New York's SAFE Act*, 79 Alb. L. Rev. 1327, 1349-52 (2016). New York recently resumed efforts to enforce the law, *see* Kate Lisa, *'It's not working': State police ammo database sees issues delays* (Sept. 19, 2023), https://tinyurl.com/5m9xwtsn (detailing delays and improper denials), and a challenge to the recently revived regime is currently on appeal, *see N.Y. State Firearms Ass'n v. Chiumento*, No. 24-1290 (2d. Cir.) (appeal filed May 14, 2024).

*Gun Safety Policies in California, Governor Newsom and State Leaders Reaffirm Commitment to Ending Epidemic of Gun Violence* (Jun. 25, 2019), https://bit.ly/3xK5QfM; *see also, e.g.*, Gavin Newsom (@GavinNewsom), Twitter (Aug. 6, 2019, 3:33 PM), https://bit.ly/2OYVB3l; Scott Shafer, *Cox, Newsom Face Off in Final California Gubernatorial Debate*, KQED (Oct. 8, 2018), https://bit.ly/3xId3wM (statement of Gov. Newsom at 00:29:22). That should be the end of the road for the state and its ahistoric regime, for "if earlier generations addressed the societal problem" a state claims its challenged modern law is designed to address, "but did so through materially different" and less intrusive "means," then the "modern regulation is unconstitutional." *Bruen*, 597 U.S. at 26-27, 29. In other words, if the same "why" preoccupied earlier generations, but those earlier generations chose a far different and far less restrictive "how," then the novel and more restrictive alternative cannot be squared with the Second Amendment.

To be sure, "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791," so a modern law that "does not precisely match its historical precursors … 'still may be analogous enough to pass constitutional muster.'" *Rahimi*, 144 S.Ct. at 1897-98 (quoting *Bruen*, 597 U.S. at 30). But California's regime does not have any historical precursors at all. On remand, the district court directed the state to create a comprehensive list of its best evidence of purportedly analogous laws from the time of the Second Amendment to

33

20 years after the Fourteenth Amendment.  Dist.Ct.Dkt.77.  Despite (ignoring those time constraints and) producing a list of 148 laws from 1403 to 1938, the state came up empty, finding zero laws that required people to prove their eligibility to exercise Second Amendment rights just to purchase ammunition—let alone to do so each and every time they sought to exercise that right.  Instead, the state offered only a hodgepodge of laws that look absolutely nothing like the regime it seeks to defend.

Take, for instance, the state's lead example of the loyalty oath laws that some newly created states employed in the late 1700s and other former Confederate states imposed in the aftermath of the Civil War.  *See* AG.Br.30-31.  Those laws did not single out ammunition (or even firearms) for conditions at the point of sale.  They imposed a *general* requirement, typically on all or some subset of "male white inhabitants," to "take and subscribe" to a loyalty oath before a justice of the peace, often by a date certain, regardless of whether they had any desire to keep and carry arms.  *See, e.g.*, Act of June 13, 1777, ch. 756, 9 *The Statutes at Large of Pennsylvania from 1682 to 1801* 111 (1903).  As the state's own expert explained, moreover, these laws were designed to determine "who could be entrusted with the privileges of citizenship, which included voting, the receipt of food rations from the U.S. army, the admission to professions, and the purchase and sale of firearms and ammunition." 3-ER-372; *see also* 1-ER-27.  Those who refused to take the oath thus forfeited all manner of rights and privileges, not just the right to keep and bear arms.

34

Those who complied, by contrast, sufficiently demonstrated their loyalty by taking the oath once; they did not have to retake it every time they wanted to vote, obtain food rations, practice their profession, or purchase arms. And the state did not conduct an independent investigation into whether an attestation of loyalty was true before accepting it; all one had to do to retain all the privileges of citizenship, including Second Amendment rights, was take the oath. That does not bear even a passing resemblance to a regime that conditions the exercise of one—and only one—constitutional right on passing a background check each and every time one wants to exercise it (let alone one riddled with arbitrary obstacles like California's).

The state next points to regimes requiring a license to carry a firearm concealed. AG.Br.31-33. If anything, those laws just underscore what an extreme departure California's regime is from anything that came before it. A carry license regime secures someone a license to carry a firearm anytime she wants to do so, subject to whatever general (and constitutional) restrictions on carrying firearms a state may have. Once an individual has obtained a license, she may carry a firearm consistent with its terms for as long as the license remains valid. She does not have to go back to the state every time she wants to leave her house with a firearm and go through the approval process all over again. And while her license will likely need to be renewed at some point, a licensing regime is typically designed to ensure that the license can be renewed before it expires, thus effectively licensing the activity in

35

perpetuity so long as the license-holder does not provide the state with any grounds to revoke the license. *This* regime, by contrast, treats a background check as good for one ammunition transaction only—and even then, in most cases the checks are good for a mere 18 hours. The state thus is not "licensing" anything; it is just providing a one-time-only permission slip that may expire before someone can even use it. That is radically more burdensome than a regime that licenses conduct on an ongoing basis and merely requires occasional renewal.

The state also points to "surety laws 'that required certain individuals to post bond before carrying weapons in public.'" AG.Br.32. But as the Supreme Court just reminded, those laws only "applie[d] to individuals found to threaten the physical safety of another." *Rahimi*, 144 S.Ct. at 1901. States did not demand sureties from individuals who had never been found to pose any threat to anyone, let alone from individuals that the state had just affirmatively found do *not* pose any such threat a mere 18 hours earlier. The state's proffered historic vendor-licensing and record-keeping requirements, AG.Br.32-33, stray even further afield, as they did not prohibit vendors from selling to anyone; they just required vendors to secure licenses for their own activities and keep records of their sales. Indeed, those laws are not even analogous to California's recordkeeping requirements, which require collection of information each and every time an individual purchases ammunition. Cal. Pen. Code §30352. To deem such regulations analogous to a law that conditions

a citizen's acquisition of ammunition on passing a background check anew every 18 hours would deprive the "how" component of the historical inquiry of all force.[7]

All of that readily distinguishes this case from *Rahimi*, as the Court did not begin and end its analysis there with the fact that the "why" of 18 U.S.C. §922(g)(8) is to keep firearms out of the hands of those who might misuse them. To the contrary, the Court reiterated that "[e]ven when a law regulates arms-bearing for a permissible reason, … it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Rahimi*, 144 S.Ct. at 1898. It then proceeded to examine in detail whether the means the government chose—prohibiting people from possessing a firearm if they have been determined by a judge to "pose a credible threat to the physical safety of others," *id.*—are consistent with means chosen by earlier generations. And it upheld the law only after finding it analogous to "founding era regimes in both why *and how* it burdens the Second Amendment right." *Id.* at 1901 (emphasis added).

In finding "ample evidence" in the historical record to support that conclusion, moreover, the Court did not invoke any and all laws that had some vague connection to preventing the misuse of firearms. It focused on two very specific analogues that

---

[7] The state also cites a handful of historic laws requiring a license to manufacture or sell gunpowder. AG.Br.33. But "those laws had nothing to do with crime prevention, and everything to do" with managing the "fire hazards" that came with storing "[g]unpowder, especially in large quantities," in that era. 2-ER-41.

imposed restrictions only on those with a proven propensity to misuse them: surety laws, which "authorized magistrates to require individuals suspected of future misbehavior to post a bond," *id.* at 1900, and "going armed" laws, which "punished" the misuse of arms "with 'forfeiture of the arms … and imprisonment,'" *id.* at 1901 (quoting 4 William Blackstone, *Commentaries* 149). And the Court went out of its way to emphasize that those same laws could *not* justify modern measures that "effectively presume[]" that citizens lack Second Amendment rights, as they were proper analogues in *Rahimi* only because §922(g)(8) "presumes, like the surety laws before it, that the Second Amendment right may only be burdened once a defendant has been found to pose a credible threat to the physical safety of others." *Id.* at 1902.

California's novel regime takes exactly the opposite approach. Like the regime held unconstitutional in *Bruen*, California "broadly restrict[s]" the ability of *anyone* to obtain ammunition, without regard to any "demonstrated threats of physical violence." *Id.* at 1901. And unlike §922(g)(8) and its historical analogues, which "'presumed that individuals had a right to [keep and] carry'" arms in common use, California's law "effectively presume[s] that no citizen ha[s] such a right, absent" a background check that must be run anew each and every time she wants to purchase ammunition. *Id.* at 1902 (quoting *Bruen*, 597 U.S. at 56); *see* p.5, *supra*. Under California's regime, everyone—even those who have demonstrated their eligibility as recently as 18 hours earlier—is treated as presumptively *in*eligible to

38

keep and bear arms, which is doubly absurd given that APPS already automatically informs CDOJ when someone who lawfully purchased a firearm in the past becomes ineligible to possess arms. California's regime is thus more akin to a form of probation under which the state assumes always and everywhere that anyone who wants to exercise Second Amendment rights must be "more likely … to violate the law" than follow it, *United States v. Knights*, 534 U.S. 112, 120 (2001), no matter how many times they have proven otherwise. Again, the state has not identified any regime in history that operated anything like that.

C. **Far From Helping the State's Cause, *Bruen*'s Brief Discussion of Background Checks Confirms that California's Novel Regime Is Unconstitutional.**

Unable to identify any meaningful historical analogues for its first-of-its-kind ammunition background check regime, the state insists that it need not do so because *Bruen* has already "endorsed the use of 'background check[s].'" AG.Br.21 (quoting *Bruen*, 597 U.S. at 38 n.9). That is an overstatement in the extreme.

To be sure, *Bruen* noted that "nothing in our analysis should be interpreted to suggest the unconstitutionality of … 'shall-issue' licensing regimes," which it observed "often require applicants to undergo a background check" to obtain a license to carry a handgun. *Bruen*, 597 U.S. at 38 n.9. But, again, this case does not involve a licensing regime. Law-abiding citizens do not obtain a license or permit to acquire ammunition at their leisure once they pass the state's new background

39

check. All they obtain is the state's permission to engage in a single ammunition transaction that typically must occur within 18 hours. They must then go through that same process all over again every time they want to purchase ammunition in the future, no matter how recently or frequently they have already passed a background check. And unlike a firearm, which can continue to be used virtually forever so long as it is kept in good condition and one has ammunition, ammunition is good for one use only, so it must be restocked on a regular basis. *Bruen* said nothing supporting the constitutionality of a prophylaxis-on-prophylaxis-on-prophylaxis regime that forces people who have already passed the necessary background check to acquire a firearm to continue undergoing background checks ad nauseum every time they want to obtain the ammunition needed to render it operational.

Even as to more traditional regimes, *Bruen* recognized that "any permitting scheme can be put toward abusive ends," and it provided as examples schemes in which "lengthy wait times in processing license applications or exorbitant fees" preclude "ordinary citizens" from exercising their constitutional rights. *Id.* This regime is the poster child for that cautionary note. As the district court documented in exhaustive detail, "record data mismatches, lengthy and occasionally infinite wait times, and sometimes exorbitant fees, are currently denying ordinary citizens their right to public carry." 1-ER-14. Fully "11 percent of individuals were rejected following a Standard Check in the first six months of 2023," AG.Br.26-27, but

40

virtually none of those rejections involved a dangerous felon attempting to unlawfully purchase ammunition, *see* p.10, *supra*. People were instead deprived of ammunition simply because the state was unwilling to even try to conduct the background check that it now requires, for issues as mundane as typos in its own records or failure to update those records to match name or address changes that it processes when issuing state IDs.

What is more, CDOJ's initial refusal to conduct a background check is just the start of a Kafkaesque process that exposes law-abiding citizens to even more confusion and delay. As the state's own witnesses have admitted, when purchasers' requests for background checks are rejected, they are given no meaningful explanation for why they were rejected and no guidance on how to fix the problem. *See* 1-SER-10-13. Even if someone realizes or a vendor informs her that the DROS number on a rejection form can be used to look up the transaction on CFARS (which the form does not tell them), CFARS does not say why the transaction was rejected, let alone what to do about it. 1-SER-74. It could be a missing record, or it could be an inaccurate one. And while having a copy of any existing AFS records might at least help discern the answer, 1-SER-290, prospective purchasers may not have those records at the ready, and CDOJ has taken upwards of three months to process requests for them, *Rhode*, 445 F.Supp.3d at 920; 2-ER-59. Even if one is fortunate enough to identify the problem, moreover, fixing it can be a herculean task, as it

requires recalling one's personal information *exactly* "as it was, at the time when a firearm was purchased or transferred into the individual's ownership, as reported to" CDOJ. 11 CCR §4353(c). It is little surprise, then, that almost 40% of rejected individuals still had not managed to purchase ammunition fully six months after being rejected. 3-ER-415, 426; *see also* p.10, *supra*.

And that is to say nothing of the untold number of would-be purchasers who never make it to the point of submitting to a background check owing to CDOJ's insistence on affirmative proof not only of identify, but of the prospective purchaser's lawful presence in the United States—which the state does *not* demand before issuing its default IDs that it accepts for virtually every other purpose. Nor does it account for the many citizens who have been deterred from even trying to purchase ammunition because the state's scheme is so inscrutable and intimidating. In point of fact, before the new regime took effect in 2019, California estimated that there would be 13 million ammunition background checks per year. 2-SER-324, 330. Yet the actual number has been just a small fraction of that (roughly 1 million per year). 1-ER-15 n.17. It does not take rocket science to connect the dots: "[T]he onerous and inescapable burden of the present system" are "chilling" the rights of law-abiding gun owners. *Rhode*, 445 F.Supp.3d at 924 & nn.27, 28. Indeed, vendors have reported turning away as many of half of their prospective customers in a day

just for lacking the right ID to try to comply with the state's new law. *See, e.g.*, 2-SER-348-49.

Rather than admit that its system is inherently flawed, the state blames the victims, faulting citizens for using the Standard Check rather than the Basic Check. AG.Br.27. But citizens who have purchased firearms in California, and thus fully expect to be (and likely are) in AFS, can hardly be faulted for not realizing that CDOJ may refuse to run their Standard Check anyway owing to inaccuracies in its own records that it does not disclose. Moreover, the Basic Check not only produces arbitrary "rejections" of its own, but can take several days to process and may cost more than the ammunition itself. *See* pp.13-15, *supra*. And that is with less than 1% of would-be purchasers selecting that option; the delays would inevitably get far worse if that number increased tenfold, since CDOJ does not have the staff to conduct en masse the manual investigation that Basic Checks often require. That not only is problematic itself given *Bruen*'s caution about "lengthy wait times" and "exorbitant fees," 597 U.S. at 38 n.9, but compounds the problems with the scheme as a whole, as it has the predictable (and intended) result of funneling people into a Standard Check that all too often ends up proving arbitrary, impenetrable, or both. And even the Basic Check is available only to those who have the requisite identification, meaning people with a state-issued FLA license will be out of luck if they do not happen to keep a birth certificate or passport on hand. Once again, the

43

proof is in the pudding: Tens of thousands of people have still been unable to purchase ammunition many months after their Standard Check was rejected notwithstanding the availability of the Basic Check. 3-ER-426; 4-ER-589.

Given all that, the state's blithe assurance that "California's ammunition background check requirements … require only minor fees and short wait times," AG.Br.34, is flabbergasting. And it displays a remarkable ignorance of the core problem with the regime: People are not being deprived of their Second Amendment rights because they are unwilling to submit to or unable to pass a background check. They are being deprived of their rights because the state often refuses to conduct the background check that it now requires and gives them virtually no information about how to get it to do so. *Contra* AG.Br.25, that is no as-applied problem. It is the inevitable consequence of the state's decision to impose exceedingly onerous, arbitrary, and opaque conditions before it will even try to run a background check on anyone. A regime that routinely deprives people of a constitutional right simply because they cannot figure out how to get the state to conduct the background check on which it has conditioned the right's exercise is virtually the definition of a regulatory "scheme … put toward abusive ends." *Bruen*, 597 U.S. at 38 n.9.

Indeed, there is no historical support for such abusive regimes in *any* context. That is certainly not how federal background checks to acquire a firearm work. All it takes to submit to a federal background check is a valid government-issued ID

44

proving one's identity—so a state-issued FLA ID will suffice. 2-SER-387-89. And if the government cannot complete the check within three days, then it must allow the transaction to go forward. *See* 18 U.S.C. §922(t)(B)(ii). The federal regime thus not only presumes that all who wish to exercise their rights are law-abiding absent proof to the contrary, but ensures that, if the government is unable to timely conduct the background check it requires, that is the government's problem, not the citizen's.

Looking beyond the Second Amendment context, it is unthinkable that a state would impose a voter ID law that does not treat its own standard-issue ID as a valid form of identification, let alone one under which eligible voters who *do* present valid ID could be turned away just because the state misspelled their name or address on its own rolls. And if a city were to require people to secure a permit to hold a parade, but then routinely refused to process applications without telling applicants why they were deficient or how to correct the deficiency, that regime would be facially invalidated in a heartbeat. As it should be, since the problem with such a capricious regime is that it threatens *everyone's* constitutional rights, not just the unlucky ones.

In short, the state has put in place a regime that systematically deprives thousands upon thousands of law-abiding citizens of a fundamental constitutional right for utterly arbitrary reasons. And all in service of identifying what has proven to be a miniscule number of actual lawbreakers. *See* 3-ER-441-42. If law-abiding citizens had to run the same gauntlet just to exercise their religion or right to petition,

no one would seriously defend the constitutionality of such a regime. The conclusion cannot be different just because the state is impinging a right housed in the Second Amendment rather than the First.

## II. California's Novel Ammunition Regime Violates The Commerce Clause.

In the Commerce Clause context, "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Or. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994). California's regime does just that and is not shy about it. The state concedes that "[o]ut-of state vendors" cannot "sell ammunition" directly to Californians who want to possess ammunition in California unless they have "a physical presence and license in California." AG.Br.39-40. That is textbook discrimination, which means that California can rescue its regime from near-automatic invalidation only if it can prove that it has "no other means to advance a legitimate local purpose," *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 331 (2007). The state has not even tried to make that showing. And for good reason: If 48 other states can make do without effectively granting in-state sellers a monopoly on sales of ammunition to state residents, then so can California. After all, at the very *least*, the Supreme Court's Commerce Clause jurisprudence commands that states cannot "hoard a local" market "for the benefit

of local businesses." *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 389 (1994); *accord Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 364 (2023).

A long line of cases confirms that conclusion. Take, for instance, *Dean Milk Co. v. Madison*, 340 U.S. 349 (1951). That case involved a local ordinance that made it unlawful to sell pasteurized milk within city limits unless it was processed at a plant located within five miles of the city center. *Id.* at 350. The Supreme Court struck the law down because it conditioned access to the Madison market on physical presence within (or adjacent to) the jurisdiction. *Id.* at 356. The Court acknowledged that Madison enacted the ordinance out of concern for "the health and safety of its people," and it did not question the legitimacy of Madison's interest in imposing more stringent processing standards than neighboring jurisdictions. *Id.* at 354. But the Court nonetheless held the ordinance unconstitutional, finding those concededly valid interests insufficient to justify "erecting an economic barrier protecting a major local industry against competition from without the State." *Id.*

Even more on point is *Granholm v. Heald*, 544 U.S. 460 (2005), where the Court confronted a New York law mandating that a winery could sell wine directly to New Yorkers only with a direct sales license, which the winery needed "a physical presence in the State" to get. *Id.* at 474. As in *Dean Milk*, the Court readily concluded that "[t]he differential treatment between in-state and out-of-state wineries constitutes explicit discrimination against interstate commerce." *Id.* at 467.

And while New York tried to justify that discrimination on "health," "safety," and "regulatory accountability" grounds, the Court again found those indisputably valid state objectives insufficient to justify the state's discrimination, observing "that improvements in technology have eased the burden of monitoring out-of-state wineries" and that "[b]ackground checks can be done electronically." *Id.* at 492.

The state tries to distinguish those cases by arguing that its requirements are "uniform" because no vendor, in-state or out, "may ship ammunition directly to the consumer" instead of engaging in a face-to-face transaction. AG.Br.41. But the same could have been said in *Dean Milk* and *Granholm*. Every milk processor wanting to sell in Madison needed a physical presence within a five-mile radius of Madison, even if it was a Madison-based retailer that processed milk in Milwaukee. And every winery that wanted to ship directly to New Yorkers needed a physical presence in New York, even if it was a California winery owned by a Brooklynite. Yet the laws were struck down notwithstanding that purported "equal treatment" of in-state and out-of-state residents, because "discrimination based on the extent of local operations is itself enough to" trigger the rule of virtual per se invalidity. *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 42 n.9 (1980).

Nothing in *Black Star Farms LLC v. Oliver*, 600 F.3d 1225 (9th Cir. 2010), or the other "face-to-face" cases on which the state relies alters that conclusion. The laws in those cases did not favor *in-state*, in-person transactions over in-person

48

transactions with a vendor in another state. They just provided preferences for in-state transactions, wherever they may occur. *That* is why they were not discriminatory. California's scheme, by contrast, does not treat in-state and out-of-state vendors "equally," as it requires transactions to be processed face-to-face *in California*. An out-of-state vendor thus cannot sell ammunition directly to a Californian at all. "[S]tate residents who purchase ammunition while outside of California—either at a physical store, over the internet, or by any other lawful means—must deliver it to a licensed ammunition vendor before taking possession of it in the State." C.A.Dkt.14 at 51.

California's attempt to compare out-of-state online sellers to in-state online sellers fares no better. AG.Br.39-40. To be sure, both must complete a sale through a third-party ammunition vendor. But how a state disfavors its resident online sellers compared to its resident brick-and-mortar sellers makes no difference. A law that "discriminates" against out-of-state businesses "is no less discriminatory because in-state [businesses] are also covered by the prohibition." *C&A Carbone*, 511 U.S. at 391; *see also Dean Milk*, 340 U.S. 354 n.4 ("It is immaterial that Wisconsin milk from outside the Madison area is subjected to the same proscription as that moving in interstate commerce."). What matters is that California's resident businesses are the only businesses that may sell directly to California consumers. Sales of any

quantity, by all other sellers, anywhere else in the country, must be funneled through a licensed California vendor who can set the terms without any ability to push back.

California insists that it "imposes uniform requirements on in-state and out-of-state vendors" because "all unlicensed vendors," whether based in Pasadena or Pittsburgh, must "deliver[ ammunition] to a licensed vendor for processing," AG.Br.41, but it conveniently ignores that *only in-state vendors* can be licensed for processing. *See* 11 CCR §4260; p.17, *supra*. While a California vendor may sell to a Californian face-to-face, an out-of-state vendor may not—even if that seller has the same federal license the state deems sufficient to allow a California vendor to sell ammunition. Cal. Pen. Code §16151(b). Instead, an out-of-state seller has only one option: convince a competitor with a physical location in California to process the transaction in-state—for a fee of however much that competitor wishes to charge. It is difficult to imagine more obvious discrimination against interstate commerce.

Indeed, the only regime that even remotely resembles this one is the restrictive regime for alcohol distribution that exists in some states. But those regimes are justifiable (if at all) only by virtue of the Twenty-first Amendment, which expressly authorizes restrictive alcohol-importation laws. *See* U.S. Const. amend. XXI, §2. Before Prohibition, the Supreme Court held that states' authority to prohibit domestic production and manufacture within their borders did *not* allow them to prohibit interstate commerce in alcoholic beverages. *Leisy v. Hardin*, 135 U.S. 100

(1890). The notion that California can impose its discriminatory regime in the absence of constitutional authority comparable to the Twenty-first Amendment is a non-starter. After all, even with that Amendment, the Supreme Court has still invalidated state alcohol laws *less* discriminatory than California's novel ammunition laws. *See Healy v. Beer Inst.*, 491 U.S. 324, 335-43 (1989); *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 581-85 (1986).

Ultimately, no one denies that keeping arms out of the hands of dangerous felons is a legitimate government interest. But what was true at the outset of this case is equally true now: The state "has not offered any evidence … that out-of-state ammunition businesses have been selling ammunition to prohibited persons in California." *Rhode*, 445 F.Supp.3d at 953. "'Without concrete evidence that direct shipping'" poses a genuine safety risk, all the state offers are "unsupported assertions'"—and as the Supreme Court has repeatedly instructed, that is nowhere near enough to justify such discrimination. *Id.* (quoting *Granholm*, 544 U.S. at 490).

That is particularly true given the degree of the burden California's regime imposes on interstate commerce, which "is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *see* 2-ER-63-69. Not only are out-of-state vendors subject to additional expenses and loss of business, but their in-state competitors have unfettered discretion to condition their access to the California market on paying a King's ransom. On the flip side,

51

the putative local benefits—a grand total of 15 arrests and four felony convictions after five years and millions of background checks, *see* 3-ER-441-42—are miniscule, if not illusory. "The solution, for the benefit of the nation as a whole, is to enjoin enforcement of these protectionist laws and permit out-of-state businesses to sell directly to California's residents." 1-ER-30.

## III. Federal Law Squarely Preempts California's Prohibition On Transporting Ammunition Into The State.

The district court correctly concluded that 18 U.S.C. §926A preempts California Penal Code §30314, which makes it a crime for residents to personally bring into the state ammunition that is legal for them to have in the state.

Congress enacted §926A as part of the Firearms Owners' Protection Act ("FOPA"), Pub. L. No. 99-308, §107(a), 100 Stat. 449 (May 19, 1986), *amended by* Pub. L. No. 99-360, §1(a), 100 Stat. 766 (July 8, 1986). It provides as follows:

> *Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof*, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm *nor any ammunition* being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: *Provided*, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm *or ammunition* shall be contained in a locked container other than the glove compartment or console.

52

18 U.S.C. §926A (emphases added). Or, more succinctly: If a person is not prohibited by *federal* law "from transporting, shipping, or receiving a firearm," then he "shall be entitled to transport a firearm" "from any place where he may lawfully possess and carry [it] to any other place where he may lawfully possess and carry [it]," provided that, "during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle." As that language demonstrates, the statute explicitly contemplates that the right to transport a firearm includes the right to transport the ammunition needed to use it. To say otherwise would make the right to firearm transportation illusory.

Congress has thus created a federal-law entitlement to transport ammunition from one place where it is legal to possess it to another place where it is legal to possess it, provided that a person keeps the ammunition in the trunk of his car or some other secure location during the drive and does not load it into a firearm until he arrives at his destination. So while California (subject to the Second Amendment) can prohibit possessing or carrying within its borders certain types of firearms or ammunition, if it allows people to engage in those activities, then it cannot override the federal-law entitlement that §926A confers. *See* U.S. Const. art. VI, cl. 2. Yet that is precisely what California Penal Code §30314 does. Under §30314(a), "a resident of this state shall not bring or transport into this state any ammunition that

53

he or she purchased or otherwise obtained from outside of this state unless he or she first has that ammunition delivered to a licensed ammunition vendor." That is as clear as federal-state conflicts get. And that is the end of the road, for "when federal and state law conflict, federal law prevails and state law is preempted." *N.J. Thoroughbred Horsemen's Ass'n v. NCAA*, 584 U.S. 453, 471 (2018).

Instead of focusing on the text of §926A, the state focuses on the text of 18 U.S.C. §927, which states that "[n]o provision of this chapter [i.e., the chapter of the criminal code governing firearms] shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together." But no one is invoking implied field preemption here; this is an *express*-preemption case—and a straightforward one at that.

By its plain terms, §926A establishes a federal rule that governs "[n]otwithstanding any other provision of any law … of a State …." 18 U.S.C. §926A. The state never mentions that language. That omission is telling, as such non-obstante clauses are as clear an instruction as it gets that Congress is preempting contrary state law. *See, e.g.*, *Ill. Nat'l Guard v. Fed. Lab. Rels. Auth.*, 854 F.2d 1396, 1403 (D.C. Cir. 1988) ("Looking first to the statutory language, we immediately

54

confront the preface to [the federal provision], which explicitly provides that its terms apply 'Notwithstanding any other provision of law…'[.] *A clearer statement is difficult to imagine*: [The federal provision] must be read to override any conflicting provision of law." (emphasis altered) (quoting *N.J. Air Nat'l Guard v. Fed. Lab. Rels. Auth.*, 677 F.2d 276, 283 (3d Cir. 1982))). Whether there is a "direct and positive conflict" here, or whether §30314 presents an "obstacle" to federal objectives, AG.Br.48-50, is therefore beside the point. Those are implied-preemption inquiries, and this is an express-preemption case.[8]

The state next tries to narrow the scope of §926A, insisting that it "only authorizes the interstate transportation of firearms," not ammunition. AG.Br.48. But the text not only anticipates firearm owners' need to transport firearms *and ammunition* from one lawful place and another, but explicitly specifies how a person should store ammunition while transporting it. That makes eminent sense, as it would do little good to protect the right to transport firearms across state lines while leaving states free to impede the transport of the ammunition necessary to use them.

---

[8] That said, of course §30314 poses an obstacle to the objectives of FOPA. The whole point of §926A is to provide a safe harbor for gun owners transporting their firearms and ammunition. *See, e.g.*, 132 Cong. Rec. H4102-03, 1986 WL 792564 ("This provision is designed to be a 'safe harbor' for interstate travelers."); 132 Cong. Rec. S5358-04, 1986 WL 774609 (Statement of Sen. McClure) ("There must be some way for law-abiding Americans to exercise their right to interstate travel with personally owned firearms."). Section 30314 eliminates that safe harbor as to ammunition.

The state protests that §926A "only authorizes transportation between States where the traveler 'may lawfully possess and carry' the firearm (or ammunition)," and argues that the ammunition at issue here is not "lawfully possess[ed]" because Penal Code §30314 prohibits California residents from bringing ammunition into the state without submitting to processing by a licensed in-state vendor. AG.Br.49. That argument is circular in the extreme. By that logic, a state could defeat §926A entirely by just passing a law prohibiting the possession of any firearm or ammunition brought into California from another state. Unsurprisingly, the cases California cites (at 50) involve nothing like that. They are instead both cases in which the destination state banned the possession or sale of a certain type of firearm or ammunition entirely; because the individual could not "lawfully possess and carry such firearm" in the destination state, §926A was not implicated at all. *See Fresno Rifle & Pistol Club, Inc. v. Van de Kamp*, 746 F.Supp. 1415, 1427 (E.D. Cal. 1990); *Coal. of N.J. Sportsmen v. Florio*, 744 F.Supp. 602, 609-10 (D.N.J. 1990).[9] Here, by contrast, California is not regulating what *types* of ammunition or firearms may be possessed or carried within its borders; it is regulating the interstate transport of ammunition generally, which is unequivocally protected by §926A.

_____

[9] *Fresno Rifle* is doubly inapposite since it not only predates *Heller* but explicitly rests on the notion that there is no individual right to possess even a firearm.

In sum, California has made it a crime to acquire ammunition in one state where it is legal to possess, put it in the trunk of one's car, and drive back to California where it is also legal to possess. But FOPA is clear that federal law protects exactly that conduct "[n]otwithstanding any other provision of any law … of a State." 18 U.S.C. §926A. In addition to its many other deficiencies, California Penal Code §30314 is therefore preempted.

## CONCLUSION

For the reasons set forth above, this Court should affirm.

Respectfully submitted,

C.D. MICHEL
SEAN A. BRADY
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
sbrady@michellawyers.com

PAUL D. CLEMENT
ERIN E. MURPHY
 *Counsel of Record*
MATTHEW D. ROWEN
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Plaintiffs-Appellees*

July 24, 2024

57

## STATEMENT OF RELATED CASES

Pursuant to Federal Rules of Appellate Procedure 28-2.6, Appellees state that they are not aware of any related cases.

July 24, 2024

<div style="text-align: right">

<u>s/Erin E. Murphy</u>
Erin E. Murphy

</div>

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Circuit R. 32-1 because this brief contains 13,984 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

July 24, 2024

s/Erin E. Murphy
Erin E. Murphy

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<div align="center">
s/Erin E. Murphy<br>
Erin E. Murphy
</div>

# ADDENDUM

# TABLE OF CONTENTS

18 U.S.C. §926A ...................................................................................1a

18 U.S.C. §927 ....................................................................................2a

Cal. Pen. Code §16151 ........................................................................3a

Cal. Pen. Code §30000 ........................................................................4a

Cal. Pen. Code §30348 ........................................................................6a

Cal. Pen. Code §30385 ........................................................................7a

11 Cal. Code Regs. §4045.1 ................................................................8a

11 Cal. Code Regs. §4260 ..................................................................13a

11 Cal. Code Regs. §4263 ..................................................................15a

11 Cal. Code Regs. §4281 ..................................................................16a

11 Cal. Code Regs. §4282 ..................................................................18a

11 Cal. Code Regs. §4283 ..................................................................19a

11 Cal. Code Regs. §4284 ..................................................................21a

11 Cal. Code Regs. §4285 ..................................................................22a

11 Cal. Code Regs. §4351 ..................................................................23a

11 Cal. Code Regs. §4353 ..................................................................24a

 KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
   Title 18. Crimes and Criminal Procedure (Refs & Annos)
      Part I. Crimes (Refs & Annos)
         Chapter 44. Firearms (Refs & Annos)

18 U.S.C.A. § 926A

§ 926A. Interstate transportation of firearms

Currentness

Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: *Provided,* That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

**CREDIT(S)**

(Added Pub.L. 99-360, § 1(a), July 8, 1986, 100 Stat. 766.)

Notes of Decisions (11)

18 U.S.C.A. § 926A, 18 USCA § 926A
Current through P.L. 118-66. Some statute sections may be more current, see credits for details.

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part I. Crimes (Refs & Annos)
      Chapter 44. Firearms (Refs & Annos)

18 U.S.C.A. § 927

§ 927. Effect on State law

Currentness

No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

**CREDIT(S)**

(Added Pub.L. 90-351, Title IV, § 902, June 19, 1968, 82 Stat. 234; amended Pub.L. 90-618, Title I, § 102, Oct. 22, 1968, 82 Stat. 1226.)

Notes of Decisions (4)

18 U.S.C.A. § 927, 18 USCA § 927
Current through P.L. 118-66. Some statute sections may be more current, see credits for details.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
    Penal Code (Refs & Annos)
        Part 6. Control of Deadly Weapons (Refs & Annos)
            Title 1. Preliminary Provisions (Refs & Annos)
                Division 2. Definitions (Refs & Annos)

West's Ann.Cal.Penal Code § 16151

§ 16151. Ammunition vendor defined

Effective: November 9, 2016

Currentness

(a) As used in this part, commencing January 1, 2018, "ammunition vendor" means any person, firm, corporation, or other business enterprise that holds a current ammunition vendor license issued pursuant to Section 30385.

(b) Commencing January 1, 2018, a firearms dealer licensed pursuant to Sections 26700 to 26915, inclusive, shall automatically be deemed a licensed ammunition vendor, provided the dealer complies with the requirements of Articles 2 (commencing with Section 30300) and 3 (commencing with Section 30342) of Chapter 1 of Division 10 of Title 4.

**Credits**

(Added by Initiative Measure (Prop. 63, § 8.2, approved Nov. 8, 2016), eff. Nov. 9, 2016).)

West's Ann. Cal. Penal Code § 16151, CA PENAL § 16151
Current with urgency legislation through Ch. 45 of 2024 Reg.Sess. Some statute sections may be more current, see credits for details.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
      Title 4. Firearms (Refs & Annos)
        Division 9. Special Firearm Rules Relating to Particular Persons (Refs & Annos)
          Chapter 4. Prohibited Armed Persons File (Refs & Annos)

West's Ann.Cal.Penal Code § 30000

§ 30000. Prohibited Armed Persons File online database; establishment and maintenance; availability of information

Effective: September 23, 2021
Currentness

(a) The Attorney General shall establish and maintain an online database to be known as the Prohibited Armed Persons File. The purpose of the file is to cross-reference persons who have ownership or possession of a firearm on or after January 1, 1996, as indicated by a record in the Consolidated Firearms Information System, and who, subsequent to the date of that ownership or possession of a firearm, fall within a class of persons who are prohibited from owning or possessing a firearm.

(b) Except as provided in subdivision (c), the information contained in the Prohibited Armed Persons File shall only be available to those entities specified in, and pursuant to, subdivision (b) or (c) of Section 11105, through the California Law Enforcement Telecommunications System, for the purpose of determining if persons are armed and prohibited from possessing firearms.

(c) The information contained in the Prohibited Armed Persons File shall be available to researchers affiliated with the California Firearm Violence Research Center at UC Davis following approval by the institution's governing institutional review board, when required. At the department's discretion, and subject to Section 14240, the data may be provided to any other nonprofit bona fide research institution accredited by the United States Department of Education or the Council for Higher Education Accreditation for the study of the prevention of violence, following approval by the institution's governing institutional review board or human subjects committee, when required, for academic and policy research purposes. Material identifying individuals shall only be provided for research or statistical activities and shall not be transferred, revealed, or used for purposes other than research or statistical activities, and reports or publications derived therefrom shall not identify specific individuals. Reasonable costs to the department associated with the department's processing of that data may be billed to the researcher. If a request for data or letter of support for research using the data is denied, the department shall provide a written statement of the specific reasons for the denial.

**Credits**

(Added by Stats.2010, c. 711 (S.B.1080), § 6, operative Jan. 1, 2012. Amended by Stats.2014, c. 182 (A.B.2300), § 1, eff. Jan. 1, 2015; Stats.2021, c. 253 (A.B.173), § 10, eff. Sept. 23, 2021.)

**Editors' Notes**

**LAW REVISION COMMISSION COMMENTS**

2010 Addition

Section 30000 continues former Section 12010 without substantive change.

See Section 16520 ("firearm"). [38 Cal.L.Rev.Comm. Reports 217 (2009)].

West's Ann. Cal. Penal Code § 30000, CA PENAL § 30000

Current with urgency legislation through Ch. 82 of 2024 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Penal Code (Refs & Annos)
    Part 6. Control of Deadly Weapons (Refs & Annos)
      Title 4. Firearms (Refs & Annos)
        Division 10. Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Refs & Annos)
          Chapter 1. Ammunition (Refs & Annos)
            Article 3. Ammunition Vendors (Refs & Annos)

West's Ann.Cal.Penal Code § 30348

§ 30348. Location for sales of ammunition by a licensed vendor; sales at gun shows or events

Effective: November 9, 2016

Currentness

(a) Except as provided in subdivision (b), the sale of ammunition by a licensed vendor shall be conducted at the location specified in the license.

(b) A vendor may sell ammunition at a gun show or event if the gun show or event is not conducted from any motorized or towed vehicle.

(c) For purposes of this section, "gun show or event" means a function sponsored by any national, state, or local organization, devoted to the collection, competitive use, or other sporting use of firearms, or an organization or association that sponsors functions devoted to the collection, competitive use, or other sporting use of firearms in the community.

(d) Sales of ammunition at a gun show or event shall comply with all applicable laws including Sections 30347, 30350, 30352, and 30360.

**Credits**

(Added by Initiative Measure (Prop. 63, § 8.11, approved Nov. 8, 2016, eff. Nov. 9, 2016).)

Notes of Decisions (6)

West's Ann. Cal. Penal Code § 30348, CA PENAL § 30348
Current with urgency legislation through Ch. 45 of 2024 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
 Penal Code (Refs & Annos)
  Part 6. Control of Deadly Weapons (Refs & Annos)
   Title 4. Firearms (Refs & Annos)
    Division 10. Special Rules Relating to Particular Types of Firearms or Firearm Equipment (Refs & Annos)
     Chapter 1. Ammunition (Refs & Annos)
      Article 5. Ammunition Vendor Licenses (Refs & Annos)

West's Ann.Cal.Penal Code § 30385

§ 30385. Issuance of ammunition vendor licenses by the Department of Justice

Effective: November 9, 2016
Currentness

(a) The Department of Justice is authorized to issue ammunition vendor licenses pursuant to this article. The department shall, commencing July 1, 2017, commence accepting applications for ammunition vendor licenses. If an application is denied, the department shall inform the applicant of the reason for denial in writing.

(b) The ammunition vendor license shall be issued in a form prescribed by the department and shall be valid for a period of one year. The department may adopt regulations to administer the application and enforcement provisions of this article. The license shall allow the licensee to sell ammunition at the location specified in the license or at a gun show or event as set forth in Section 30348.

(c)(1) In the case of an entity other than a natural person, the department shall issue the license to the entity, but shall require a responsible person to pass the background check pursuant to Section 30395.

(2) For purposes of this article, "responsible person" means a person having the power to direct the management, policies, and practices of the entity as it pertains to ammunition.

(d) Commencing January 1, 2018, a firearms dealer licensed pursuant to Sections 26700 to 26915, inclusive, shall automatically be deemed a licensed ammunition vendor, provided the dealer complies with the requirements of Article 2 (commencing with Section 30300) and Article 3 (commencing with Section 30342).

**Credits**
(Added by Initiative Measure (Prop. 63, § 8.16, approved Nov. 8, 2016, eff. Nov. 9, 2016).)

Notes of Decisions (12)

West's Ann. Cal. Penal Code § 30385, CA PENAL § 30385
Current with urgency legislation through Ch. 45 of 2024 Reg.Sess. Some statute sections may be more current, see credits for details.

<div style="border:1px solid black">

Barclays California Code of Regulations
  Title 11. Law
    Division 5. Firearms Regulations
      Chapter 4. Documentation Requirements for Firearms and Ammunition Eligibility Checks
        Article 2. Additional Documentation Requirements

</div>

11 CCR § 4045.1

§ 4045.1. Additional Documentation Requirements for Eligibility Checks
with Federal Non-Compliant California Driver License or Identification Card.

Effective: January 12, 2023

Currentness

This section applies to all firearms and ammunition eligibility checks, including any eligibility check described in Division 5. For the purposes of this section, "eligibility checks" refers to background checks based on any application or report for which an applicant is required to submit a driver license or identification card, or the number from a driver license or identification card, so that the Department of Justice may determine the applicant's eligibility to possess a firearm or ammunition under state or federal law.

(a) For all eligibility checks, a copy of the applicant's California driver license or identification card, or out-of-state driver license, if applicable, shall be submitted, as specified in subdivisions (d) through (g).

(b) For all eligibility checks, if the applicant presents a federal non-compliant California driver license or identification card with the notation "FEDERAL LIMITS APPLY" on the front, the applicant shall also submit proof of lawful presence in the United States, as specified in subdivisions (d) through (g), in the form of one of the following documents:

(1) Valid, unexpired U.S. passport or passport card.

(2) Certified copy of U.S. birth certificate (issued by a city, county, or state vital statistics office). "Abbreviated" or "Abstract" certificates are NOT accepted.

(3) Certification of Birth Abroad (FS-545), Certification of Report of Birth (DS-1350) or Consular Report of Birth Abroad of a Citizen of the United States of America (FS-240), issued by the U.S. Department of State.

(4) Valid, unexpired foreign passport with valid U.S. immigrant visa and approved Record of Arrival/Departure (I-94) form.

(5) Certified copy of birth certificate from a U.S. Territory.

(6) Certificate of Naturalization or U.S. Citizenship.

(7) Valid, unexpired Permanent Resident Card.

(c) For all eligibility checks, if the applicant's name as it appears on the federal non-compliant California driver license or identification card differs from the name on the proof of lawful presence document submitted in accordance with subdivision (b), the applicant shall also submit, as specified in subdivisions (d) through (g), one of the following certified documents:

(1) An adoption document that contains the legal name of the applicant as a result of the adoption.

(2) A name change document that contains the applicant's legal name both before and, as a result of, the name change.

(3) A marriage certificate.

(4) A dissolution of marriage document that contains the legal name of the applicant as a result of the court action.

(5) A certificate, declaration or registration document verifying the formation of a domestic partnership.

(6) A dissolution of domestic partnership document that contains the legal name of the applicant as a result of the court action.

(d) Applications or reports submitted in a paper format.

For eligibility checks based on an application or report submitted to the Department of Justice in a paper format, the documents required in subdivisions (a) through (c) shall be submitted along with the paper application. Do not send any original documentation when submitting the paper application. These applications and reports include:

(1) Certificate of Eligibility applications, pursuant to Penal Code section 26710.

(2) Firearm Ownership Reports:

(A) New Resident Report of Firearm Ownership, form BOF 4010A (Rev. 01/2020), pursuant to Penal Code section 27560.

(B) Firearm Ownership Report, form BOF 4542A (Rev. 01/2020), pursuant to Penal Code section 28000.

(C) Curio or Relic Firearm Report, form BOF 4100A (Rev. 01/2020), pursuant to Penal Code section 27565.

(D) Collector In-State Acquisition of Curio or Relic Long Gun Report, form BOF 961 (Rev. 01/2020), pursuant to Penal Code section 27966.

(E) Report of Operation of Law or Intra-Familial Firearm Transaction, form BOF 4544A (Rev. 01/2020), pursuant to Penal Code sections 27875 and 27920.

(3) The application forms referenced in section 4142 of Chapter 7 of this Division 5 and amended for purposes of this division as follows: Dangerous Weapons License/Permit(s) Application, form BOF 030 (Rev. 01/2020), or Dangerous Weapons License/Permit(s) Renewal Application, form BOF 031 (Rev. 01/2020). These forms include options to apply for the following licenses/permits:

(A) Assault Weapon/.50 BMG Rifle Permit, pursuant to Penal Code sections 31000 and 31005.

(B) Short-Barreled Shotgun/Rifle Permit, pursuant to Penal Code sections 33300 and 33305.

(C) Destructive Device Permit, pursuant to Penal Code sections 18900 and 18905.

(D) Machinegun Permit, pursuant to Penal Code sections 32650 and 32655.

(E) Machinegun License, pursuant to Penal Code sections 32700 to 32715.

(4) Entertainment Firearms Permit Application, form BOF 051 (Rev. 01/2020), hereby incorporated by reference, pursuant to Penal Code section 29500.

(5) Personal Firearms Eligibility Check Application, form BOF 116 (Rev. 01/2020), hereby incorporated by reference, pursuant to Penal Code section 30105.

(e) Applications or reports submitted electronically via the California Firearms Application Reporting System (CFARS).

For eligibility checks based on an application or report submitted to the Department of Justice electronically via CFARS, the documents required in subdivisions (a) through (c) shall be uploaded to CFARS as prompted during the application or reporting process. These applications and reports include:

(1) Certificate of Eligibility applications, pursuant to Penal Code section 26710 and Chapter 3 of this Division 5.

(2) Unique Serial Number Applications, pursuant to Penal Code section 29182 and Chapter 41 of this Division 5.

(3) Firearm Ownership Reports, including:

(A) New Resident Report of Firearm Ownership, pursuant to Penal Code section 27560.

(B) Firearm Ownership Report, pursuant to Penal Code section 28000.

(C) Curio or Relic Firearm Report, pursuant to Penal Code section 27565.

(D) Collector In-State Acquisition of Curio or Relic Long Gun Report, form pursuant to Penal Code section 27966.

(E) Report of Operation of Law or Intra-Familial Firearm Transaction, pursuant to Penal Code sections 27875 and 27920.

(f) Applications or reports submitted electronically via the Dealer Record of Sale (DROS) Entry System (DES), including applications or reports submitted pursuant to Chapters 8, 10, and 11 of this Division 5.

For eligibility checks based on applications or reports submitted to the Department of Justice electronically via the DES, the firearms dealer or ammunition vendor shall examine the applicant's driver license or identification card. If the applicant's California driver license or identification card is federal non-compliant with the notation "FEDERAL LIMITS APPLY" on the front, the firearms dealer or ammunition vendor shall require the applicant to submit a copy of the document required in subdivision (b), as well as a copy of the document required in subdivision (c) if applicable. The firearms dealer or ammunition vendor shall retain a copy of the "FEDERAL LIMITS APPLY" driver license or identification card, as well as the supporting documents, as part of the permanent record. These applications and reports include:

(1) Application(s) to purchase a firearm. The firearms dealer shall confirm compliance with this subdivision on DES, as necessary during the application or reporting process. The firearms dealer shall keep a copy of the document(s) required in subdivisions (a) through (c) as part of the permanent record of the transaction described in Penal Code section 28215, subdivision (c).

(2) Applications to purchase ammunition, as described in Penal Code section 30370. The firearms dealer or ammunition vendor shall confirm compliance with this subdivision on DES, as necessary during the application or reporting process. The firearms dealer or ammunition vendor shall keep a copy of the document(s) required in subdivisions (a) through (c).

(g) Applications or reports submitted to other agencies that include fingerprint data to be used by the Department of Justice to determine the applicant's eligibility to possess a firearm or ammunition under state or federal law.

For eligibility checks based on applications or reports submitted to other agencies that include fingerprint data to be used by the Department of Justice to determine the applicant's eligibility to possess a firearm or ammunition under state or federal law, if the applicant presents a federal non-compliant California driver license or identification card with the notation "FEDERAL LIMITS APPLY" on the front, the agency shall require the applicant to submit copies of the documents required in subdivision (b), as well as a copy of the document required in subdivision (c) if applicable. The agency shall keep a copy of the documents required in subdivisions (a) through (c) as part of the permanent record of the application. The Department of Justice may request a copy of the document(s) at a future date. Applicants of these applications and reports include:

(1) Peace officer applicants, custodial officers, or transportation officers, pursuant to Penal Code section 832.15.

(2) Peace officers, pursuant to Penal Code section 832.16.

(3) Applicants for admission to a basic course of training certified by the Commission on Peace Officer Standards and Training that includes the carrying and use of firearms, pursuant to Penal Code section 13511.5.

(4) Applicants for an explosives permit, pursuant to Health & Safety Code section 12101.

**Credits**

NOTE: Authority cited: Sections 28060, 28100, 28155, 28215 and 28220, Penal Code. Reference: Sections 832.15, 832.16, 13511.5, 16400, 18900, 18905, 23000, 26150, 26155, 26170, 26710, 26815, 27540, 27560, 27565, 27875, 27920, 27966, 28000, 28160, 28215, 28220, 28250, 29182, 29500, 30105, 30370, 31000, 31005, 32650, 32655, 32700, 32705, 32710, 32715, 33300, 33305 and 33850, Penal Code; Section 12101, Health and Safety Code; and Section 922, Title 18, United States Code.

HISTORY

1. New article 2 (section 4045.1) and section filed 6-27-2019 as an emergency; operative 7-1-2019 (Register 2019, No. 26). A Certificate of Compliance must be transmitted to OAL by 12-30-2019 or emergency language will be repealed by operation of law on the following day.

2. Change without regulatory effect amending subsection (d)(2)(A)-(E) filed 12-17-2019 pursuant to section 100, title 1, California Code of Regulations (Register 2019, No. 51).

3. New article 2 (section 4045.1) and section refiled 12-19-2019 as an emergency; operative 12-31-2019 (Register 2019, No. 51). A Certificate of Compliance must be transmitted to OAL by 3-30-2020 or emergency language will be repealed by operation of law on the following day.

4. Editorial correction implementing 12-17-2019 nonsubstantive amendments (Register 2020, No. 13).

5. New article 2 (section 4045.1) and section refiled 3-25-2020 as an emergency; operative 3-31-2020 (Register 2020, No. 13). A Certificate of Compliance must be transmitted to OAL by 6-29-2020 or emergency language will be repealed by operation of law on the following day.

6. Certificate of Compliance as to 3-25-2020 order, including amendment of subsections (b)(2), (d) and (d)(2)(A)-(d)(3), new subsections (d)(4)-(5) and amendment of subsections (e) and (f), transmitted to OAL 3-18-2020 and filed 4-27-2020; amendments operative 4-27-2020 pursuant to Government Code section 11343.4(b)(3) (Register 2020, No. 18).

7. Amendment of first paragraph and subsections (f)-(f)(2), new subsection (f)(3), amendment of subsection (g) and amendment of NOTE filed 6-30-2022; operative 7-1-2022 pursuant to Government Code section 11343.4(b)(3) (Register 2022, No. 26).

8. Amendment of first paragraph and subsection (f), repealer of subsection (f)(3), amendment of subsection (g) and amendment of NOTE filed 1-12-2023; operative 1-12-2023. Exempt from the APA pursuant to Statutes 2022, chapter 76 (AB 1621), section 39, and submitted to OAL for filing and printing only pursuant to Government Code section 11343.8 (Register 2023, No. 2).

This database is current through 6/28/24 Register 2024, No. 26.

Cal. Admin. Code tit. 11, § 4045.1, 11 CA ADC § 4045.1

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Barclays California Code of Regulations
  Title 11. Law
    Division 5. Firearms Regulations
      Chapter 10. Ammunition
        Article 1. Ammunition Vendors

11 CCR § 4260

§ 4260. Ammunition Vendor License Applications.

Currentness

(a) Applicants for an initial ammunition vendor license must complete and submit Department of Justice Ammunition Vendor License (Non-Firearms Dealer), form BOF 1021 (Rev. 12/2019), which is hereby incorporated by reference. The application must be submitted with the fee specified in section 4261 and a copy of the following:

  (1) Any regulatory or business license required by local government.

  (2) Valid seller's permit issued by the California Department of Tax and Fee Administration.

  (3) Federal Firearms License if the applicant is federally licensed.

  (4) Certificate of Eligibility pursuant to Penal Code section 26710.

(b) Applicants for renewal of an ammunition vendor license must complete and submit Department of Justice Ammunition Vendor License Renewal Fee Transmittal, form BOF/CAV-0012 (Orig. $^{01}/_{2018}$ ), which is hereby incorporated by reference, with the fee specified in section 4261.

(c) A firearms dealer licensed pursuant to Penal Code sections 26700 to 26915 is automatically deemed a licensed ammunition vendor pursuant to Penal Code section 30385(d) and is not required to submit an application for an ammunition vendor license.

**Credits**
NOTE: Authority cited: Sections 30385 and 30395, Penal Code. Reference: Sections 26700, 30385 and 30395, Penal Code.

HISTORY

1. New chapter 10 (sections 4260-4264) and section filed 1-2-2018; operative 1-2-2018 pursuant to Government Code section 11343.4(b)(3) (Register 2018, No. 1).

2. Change without regulatory effect amending subsection (a) filed 12-17-2019 pursuant to section 100, title 1, California Code of Regulations (Register 2019, No. 51).

13a

3. Editorial correction implementing 12-17-2019 nonsubstantive amendments (Register 2020, No. 13).

4. Amendment of chapter heading filed 6-22-2020; operative 10-1-2020 (Register 2020, No. 26).

5. Change without regulatory effect adopting new article 1 heading filed 5-12-2021 pursuant to section 100, title 1, California Code of Regulations (Register 2021, No. 20).

This database is current through 6/28/24 Register 2024, No. 26.

Cal. Admin. Code tit. 11, § 4260, 11 CA ADC § 4260

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Barclays California Code of Regulations
  Title 11. Law
    Division 5. Firearms Regulations
      Chapter 10. Ammunition
        Article 1. Ammunition Vendors

11 CCR § 4263

§ 4263. Vendor Fee for Processing a Private Party (Non-Vendor) Ammunition Sale.

Currentness

(a) In addition to any applicable Department of Justice fee, an ammunition vendor may charge the purchaser a fee(s) for processing the sale of ammunition between two private parties as follows:

(1) If the purchaser will be present for immediate delivery of the ammunition, the fee shall not exceed five dollars ($5).

(2) If the purchaser will not be present for immediate delivery of the ammunition, the vendor may charge an additional storage fee as agreed upon with the purchaser prior to the vendor receiving the ammunition.

**Credits**
NOTE: Authority cited: Sections 30312 and 30385, Penal Code. Reference: Section 30312, Penal Code.

HISTORY

1. New section filed 1-2-2018; operative 1-2-2018 pursuant to Government Code section 11343.4(b)(3) (Register 2018, No. 1).

2. Amendment of subsection hierarchy filed 6-22-2020; operative 10-1-2020 (Register 2020, No. 26).

This database is current through 6/28/24 Register 2024, No. 26.

Cal. Admin. Code tit. 11, § 4263, 11 CA ADC § 4263

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Barclays California Code of Regulations
  Title 11. Law
    Division 5. Firearms Regulations
      Chapter 10. Ammunition
        Article 2. Ammunition Purchases or Transfers

11 CCR § 4281

§ 4281. Definition of Key Terms.

Currentness

(a) "AFS" means the Department's Automated Firearms System.

(b) "Ammunition vendor" means a person or entity having a valid license to sell ammunition, issued pursuant to Penal Code section 30385.

(c) "ATN" means Ammunition Transaction Number issued by the Department.

(d) "Automated Firearms System" is the name of a repository of firearm records maintained by the Department, as established by Penal Code section 11106.

(e) "Basic Ammunition Eligibility Check" means the Department's ammunition eligibility check as prescribed by Penal Code section 30370, subdivision (c). The Department shall conduct a Basic Ammunition Eligibility Check to authorize a California resident for a single ammunition transaction or purchase.

(f) "Certificate of Eligibility" or "COE" means a certificate issued pursuant to Penal Code section 26710, which states that the Department has checked its records and determined that the applicant was not prohibited from acquiring or possessing firearms at the time the check was performed.

(g) "CFARS" means the Department's California Firearms Application Reporting System. An individual can access the CFARS website at the following web address: https://cfars.doj.ca.gov/login.do.

(h) "Department" means the California Department of Justice.

(i) "Dealer Record of Sale Entry System" or "DES" means the Department's website that an ammunition vendor will use to submit an ammunition purchaser's or transferee's information to the Department before the Department can approve an ammunition purchase or transfer. An ammunition vendor can access the DES website at the following web address: https://des.doj.ca.gov/login.do.

(j) "Firearms dealer" means a person having a valid license to sell firearms issued pursuant to Penal Code section 26700.

---

16a

(k) "Firearms eligibility check" means a state and federal background check, conducted pursuant to Penal Code section 28220, that is used to determine an individual's eligibility to possess, receive, own, or purchase a firearm.

(*l*) "Head of the agency" means the chief of police or the director of public safety for a police department, the sheriff for a county sheriff's office, the head of an agency or their designee for a state law enforcement agency, and the manager in charge of any local field office for a federal law enforcement agency.

(m) "Prohibited Armed Persons File" means the database established by Penal Code section 30000.

(n) "Purchaser or transferee" means an individual purchasing or transferring ammunition.

(o) "Standard Ammunition Eligibility Check" means the Department's ammunition eligibility check as prescribed by Penal Code section 30370, subdivision (b).

(p) "Sworn federal law enforcement officer's credential" means identification indicating an individual is a sworn federal law enforcement officer.

(q) "Sworn state or local peace officer's credential" means identification indicating an individual is a sworn state or local peace officer pursuant to Part 2, Chapter 4.5, of the Penal Code (commencing with section 830).

**Credits**

NOTE: Authority cited: Sections 30352 and 30370, Penal Code. Reference: Sections 11106, 16150, 16151, 26710, 30352, 30370 and 30385, Penal Code.

HISTORY

1. Change without regulatory effect renumbering section 4301 to new section 4281 filed 5-12-2021 pursuant to section 100, title 1, California Code of Regulations (Register 2021, No. 20).

This database is current through 6/28/24 Register 2024, No. 26.

Cal. Admin. Code tit. 11, § 4281, 11 CA ADC § 4281

---

End of Document
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Barclays California Code of Regulations
  Title 11. Law
    Division 5. Firearms Regulations
      Chapter 10. Ammunition
        Article 2. Ammunition Purchases or Transfers

11 CCR § 4282

§ 4282. Standard Ammunition Eligibility Check (AFS Match).

Currentness

(a) A purchaser or transferee is authorized to purchase ammunition if their information matches an entry in the Automated Firearm System and does not match an entry in the Prohibited Armed Persons File.

  (1) A purchaser or transferee may request, through an ammunition vendor, that the Department conduct a Standard Ammunition Eligibility Check to determine if the ammunition purchaser or transferee qualifies for this authorization.

(b) As authorized by Penal Code section 30370, subdivision (e), the fee for a Standard Ammunition Eligibility Check is $1.00.

(c) The ammunition vendor shall collect the purchaser's or transferee's name, date of birth, current address, and driver's license or other government identification number in the manner described in Penal Code section 28180, and telephone number, and enter this information into the DES website.

(d) Upon the Department's completion of the Standard Ammunition Eligibility Check, the Department shall update the purchaser's or transferee's DES record to instruct the ammunition vendor to approve or reject the purchase or transfer.

(e) If the purchase or transfer is rejected, the ammunition vendor shall provide the purchaser or transferee with an ATN that can be used to obtain the reason for the rejection through the Department's CFARS website.

**Credits**
NOTE: Authority cited: Sections 30352 and 30370, Penal Code. Reference: Sections 28180, 30352 and 30370, Penal Code.

HISTORY

1. Change without regulatory effect renumbering renumbering section 4302 to new section 4282 filed 5-12-2021 pursuant to section 100, title 1, California Code of Regulations (Register 2021, No. 20).

This database is current through 6/28/24 Register 2024, No. 26.

Cal. Admin. Code tit. 11, § 4282, 11 CA ADC § 4282

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Barclays California Code of Regulations
   Title 11. Law
      Division 5. Firearms Regulations
         Chapter 10. Ammunition
            Article 2. Ammunition Purchases or Transfers

11 CCR § 4283

§ 4283. Basic Ammunition Eligibility Check (Single Transaction or Purchase).

Currentness

(a) A purchaser or transferee is authorized to purchase ammunition if they are not prohibited from purchasing or possessing ammunition, subsequent to affirmation by the Department.

   (1) A purchaser or transferee may request, through an ammunition vendor, that the Department conduct a Basic Ammunition Eligibility Check to determine if the purchaser or transferee qualifies for this authorization.

   (2) A purchaser or transferee may instead seek authorization by following the procedure set forth by section 4282, 4284, 4285, or 4286, as applicable.

(b) As authorized by Penal Code section 30370, subdivision (c), the fee for a Basic Ammunition Eligibility Check is $19.00.

(c) The ammunition vendor shall collect the ammunition purchaser's or transferee's name, date of birth, current address, gender, hair color, eye color, height, weight, and driver's license or other government identification number in the manner described in Penal Code section 28180, and telephone number, United States citizenship status, federal Citizenship and Immigration Services (USCIS) Number or I-94 (if applicable), place of birth, alias name(s), and race, and enter this information into the DES website.

(d) The ammunition vendor will provide the purchaser or transferee an ATN to monitor the status of the Basic Ammunition Eligibility Check through the Department's CFARS website.

   (1) An approved Basic Ammunition Eligibility Check can only be used for one ammunition purchase or transfer, and the approval expires 30 calendar days from when it is issued.

   (2) If the Basic Ammunition Eligibility Check is denied, the Department shall notify the purchaser or transferee of the reason for the denial via U.S. Mail.

(e) Upon the Department's completion of a Basic Ammunition Eligibility Check, the Department shall update the purchaser's or transferee's DES record.

**Credits**

NOTE: Authority cited: Sections 30352 and 30370, Penal Code. Reference: Sections 28180, 30352 and 30370, Penal Code; and Section 922, Title 18, United States Code.

HISTORY

1. Change without regulatory effect renumbering section 4303 to new section 4283, including amendment of subsection (a)(2), filed 5-12-2021 pursuant to section 100, title 1, California Code of Regulations (Register 2021, No. 20).

2. Change without regulatory effect amending subsection (c) filed 12-6-2021 pursuant to section 100, title 1, California Code of Regulations (Register 2021, No. 50).

This database is current through 6/28/24 Register 2024, No. 26.

Cal. Admin. Code tit. 11, § 4283, 11 CA ADC § 4283

---

**End of Document**                                           © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

---

Barclays California Code of Regulations
  Title 11. Law
    Division 5. Firearms Regulations
      Chapter 10. Ammunition
        Article 2. Ammunition Purchases or Transfers

11 CCR § 4284

§ 4284. Purchasing of a Firearm and Ammunition in a Single Transaction.

Currentness

(a) When an individual is purchasing or transferring a firearm and ammunition in the same transaction, the Department shall complete a firearms eligibility check before the purchaser or transferee can take possession of the firearm or ammunition.

(b) Except as provided in subdivision (c), a purchaser or transferee of a firearm and ammunition in the same transaction shall only pay the fee for the firearms eligibility check as prescribed in section 4001 of this title.

(c) If the purchaser or transferee wants to take possession of the ammunition before the Department completes the firearms eligibility check, the purchaser or transferee shall conduct a separate transaction following the procedure set forth by section 4282, 4283, 4285, or 4286, as appropriate, and pay any associated fee prior to taking possession of the ammunition.

**Credits**

NOTE: Authority cited: Section 30352, Penal Code. Reference: Sections 28220, 30352 and 30370, Penal Code.

HISTORY

1. Change without regulatory effect renumbering section 4304 to new section 4284, including amendment of section heading and subsection (c), filed 5-12-2021 pursuant to section 100, title 1, California Code of Regulations (Register 2021, No. 20).

This database is current through 6/28/24 Register 2024, No. 26.

Cal. Admin. Code tit. 11, § 4284, 11 CA ADC § 4284

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. **21a**

---

Barclays California Code of Regulations
  Title 11. Law
    Division 5. Firearms Regulations
      Chapter 10. Ammunition
        Article 2. Ammunition Purchases or Transfers

11 CCR § 4285

§ 4285. COE Verification Process.

Currentness

(a) A purchaser or transferee is authorized to purchase ammunition if they hold a current Certificate of Eligibility, subsequent to verification by the Department.

   (1) A purchaser or transferee may request, through an ammunition vendor, that the Department conduct a COE Verification to determine if the purchaser or transferee qualifies for this authorization.

(b) As authorized by Penal Code section 30370, subdivision (e), the fee for COE Verification is $1.00.

(c) The ammunition vendor shall collect the ammunition purchaser's or transferee's name, date of birth, current address, and driver's license or other government identification number in the manner described in Penal Code section 28180, telephone number, and COE number, and enter the information into the DES website.

(d) Upon the Department's completion of the COE Verification, the Department shall update the purchaser's or transferee's DES record to instruct the ammunition vendor to approve or reject the ammunition purchase or transfer.

**Credits**
NOTE: Authority cited: Sections 30352 and 30370, Penal Code. Reference: Sections 26710, 28180 and 30370, Penal Code.

HISTORY

1. Change without regulatory effect renumbering renumbering section 4305 to new section 4285 filed 5-12-2021 pursuant to section 100, title 1, California Code of Regulations (Register 2021, No. 20).

This database is current through 6/28/24 Register 2024, No. 26.

Cal. Admin. Code tit. 11, § 4285, 11 CA ADC § 4285

---

WESTLAW　© 2024 Thomson Reuters. No claim to original U.S. Government Works.

```
Barclays California Code of Regulations
    Title 11. Law
        Division 5. Firearms Regulations
            Chapter 13. Automated Firearms System Information Updates
            Article 1. General
```

11 CCR § 4351

§ 4351. Purpose.

Currentness

An individual shall be able to electronically update one or more AFS records through the California Firearms Application Reporting System (CFARS) to match the individual's current name, date of birth, address, and California Driver License, California Identification Card, or military identification number.

**Credits**

NOTE: Authority cited: Sections 11106 and 30370, Penal Code. Reference: Sections 11106 and 30370, Penal Code.

HISTORY

1. New section filed 6-13-2019; operative 7-1-2019 pursuant to Government Code section 11343.4(b)(3) (Register 2019, No. 24).

2. Change without regulatory effect amending section filed 12-6-2021 pursuant to section 100, title 1, California Code of Regulations (Register 2021, No. 50).

This database is current through 6/28/24 Register 2024, No. 26.

Cal. Admin. Code tit. 11, § 4351, 11 CA ADC § 4351

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. **23a**

---

Barclays California Code of Regulations
  Title 11. Law
    Division 5. Firearms Regulations
      Chapter 13. Automated Firearms System Information Updates
      Article 1. General

11 CCR § 4353

§ 4353. Updating AFS Records.

Currentness

(a) Before an individual can electronically correct or update one or more AFS records, the individual shall create a CFARS account as prescribed by California Code of Regulations, Title 11, section 4340.

(b) The individual shall provide the following current information: Full name, residence address, zip code, date of birth, and identification type and number.

(c) The individual shall provide their personal information, as it was, at the time when a firearm was purchased or transferred into the individual's ownership, as reported to the Department: Full name, residence address, zip code, date of birth, and identification type and number.

(d) The individual shall provide information for one or more firearms that were purchased or transferred into the individual's ownership and possession with the same owner information at the time of purchase or transfer. The individual shall provide the following information for each firearm: Make, model, caliber, serial number information, and/or type.

(e) The individual may add another firearm purchased or transferred at another time by providing additional firearm identifying information as prescribed by subdivision (d).

(f) Updates or corrections to name, date of birth, identification type and/or identification number require the individual to electronically upload documents verifying the change as prompted by CFARS. The individual will be prompted to upload a copy of their current California Driver License, California Identification Card, or military identification card (with military station orders) along with the following documentation to verify an AFS record update:

(1) A change of name requires a copy of the individual's marriage license, endorsed court order regarding restoration of former name, or endorsed court order regarding name change.

(2) A change to the date of birth requires a copy of the individual's birth certificate.

(3) An update to identification type, and/or identification number requires a copy of the individual's California Driver License, California Identification Card, or out-of-state driver license.

---

(g) The individual shall then agree to the following personal declaration: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

(h) Once the individual has provided the necessary information and/or supporting documentation for the AFS record update or correction, the individual will then submit the information.

(i) The Department shall either approve or reject the individual's request to update or correct one or more AFS records and notify the individual of the approval or rejection via electronic mail. If the request is rejected, the electronic mail notification shall provide information on how to proceed.

**Credits**

NOTE: Authority cited: Sections 11106 and 30370, Penal Code. Reference: Section 30370, Penal Code.

HISTORY

1. New section filed 6-13-2019; operative 7-1-2019 pursuant to Government Code section 11343.4(b)(3) (Register 2019, No. 24).

2. Change without regulatory effect amending subsections (c), (d) and (f)-(f)(3) filed 12-6-2021 pursuant to section 100, title 1, California Code of Regulations (Register 2021, No. 50).

This database is current through 6/28/24 Register 2024, No. 26.

Cal. Admin. Code tit. 11, § 4353, 11 CA ADC § 4353

---

End of Document                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.