No. 24-542

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

KIM RHODE, ET AL.,

    Plaintiffs-Appellees,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,

    Defendant-Appellant.

:
:
:
:
:
:
:
:
:
:
:

On Appeal from the United States District Court for the Southern District of California

District Court Case No. 3:18-cv-00802-BEN-JLB

---

## BRIEF OF *AMICI CURIAE* OHIO, IDAHO, ALABAMA, ALASKA, ARKANSAS, FLORIDA, GEORGIA, INDIANA, IOWA, KANSAS, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NORTH DAKOTA, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, TEXAS, UTAH, WEST VIRGINIA, AND WYOMING SUPPORTING APPELLEES

---

RAÚL R. LABRADOR
Idaho Attorney General

ALAN M. HURST
Idaho Solicitor General
SEAN M. CORKERY
Assistant Attorney General
Office of the Idaho
Attorney General
P.O. Box 83720
Boise, Idaho 83720
208.334.2400
Alan.Hurst@ag.idaho.gov
Jack.Corkery@ag.idaho.gov

*Counsel for Amicus Curiae*
  *State of Idaho*

DAVE YOST
Ohio Attorney General

T. ELLIOT GAISER
Ohio Solicitor General
MATHURA J. SRIDHARAN*
  **Counsel of Record*
NICHOLAS A. CORDOVA
Deputy Solicitors General
30 E. Broad St., 17th Fl.
Columbus, Ohio 43215
614.466.8980
mathura.sridharan@ohioago.gov

*Counsel for Amicus Curiae*
  *State of Ohio*

*Additional counsel listed alongside signature block*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF *AMICI* INTEREST AND SUMMARY OF ARGUMENT ....1

ARGUMENT...............................................................................................3

   I.     California's ammunition background-check and anti-importation
        provisions violate the Second Amendment. .............................................3

       A.     Both sets of provisions burden conduct that the Second Amendment's
             text plainly covers. ............................................................................. 4

       B.     California has identified no historical analogue to its new regulations
             because no analogue exists. .................................................................. 6

   II.    California's attempts to evade the Second Amendment by avoiding
        *Bruen*'s analogical reasoning analysis fail. ........................................... 11

CONCLUSION.....................................................................................14

ADDITIONAL COUNSEL ..................................................................... 15

CERTIFICATE OF COMPLIANCE FOR BRIEFS ........................................... 16

STATEMENT OF RELATED CASES ............................................................ 17

CERTIFICATE OF SERVICE....................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Baird v. Bonta*,
   81 F.4th 1036 (9th Cir. 2023) ................................................................4

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ............................................................... 4, 12, 13

*Jackson v. City & Cnty. of San Francisco*,
   746 F.3d 953 (9th Cir. 2014).......................................................... 4, 11

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   597 U.S. 1 (2022) ................................................................*passim*

*United States v. Rahimi*,
   144 S. Ct. 1889 (2024)..................................................................... 3, 9

**Statutes and Constitutional Provisions**

18 U.S.C. §926A ....................................................................................2

Cal. Code Regs. tit 11, §4263....................................................................2

Cal. Penal Code §26150 ...........................................................................9

Cal. Penal Code §26202 ...........................................................................9

Cal. Penal Code §30312 ...........................................................................2

Cal. Penal Code §30314 ...........................................................................2

Cal. Penal Code §30352 ...........................................................................1

Cal. Penal Code §30365 ...........................................................................2

Cal. Penal Code §30370 ...........................................................................1

U.S. Const. amend. II ...............................................................................1

**Other Authorities**

Declaration of Independence (US 1776).................................................................. 1

*Online Gun & Ammunition Sales in the US - Market Size (2005-2029)*,
  IBISWorld (May 30, 2023) .................................................................... 5

## STATEMENT OF *AMICI* INTEREST AND SUMMARY OF ARGUMENT

Governments are instituted among men to secure their fundamental rights, including their right to armed self-defense. *See* Declaration of Independence (US 1776); U.S. Const. amend. II; *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 28 (2022). The California laws at issue here subvert the ends of government by requiring California citizens to request and pay for the State's consent each time they wish to engage in conduct necessary to exercising that fundamental right. Amici the States of Ohio, Idaho, Alabama, Alaska, Arkansas, Florida, Georgia, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, New Hampshire, North Dakota, South Carolina, South Dakota, Tennessee, Texas, Utah, West Virginia, and Wyoming are interested in preventing all infringements of the fundamental right to armed self-defense. They file this brief to defend that interest.

California's latest attack on the Second Amendment is a two-pronged pincer movement. The first consists of ammunition background-check provisions that require California residents to undergo a background check every time they purchase ammunition. Cal. Penal Code §§30352, 30370. Each background check costs $19 and typically takes five or six days, unless the purchaser submits to registering one or more firearms with the State's "Automated Firearms System," in which case the State will only charge $1 and complete the check within minutes. Apt. Br. at 7–8.

The background-check system erroneously denies the purchaser at least 11% of the time.  Dist. Ct. Op., R.105, PageID#3430.  The second pincer is a set of anti-importation provisions that traps Californians in the State's ammunition background-check regime by denying them access to interstate markets.  Cal. Penal Code §§30312, 30314, 30365.  These provisions require that every ammunition sale to a state resident occur in "a face-to-face transaction" with a California-licensed seller. Cal. Penal Code §30312(b).  Ammunition obtained in another State must filter through a California-licensed seller who must conduct a background check before transferring the ammunition.  Cal. Penal Code §§30312, 30314.  The California-licensed seller may charge an amount of its own choosing, in addition to the background check fee, for providing this service.  Cal. Code Regs. tit 11, §4263(a).

The Southern District of California enjoined these provisions for three reasons. It found that the ammunition background-check provisions "violate the Second Amendment" because they "have no historical pedigree," and that the anti-importation provisions "violate the dormant Commerce Clause and … are preempted by 18 U.S.C. §926A," the "Firearm Owners' Protection Act," because they prevent California residents from traveling into the State with ammunition obtained in other States.  *Id.* at PageID#3457.  This Court should affirm.

2

**ARGUMENT**

This brief focuses on the Second Amendment because it can resolve this case by itself. Both the ammunition background-check and anti-importation provisions burden the fundamental right to armed self-defense by interfering with ammunition purchases and both are unprecedented in our Nation's historical tradition of firearm regulation.

## I. California's ammunition background-check and anti-importation provisions violate the Second Amendment.

Both sets of California laws fail the Second Amendment analysis set forth in *New York State Rifle & Pistol Association, Inc. v. Bruen* and refined in *United States v. Rahimi*. That analysis proceeds in two stages. First, this Court must determine whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 17. When it does, "the Constitution presumptively protects that conduct," and the analysis moves to the second stage, in which "the government must demonstrate that the regulation [of that conduct] is consistent with this Nation's historical tradition of firearm regulation." *Id.* Unless the government can meet that burden, the regulation must give way to "the Second Amendment's unqualified command." *Id.* (quotation omitted). Here, both the ammunition background-check and anti-importation provisions burden conduct that the Amendment plainly covers—purchasing ammunition for lawfully owned firearms—and

3

California cannot show that either type of regulation has any grounding in historical tradition. This Court should affirm the injunction of both sets of provisions for this reason alone.

### A. Both sets of provisions burden conduct that the Second Amendment's text plainly covers.

Existing precedent has already determined that California's regulations on ammunition sales burden conduct that the Constitution presumptively protects. In *Jackson v. City & Cnty. of San Francisco*, this Court held that purchasing ammunition for use in lawfully owned firearms is "conduct historically understood to be protected by the Second Amendment right to keep and bear arms." 746 F.3d 953, 967 (9th Cir. 2014) (quotation omitted), *abrogated on other grounds by Bruen*, 597 U.S. 1. This Court has also recognized that "[t]he Second Amendment guarantees … 'an individual's right to carry a handgun for self-defense outside the home,'" *Baird v. Bonta*, 81 F.4th 1036, 1043 (9th Cir. 2023) (citing *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) and quoting *Bruen*, 597 U.S. at 10), and that this "right … implies a corresponding right to obtain the bullets [that is, the ammunition] necessary to use them," *Jackson*, 746 F.3d at 967 (quotation omitted). For this reason, precedent has rejected attempts to "differentiate between regulations governing ammunition and regulations governing the firearms themselves." *Id.* (citing *Heller*, 554 U.S. at 632). Because both the ammunition background-check provisions and the anti-

importation provisions burden individuals' ability to obtain ammunition, the provisions are presumptively unconstitutional.

The ammunition background-check provisions burden Californians' Second Amendment rights because they make the protected conduct of purchasing ammunition for use with lawfully owned firearms more difficult for Californians. They make that conduct harder by prohibiting all ammunition purchases except those made through a California-licensed seller and subject to an unreliable background-check system that the State makes more costly and time-consuming for individuals who do not submit to the State's registry of firearm owners. *See* above at 1–2. And the anti-importation provisions make it illegal for anyone in California to possess ammunition sourced from another State unless it was delivered by a California-licensed seller. *See* above at 2. These requirements notably prohibit direct-delivery internet sales, imposing inconvenience and expense on Californians who wish to access the unmatched selection that the multi-billion-dollar internet ammunition market offers, *see Online Gun & Ammunition Sales in the US – Market Size (2005–2029)*, IBISWorld (May 30, 2023), https://perma.cc/43MN-VAZZ. California's laws burden the fundamental right to armed self-defense by introducing obstacles to obtaining the ammunition necessary to exercise that right. So, the laws are unconstitutional unless California proves that they are in keeping with historical tradition.

### B. California has identified no historical analogue to its new regulations because no analogue exists.

California cannot meet its burden of proving that its regulations are constitutional at the second stage of *Bruen*'s analysis because the ammunition background-check and anti-importation provisions are not relevantly similar to any historically accepted regulations. To save its regulations, California must show that each is "relevantly similar" to "a historical regulation" that is "well-established and representative." *Bruen*, 597 U.S. at 28–30. The central question is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29. In other words, courts must compare "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.*

Modern regulations that do not address distinctly modern social problems need a particularly close historical analogue to survive. As the *Bruen* Court put it, "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id.* at 26–27.

California's regulations are subject to this closer similarity requirement because they purportedly address the old societal problem of armed violence by "prevent[ing] ammunition from being transferred to those who are [legitimately] prohibited from possessing it." Apt. Br. at 46. The possibility of people committing violence with ammunition obtained illegally and without the government's knowledge has existed since the earliest days of colonial history, when there were few government resources to monitor a widely dispersed population. Of course, technological change has made "a dead ringer ... historical precursor[]," *Bruen*, 597 U.S. at 30, impossible because there was no Founding-era internet through which to conduct background checks or sell ammunition. But a historical regulation would be relevantly similar to California's ammunition background-check provision if it required individuals to get government permission or prove their good character and pay an administrative fee for every ammunition-related purchase. A historical regulation relevantly similar to California's importation ban would have prohibited anyone from bringing ammunition into a State or colony unless presented to a government official and after paying an administrative fee. One would also expect to see late-nineteenth-century laws prohibiting mail-order ammunition purchasing. *Cf.* Apt. Br. at 31. No historical regulation comes close.

But that has not stopped California from claiming disparate regulations as close ancestors. The historical candidates are, in fact, all examples of "earlier generations address[ing] the societal problem … through materially different means," which is "evidence that [the] modern regulation is unconstitutional." *Bruen*, 597 U.S. at 26–27. California first points to colonial laws that sought to disarm anyone who would not swear loyalty to their newly independent colony during the Revolutionary War. Apt. Br. at 29–30. California is correct that these "requirements … were designed to determine whether individuals were prohibited from possessing arms," *id.* at 30, but that only partially covers "why" colonies burdened the right to bear arms and ignores that the "how" is unrecognizably different, *see Bruen* at 597 U.S. at 29. California, unlike the colonies, is not in an existential war against many of its own citizens, which must be relevant to any "why" inquiry. And the challenged provisions do not impose a one-time loyalty oath or even a one-time patriotism background-check as a condition of keeping weapons one already has. So, these historical regulations, which did not address ammunition sales in any way, do not even register on the "how" metric. The same applies to Reconstruction-Era loyalty oaths. *See* Apt. Br. at 31.

California's next comparison—to early concealed-carry licensing laws—is no more helpful. *See id.* at 31–32. These historical laws, California says, responded to

"the rise of handgun mail-order purchasing br[inging] cheap handguns to buyers' doors." *Id.* at 31 (quotation omitted). Notably, however, these laws did not regulate ammunition. They in fact harm California's case to the extent that the impersonal firearms purchases they responded to are similar to the direct-delivery ammunition sales that California prohibits through its anti-importation provisions' face-to-face transaction requirement and out-of-state-purchasing ban. That is because the historical laws are examples of "earlier generations" responding to similar perceived problems "through materially different means." *Bruen*, 597 U.S. at 26–27. They might support California's background-check requirement for concealed-carry. *See* Cal. Penal Code §§26150, 26202. But they provide no support for the new additional regulations California is defending.

California also points to historical licensing and recordkeeping requirements imposed on *commercial sellers* of *firearms* and *exporters* of [extremely volatile early] *gunpowder. See* Apt. Br. at 33. These do not compare with California's requirement that its *private citizens* obtain governmental consent for every *individual purchase* of *shelf-stable, modern ammunition.*

Finally, California's ammunition background-check and anti-importation laws bear no resemblance to the surety and "going armed" laws that the Supreme Court analyzed in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). Surety laws allowed a

judge to require rowdy individuals to post a bond to guarantee nonviolent behavior, *id.* at 1899–1900, while "going armed" laws forbade carrying "dangerous or unusual weapons" in public to "terrify" others, *id.* at 1901 (quotation and brackets omitted). The Court emphasized that those historical laws did "not broadly restrict arms use by the public generally," and that their application "involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Id.* at 1901–02. The Court also stressed that "surety bonds" were "of limited duration." *Id.* at 1902.

The California laws share none of these key characteristics. They regulate the public generally by interfering with all Californians' ability to purchase the ammunition they need for self-defense. They involve no individualized judicial determinations of dangerousness, but rather treat all ammunition purchasers as inherently suspect. Unlike surety bonds, they have no durational limits. And unlike "going armed" laws, they do not regulate *carrying* weapons or content themselves with regulating *dangerous or unusual* weapons. They reach much further to regulate an act that poses no threat of imminent violence or public terror—purchasing ammunition. And they restrict all ammunition including the calibers most *common* for use in self-defense, like 9mm and .380 auto, and calibers *least likely* to be used in acts of violence, like the miniscule .22 short cartridges used in shooting galleries and shotgun target

loads that contain low powder charges and tiny metal BBs. Given these differences, it is no wonder that California does not even try to liken its laws to the surety and "going armed" laws of historical tradition.

The district court aptly described the ammunition background-check and anti-importation regime as an "extensive and ungainly" "first-of-its-kind sweeping statewide restriction" of fundamental rights that is "unprecedented" in all American history. Dist. Ct. Op., R.105, PageID#3439, 3434. For that reason, the challenged provisions violate the Second Amendment and should remain enjoined.

## II. California's attempts to evade the Second Amendment by avoiding *Bruen*'s analogical reasoning analysis fail.

California makes two arguments that would exempt its laws from historical comparison, but neither has merit. First, California distorts *Bruen*'s first stage to argue that the challenged provisions do not burden conduct that the Second Amendment protects. California tries to define the relevant conduct as "purchas[ing] ammunition without complying with any background check requirements," which, it says, is not plainly covered by the Second Amendment's text. Apt. Br. at 20. That argument is foreclosed by circuit precedent that recognizes purchasing ammunition as part of "the right to possess firearms." *Jackson*, 746 F.3d at 967. And it runs contrary to *Bruen*'s example of how to define the "proposed course of conduct" at stage one, namely, without reference to the regulations that burden it. *See* 597 U.S.

at 32. *Bruen* defined the "proposed course of conduct" in that case as "carrying handguns publicly for self-defense," *id.*, not "carrying handguns publicly for self-defense without showing special need."

*Bruen* thus rejects attempts to sneak the challenged regulation into the proposed course-of-conduct definition because that tactic, if allowed, would shift the government's burden of showing historical continuity onto the plaintiffs. It would force plaintiffs to prove at the outset of every Second Amendment case that history affirmatively rejects the regulation. But that is precisely the opposite of *Bruen*'s holding. It would also mean that a regulation becomes less constitutionally suspect the more different it is from firearms regulation that came before it. California cannot reverse *Bruen* by wordplay.

Second, California argues that the challenged regulations are presumptively lawful because the Supreme Court approved background checks for concealed-carry permits in *Bruen* and endorsed certain other pedigreed firearms regulations in *Heller*. Apt. Br. at 20–24. This argument is irrelevant. California already has a concealed-carry background-check system, and it is not at issue here. Nor are any of the regulations that *Heller* listed as historically acceptable before this Court. *See* 554 U.S. at 626–27. The relevant points are that the Supreme Court has never endorsed

ammunition background-checks or anti-importation provisions, and that neither type of regulation is "longstanding"—a prerequisite to presumptive lawfulness. *Id.* at 626.

This argument also reflects a fundamental misunderstanding of *Heller*. *Heller* did not exempt any firearms regulations from "an exhaustive historical analysis." *Id.* It simply gave some examples of regulations that survive that analysis as guide-posts because the Court could not "undertake" an explication of "the full scope of the Second Amendment," in one opinion. *Id.* It is this Court's duty to undertake that historical analysis as to California's ammunition background-check and anti-im-portation provisions. Those regulations cannot withstand it. Above at 6–11.

* * *

California's ammunition background-check and anti-importation provisions make firearms unusable to California residents unless they buy the State's renewed permission to reload them every time they run low on ammunition. Both sets of provisions violate the Second Amendment because they are unrecognizable to this Nation's historical tradition of firearms regulation. Both sets of provisions are a prime example of why We the People placed certain rights beyond the reach of state legislatures by enumerating them in the Bill of Rights. This Court's duty is to vindi-cate that choice.

## CONCLUSION

The Court should affirm the judgment below.

RAÚL R. LABRADOR
Idaho Attorney General

*/s/ Alan M. Hurst*
ALAN M. HURST
Idaho Solicitor General
SEAN M. CORKERY
Assistant Attorney General
Office of the Idaho
Attorney General
P.O. Box 83720
Boise, Idaho 83720
208.334.2400
Alan.Hurst@ag.idaho.gov
Jack.Corkery@ag.idaho.gov

*Counsel for Amicus Curiae*
 *State of Idaho*

DAVE YOST
Ohio Attorney General

*/s/ Mathura J. Sridharan*
T. ELLIOT GAISER
Ohio Solicitor General
MATHURA J. SRIDHARAN*
 **Counsel of Record*
NICHOLAS A. CORDOVA
Deputy Solicitors General
30 E. Broad St., 17th Fl.
Columbus, Ohio 43215
614.466.8980
mathura.sridharan@ohioago.gov

*Counsel for Amicus Curiae*
 *State of Ohio*

## ADDITIONAL COUNSEL

Steve Marshall
Alabama Attorney General

Treg R. Taylor
Alaska Attorney General

Tim Griffin
Arkansas Attorney General

Ashley Moody
Florida Attorney General

Christopher M. Carr
Georgia Attorney General

Theodore E. Rokita
Indiana Attorney General

Brenna Bird
Iowa Attorney General

Kris Kobach
Kansas Attorney General

Elizabeth B. Murrill
Louisiana Attorney General

Lynn Fitch
Mississippi Attorney General

Andrew Bailey
Missouri Attorney General

Austin Knudsen
Montana Attorney General

Michael T. Hilgers
Nebraska Attorney General

John M. Formella
New Hampshire Attorney General

Drew H. Wrigley
North Dakota Attorney General

Alan Wilson
South Carolina Attorney General

Marty Jackley
South Dakota Attorney General

Jonathan Skrmetti
Tennessee Attorney General
and Reporter

Ken Paxton
Texas Attorney General

Sean D. Reyes
Utah Attorney General

Patrick Morrisey
West Virginia Attorney General

Bridget Hill
Wyoming Attorney General

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s)** 24-542

I am the attorney or self-represented party.

**This brief contains** _____2,773_____ **words,** excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App.

P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
[ ] it is a joint brief submitted by separately represented parties;
[ ] a party or parties are filing a single brief in response to multiple briefs; or
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Mathura J. Sridharan          **Date** July 31, 2024

16

## STATEMENT OF RELATED CASES

There are no related cases currently pending in this Court:

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2024, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Mathura J. Sridharan*
Mathura J. Sridharan
Ohio Deputy Solicitor General