No. 24-542

====================

**In the
United States Court of Appeals for the Ninth Circuit**

————————

KIM RHODE, *ET AL.*,
*Plaintiffs-Appellees*,

v.

ROB BONTA, in his official capacity as
Attorney General of the State of California,
*Defendant-Appellant*.

————————

**On Appeal from the
United States District Court for
the Southern District of California**

————————

**Brief *Amicus Curiae* of Gun Owners of California, Gun Owners of America, Inc., Gun Owners Foundation, Heller Foundation, Tennessee Firearms Association, Tennessee Firearms Foundation, America's Future, U.S. Constitutional Rights Legal Defense Fund, Conservative Legal Defense and Education Fund, and Restoring Liberty Action Committee in Support of Plaintiffs-Appellees and Affirmance**

————————

JOSEPH W. MILLER
  Law Office of Joseph Miller, LLC
  P.O. Box 83440
  Fairbanks, AK 99708

JOHN I. HARRIS, III
  SCHULMAN, LEROY, & BENNETT, P.C.
  3310 West End Avenue
  Suite 460
  Nashville, TN 37203

JEREMIAH L. MORGAN*
WILLIAM J. OLSON
ROBERT J. OLSON
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, VA 22180-5615
  (703) 356-5070
*Attorneys for Amici Curiae*
July 31, 2024
*Attorney of Record

====================

## DISCLOSURE STATEMENT

The *amici curiae* herein, Gun Owners of California, Gun Owners of America, Inc., Gun Owners Foundation, Heller Foundation, Tennessee Firearms Association, Tennessee Firearms Foundation, America's Future, U.S. Constitutional Rights Legal Defense Fund, Conservative Legal Defense and Education Fund, and Restoring Liberty Action Committee, through their undersigned counsel, submit this Disclosure Statement pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A). Restoring Liberty Action Committee is an unincorporated educational organization, and the other *amici curiae* are non-stock, nonprofit corporations, none of which has any parent company, and no person or entity owns them or any part of them.

    *s/Jeremiah L. Morgan*
Jeremiah L. Morgan

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    THE AMMUNITION BACKGROUND CHECK LAW IS THE LATEST
      EXAMPLE OF CALIFORNIA PUTTING ITS ANTI-GUN ACTIVISM
      "TOWARD ABUSIVE ENDS" . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    California's ABC Law Imposes Burdens without Benefits. . . . . 4

      B.    The *Bruen* Decision Cautions States against Resisting Second
            Amendment Rights . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    California Has Entered Its Second Century of Laws Infringing
            Second Amendment Rights . . . . . . . . . . . . . . . . . . . . 6

      D.    The Exponential Growth in Anti-Gun Legislation . . . . . . . . . . 16

II.   LITIGATION INVOLVING CALIFORNIA GUN LAWS . . . . . . . . . . . . . . . 19

III.  THE ATTORNEY GENERAL'S PUBLICLY FUNDED WEBSITE PROMOTES
      THE NATION'S LEADING ANTI-GUN ORGANIZATIONS AND ANTI-GUN
      CANDIDATES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.   THE SUPREME COURT'S DECISION IN *RAHIMI* DOES NOT CHANGE
      *BRUEN'S* METHODOLOGY . . . . . . . . . . . . . . . . . . . . . . . . . 26

ii

A.   Appellees' Second Amendment Rights Have Not Yet Been
     Vindicated Despite over Seven Years of Litigation . . . . . . . . . . 26

B.   The *Bruen* Test Was Not Changed by *Rahimi* . . . . . . . . . . . . 28

C.   *Rahimi* Reinforced *Bruen*'s Presumption that Citizens Are
     Presumed to Have the Right to Keep and Bear Arms . . . . . . . . 29

D.   Background Checks for Ammunition Purchases Are Novel . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

# TABLE OF AUTHORITIES

Page

UNITED STATES CONSTITUTION
Amendment II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, *passim*

STATUTES
18 U.S.C. § 922 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30
18 U.S.C. § 926A . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Cal. Pen. Code 26230 . . . . . . . . . . . . . . . . . . . . . . . . . 12

CASES
*District of Columbia v. Heller*, 554 U.S. 570 (2008) . . . . . . . . . . 5, 9, 26, 32
*Jackson v. City & County of San Francisco*, 746 F.3d 953 (9th Cir. 2014) . . . 32
*McDonald v. Chicago*, 561 U.S. 742 (2010) . . . . . . . . . . . . . . . . 26
*N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1 (2022) . . . . . . 2, *passim*
*United States v. Duarte*, No. 22-50048 (July 17, 2024) . . . . . . . . . . . 24
*United States v. Rahimi,* 144 S.Ct. 1889 (2024) . . . . . . . . . . . . 3, 26, 28, 30

MISCELLANEOUS
B. Anderson, "You'll only be able to buy one gun a month in California
    under new law," *Sacramento Bee* (Oct. 11, 2019) . . . . . . . . . . . . . 9
C. Bay & C. Tolan, "State official call for gun control action after Las
    Vegas shooting," *Times-Herald* (Oct. 2, 2017) . . . . . . . . . . . . . . . 11
A. Beam, "California governor signs law raising taxes on guns and
    ammunition to pay for school safety," *Associated Press* (Sept. 26,
    2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
C. Edwards, "Flashback: Kamala Harris Said D.C.'s Handgun Ban Didn't
    Violate Second Amendment," *BearingArms.com* (July 23, 2024) . . . . . 9
E. Heckman, "California Republicans oppose new gun, ammo tax headed
    to Newsom's desk: 'Brutal attack on Second Amendment,'" *Fox
    News* (Sept. 12, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
A. Koseff, "Why Gavin Newsom's gun control constitutional amendment
    hasn't gone beyond California," *CalMatters.org* (June 7, 2024) . . . . . 15
T. Luna, "California lawmakers pass Newsom's call for U.S. constitutional
    convention on gun control," *Los Angeles Times* (Sept. 14, 2023) . . . . . 14

iv

P. McGreevy, "California lawmaker targets open carrying of long guns in public," *Los Angeles Times* (Jan. 23, 2012) . . . . . . . . . . . . . . . . . . 10

P. McGreevy, "California's long history on assault weapons on the line in court battle," *Los Angeles Times* (July 30, 2021) . . . . . . . . . . . . . . 7

T. Morgan, "The NRA Supported Gun Control When the Black Panthers Had the Weapons," *History.com* (Mar. 22, 2018) . . . . . . . . . . . . . 7

C. Orr, "The Second Amendment Has Been 'Reborn' In California," *19fortyfive.com* (Oct. 28, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . 15

O. Rondeau & H. Cox, "The ACLU Claims the Second Amendment Is Racist, But Gun Control Has the Real Record on Systemic Oppression," *Foundation for Economic Education* (Aug. 3, 2021) . . . . 6

A. Stockler, "California Just Passed a Slate of New Gun Control Measures, Expanding Red Flag Laws and Tightening Sales," *Newsweek* (Oct. 12, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

"The Truth About So-Called 'Assault Weapons,'" *NRA-IRA* . . . . . . . . . . . 7

M. Vasilogambros, "Colorado Allows Tougher Local Gun Laws. Other States May Follow," *Stateline* (Nov. 1, 2021) . . . . . . . . . . . . . . . . 14

D. Walters, "Do 'red flag' laws actually save lives?" *CalMatters.org* (Aug. 22, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## INTEREST OF *AMICI CURIAE*[1]

Gun Owners of California, Gun Owners of America, Inc., Gun Owners Foundation, Heller Foundation, Tennessee Firearms Association, Tennessee Firearms Foundation, America's Future, U.S. Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and Education Fund are nonprofit organizations, exempt from federal taxation under sections 501(c)(3) or 501(c)(4) of the Internal Revenue Code. Restoring Liberty Action Committee is an educational organization. Each is dedicated, *inter alia*, to the correct construction, interpretation, and application of law.

These *amici* have filed numerous other *amicus* briefs in federal and state courts in support of the Second Amendment, and some of these *amici* filed a prior *amicus* brief in this case on August 7, 2020, along with a supplemental *amicus* brief on September 29, 2022.

## STATEMENT OF THE CASE

In 2016, California voters passed Proposition 63, which required a background check for California gun owners to purchase ammunition in the state.

---

[1] All parties have consented to the filing of this brief *amicus curiae*. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than these *amici curiae*, their members or their counsel contributed money that was intended to fund preparing or submitting this brief.

The statute originally required a background check in order for someone to acquire an "ammunition purchase permit," which was then valid for four years. However, before election day, the legislature "prospectively amended" Proposition 63, to require separate background checks every time a citizen seeks to purchase ammunition. *Rhode v. Bonta*, 2024 U.S. Dist. LEXIS 17052 at *2-3 (S.D. Cal. 2024) ("*Rhode III*"). The law resulted in "gun owners in California undergo[ing] background checks more than one million times each year simply to buy ammunition." *Id.* at *4. The law also prohibited Californians from purchasing ammunition out of state for possession in the state. *Id.* The law was challenged by seven individual California gun owners, three firearms dealers, and the California Rifle & Pistol Association, Inc.

In 2020, the District Court for the Southern District of California granted plaintiffs' motion for a preliminary injunction, finding that the law offended the Second Amendment as well as the federal Dormant Commerce Clause due to its importation restrictions. *Rhode v. Becerra*, 445 F. Supp. 3d 902, 910-911 (S.D. Cal. 2020) ("*Rhode I*").

After the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1 (2022), the Ninth Circuit vacated and remanded the ruling for

2

further consideration. *See Rhode v. Bonta*, 2022 U.S. App. LEXIS 32554 (9th Cir. 2022) ("*Rhode II*").

On remand, the district court found that under *Bruen* "[t]he ammunition background checks laws have no historical pedigree and operate in such a way that they violate the Second Amendment right of citizens to keep and bear arms [and t]he anti-importation components violate the dormant Commerce Clause…." *Rhode III* at *43. The court further found that the statute is preempted by 18 U.S.C. § 926A, which provides: "Notwithstanding any other provision of any law … of a State … any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm." *Id*. at *39-40.

## ARGUMENT

The prior two *amicus* briefs filed by some of these *amici* extensively addressed the lack of historical analogues for the challenged statute. This *amicus* brief places the statute into context and demonstrates that the *Bruen* methodology was unchanged by the Supreme Court's decision in *Rahimi*.

3

I.  **THE AMMUNITION BACKGROUND CHECK LAW IS THE LATEST EXAMPLE OF CALIFORNIA PUTTING ITS ANTI-GUN ACTIVISM "TOWARD ABUSIVE ENDS."**

A.  **California's ABC Law Imposes Burdens without Benefits.**

California's ammunition background check ("ABC") law has been both burdensome and ineffective, as Appellees point out.  In terms of benefits to the State:  "'11 percent of individuals were rejected following a Standard Check in the first six months of 2023,'" and "virtually none of those rejections involved a dangerous felon attempting to unlawfully purchase ammunition.…  People were instead deprived of ammunition simply because the state was unwilling to even try to conduct the background check that it now requires, for issues as mundane as typos in its own records or failure to update those records.…"  Brief for Plaintiffs-Appellees ("Appellees' Br.") at 40-41.

In terms of burden on Californians:  "vendors have reported turning away as many of [sic] half of their prospective customers in a day just for lacking the right ID to try to comply with the state's new law."  *Id*. at 42-43.  The check system is so slow and cumbersome that "almost 40% of rejected individuals still had not managed to purchase ammunition fully six months after being rejected." *Id*. at 42.

4

**B.    The *Bruen* Decision Cautions States against Resisting Second Amendment Rights.**

In the *Bruen* case, the Supreme Court issued a warning to states like California which have pursued a policy of massive resistance to the Court's Second Amendment decisions since *District of Columbia v. Heller*, 554 U.S. 570 (2008).  Each year California clamps down further on the Second Amendment rights of Californians as part of what appears to be a long-range plan to render the Second Amendment a dead letter in the state — to the degree it can persuade this Court to cooperate.

The ruling in *Bruen* declared that New York had gone much too far, as "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place.'"  *Bruen* at 31.  And it issued a further warning that should be instructive to California in this case. "[B]ecause any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry."  *Bruen* at 38 n.9.  Here, Appellees quote the district court's comment that under California's ABC law, "'record data mismatches, lengthy and occasionally infinite wait times, and sometimes exorbitant fees, are

5

currently denying ordinary citizens their right to public carry.'" Appellees' Br. at 40 (quoting *Rhode III* at *16).

### C. California Has Entered Its Second Century of Laws Infringing Second Amendment Rights.

California's hostility to the right to keep and bear arms, and its discriminatory enforcement of that hostility, goes back to at least 1923. That year, the legislature criminalized the concealed carry of a handgun, imposing a 1-5 year sentence. 1923 Cal. Stat. 695. As has also become customary for California, the law included a provision discriminating against the citizens of all other states by completely prohibiting non-citizens from possessing handguns within the State. *Id.*

In 1967, in response to black Californians arming themselves, Republican Assemblyman Don Mulford sponsored the Mulford Act.[2] The Act "effectively banned open carry in California, and it stemmed directly from the Black Panthers embracing their Second Amendment rights." The law "took California down the path to having some of the strictest gun laws in America and helped jumpstart a

---

[2] O. Rondeau & H. Cox, "The ACLU Claims the Second Amendment Is Racist, But Gun Control Has the Real Record on Systemic Oppression," *Foundation for Economic Education* (Aug. 3, 2021).

6

surge of national gun control restrictions."[3]  Along with the 1923 concealed carry

ban, the law remains on California's books today.

In more recent times, most recently led by Governor Gavin Newsom,

California politicians appear to be trying to outdo each other with more

infringements on the Second Amendment.  In 1989, California became the first

state in the nation to outlaw private possession of a broadly defined category it

called "assault weapons,"[4] essentially equating to most semi-automatic handguns

and long guns.[5]

In 2014, California became one of the first states in the nation to adopt a

so-called "red flag" law, authorizing family members and law enforcement to

turn in individuals they believe could pose a threat.[6]  In 2020, the list of

authorized reporters in that law was expanded to include employers, co-workers,

---

[3] T. Morgan, "The NRA Supported Gun Control When the Black Panthers Had the Weapons," *History.com* (Mar. 22, 2018).

[4] The term "assault weapons" is a highly misleading term, carefully crafted to create an emotional response against their private ownership. *See* "The Truth About So-Called 'Assault Weapons,'" *NRA-IRA*.

[5] P. McGreevy, "California's long history on assault weapons on the line in court battle," *Los Angeles Times* (July 30, 2021).

[6] AB 1014 (2014).

and teachers.[7]  And more recently "some have suggested expanding the authority to initiate seizure orders to just about everyone."[8]

A bill in 2019 expanded the potential length of "red flag" gun confiscation orders from one year to five years.[9]  "We will never know just how many lives these bills will save," Assemblywoman Jacqui Irwin proclaimed.[10]  The bill made California's red flag law "among the most restrictive in the country."  A. Stockler.  Newsom boasted, "California is once again leading the nation" in restricting Second Amendment rights.  *Id.*

Yet another 2019 measure, SB 61, expanded California's "one gun a month" rule from handguns to previously-unregulated semi-automatic long guns. "We need to get [guns] off the streets," said state senator Anthony Portantino,

---

[7]  AB 61 (2020).

[8]  D. Walters, "Do 'red flag' laws actually save lives?" *CalMatters.org* (Aug. 22, 2019).

[9]  A. Stockler, "California Just Passed a Slate of New Gun Control Measures, Expanding Red Flag Laws and Tightening Sales," *Newsweek* (Oct. 12, 2019).

[10]  Press Release, "Assemblymember Irwin's Legislation in Response to Borderline Shooting to Strengthen Firearm Safety in California Signed by Governor Newsom" (Oct. 11, 2019).

8

who sponsored the bill.[11]  (The bill also prohibited citizens 18-20 years of age from purchasing semi-automatic weapons at all.)  The rush of California politicians to outdo each other in gutting the Second Amendment has been too extreme even for some figures such as former Democratic Governor Jerry Brown, who vetoed similar legislation in previous sessions, noting correctly that the bill "would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need."  *Id*.  But to California's anti-gun politicians, these burdens apparently don't matter.

The Mulford Act's ban on public carry of loaded firearms was not nearly enough for California's anti-gun politicians.  In 2008, then-San Francisco district attorney, future California attorney general, and now Vice President Kamala Harris, was a signatory to an *amicus* brief urging the Supreme Court to uphold the District of Columbia's total ban on handguns in the home at issue in *Heller*.[12]

---

[11]  B. Anderson, "You'll only be able to buy one gun a month in California under new law," *Sacramento Bee* (Oct. 11, 2019).

[12]  C. Edwards, "Flashback: Kamala Harris Said D.C.'s Handgun Ban Didn't Violate Second Amendment," *BearingArms.com* (July 23, 2024).

In 2011, California's legislature banned open carry of unloaded handguns.[13]  When gun rights supporters protested by open-carrying unloaded long guns, the legislature struck back in 2012 with AB 1527, blaming those exercising Second Amendment rights.[14]  "Unfortunately, the open carry community has decided to once again force our hand by escalating their unnecessary activities and entering our communities with … long guns," declared state Senator Anthony Portantino, in announcing his retaliatory sponsorship of AB 1527.[15]  This left Californians only the option of concealed carry to exercise their right of self-defense.

After a shooting in Las Vegas in 2017, for which there was never a final FBI or Las Vegas Police report explaining what happened, state Assembly Speaker Anthony Rendon blamed the murderer's action on supporters of the Second Amendment.  "The police say the shooter appeared to have acted alone.

---

[13]  AB 144.

[14]  AB 1527.

[15]  P. McGreevy, "California lawmaker targets open carrying of long guns in public," *Los Angeles Times* (Jan. 23, 2012).

10

That's not true," Rendon claimed. "Every gun lobbyist and the politicians who do their bidding were all in that room with him."[16]

In 2022, California banned all gun shows on state property, eliminating a long tradition of gun shows at county fairs.[17] Senator Dave Min issued a press release announcing his bill and deriding gun shows, stating that California county fairgrounds had become "well-known for gun shows. This needs to change."[18] Assemblyman Steve Bennett joined in, adding, "The United States has one of the most pervasive gun cultures in the world supported by a powerful gun lobby. Gun shows at the Fairgrounds enhance this and it is time for each of us to play a role in changing this culture."[19]

In 2023, California launched its latest assault on the Second Amendment, directly in defiance of the Supreme Court's *Bruen* decision in June 2022. California became the first state to impose a tax — 11 percent — directly on all

---

[16] C. Bay & C. Tolan, "State official call for gun control action after Las Vegas shooting," *Times-Herald* (Oct. 2, 2017).

[17] SB 915.

[18] Press Release, "Senator Dave Min Introduces Legislation to Ban Gun Shows on All State Property, Builds on OC Fairgrounds Ban" (Feb. 3, 2022).

[19] Press Release, "Bennett, Limon Bill to Restrict Gun Sales at Ventura County Fairground Signed by the Governor" (July 21, 2022).

11

purchases of guns and ammunition.[20]  "[T]his is really a brutal, unfair attack on our Second Amendment and our ability to defend ourselves," said Assemblyman Tom Lackey (R-CA), a former highway patrol officer.[21]

Worse, the legislature effectively banned even concealed carry in virtually all public places, rendering the "right to keep and bear arms" effectively a dead letter in California.  With Senator Portantino again as principal sponsor, California banned concealed public carry of firearms in a laundry list of 26 types of locations effectively covering all public places.[22]  Codified as Cal. Pen. Code 26230, the bill further banned possession in any privately owned business unless the business owner affirmatively posts signage permitting carrying.

 U.S. District Judge Cormac Carney granted a preliminary injunction against the ban on carrying even in privately owned businesses, calling the ban "sweeping, repugnant to the Second Amendment, and openly defiant of the Supreme Court" in *Bruen*.  Cormac, of course, was correct.  *Bruen* was clear

---

[20]  A. Beam, "California governor signs law raising taxes on guns and ammunition to pay for school safety," *Associated Press* (Sept. 26, 2023).

[21]  E. Heckman, "California Republicans oppose new gun, ammo tax headed to Newsom's desk: 'Brutal attack on Second Amendment,'" *Fox News* (Sept. 12, 2023).

[22]  SB 2.

that "[p]ut simply, there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place.'" *Bruen* at 31.  Unimpressed, California has effectively declared the entire state a "sensitive place."

Also in 2023, California began efforts to require all firearms owners to maintain liability insurance for any injuries or deaths that might involve their firearms, even if the firearm was lost or stolen.[23]  Senators Catherine Blakespear and Nancy Skinner co-sponsored SB 8.  Skinner declared:  "Requiring gun owners to carry liability insurance puts the burden where it should be — on the gun owner."[24]  Once again, no other state so far has been allowed to take such a step to punish citizens for exercising their Second Amendment rights.  The bill has not yet passed, but it is likely to be brought back again before the legislature.

P.B. Gomez, president and founder of the California-based Latino Rifle Association, argues that the insurance requirement discriminates against low-income gun owners, who are disproportionately black and Hispanic.  "This is …

---

[23]  SB 8.

[24]  Press Release, "Senators Blakespear And Skinner Announce New Bill Requiring Gun Owners To Have Insurance" (Jan. 26, 2023).

fundamentally classist," said Gomez.[25]  As usual, the anti-gun politicians in California appear to remain unconcerned.

On June 8, 2023, Governor Newsom went so far as to propose a convention of states to pass a new constitutional amendment to overturn the Second Amendment, and functionally destroy the right of armed self-defense.[26] His amendment would ban 18-20-year-olds from the right to purchase arms for self-defense, despite the fact that they can be drafted to defend California and the nation in the military.  It would impose a nationwide ban on any weapon loosely classified as an "assault weapon."  Supporting Newsom's proposal, Senator Aisha Wahab derided "the gun fetish culture around weapons of war" like semi-automatic firearms.  *Id.*  In September 2023, the California legislature passed a resolution endorsing Newsom's repeal of the Second Amendment.[27] Assemblyman Reggie Jones-Sawyer also derided semi-automatic firearms as

---

[25]  M. Vasilogambros, "Colorado Allows Tougher Local Gun Laws. Other States May Follow," *Stateline* (Nov. 1, 2021).

[26]  Press Release, "Governor Newsom Proposes Historic 28th Amendment to the United States Constitution to End America's Gun Violence Crisis" (June 8, 2023).

[27]  T. Luna, "California lawmakers pass Newsom's call for U.S. constitutional convention on gun control," *Los Angeles Times* (Sept. 14, 2023).

"weapons of war."[28]  So, too, did Attorney General Rob Bonta.[29]  A year after Newsom's proposal, California remained the only state proposing to repeal the Second Amendment.[30]

California already has *de facto* gun registration, as in 2011, Assemblyman Mike Feuer sponsored AB 809, which requires all firearms sales to be recorded and reported to the state Department of Justice.[31]  Now in 2024, Senator Portantino has sponsored SB 1160, which would require all firearms owners to re-register each firearm with the state each year.[32]  The legislation allows the Department of Justice to establish the annual renewal fee, without which continued possession of one's own firearm would be illegal.

California has justifiably established an unfortunate reputation as the state most hostile to the Second Amendment self-defense rights of its citizens.

---

[28]  Press Release, "California Becomes First State in America to Call for Constitutional Convention on Right to Safety," (Sept. 15, 2023).

[29]  C. Orr, "The Second Amendment Has Been 'Reborn' In California," *19fortyfive.com* (Oct. 28, 2023).

[30]  A. Koseff, "Why Gavin Newsom's gun control constitutional amendment hasn't gone beyond California," *CalMatters.org* (June 7, 2024).

[31]  AB 809.

[32]  SB 1160.

### D. The Exponential Growth in Anti-Gun Legislation.

The Attorney General's California Firearm Laws Summary (2020) required 37 pages just to summarize the California gun laws. Apparently, there were so many firearms laws enacted since the Summary was prepared in 2020, the Attorney General's office has not had the time or resources to update that list. Indeed, according to the California Attorney General's website, an astonishing 45 "New Firearm/Weapon Laws" were enacted in the brief span of three years, in 2021 to 2023. Moreover, the number of laws is increasing exponentially:

2021 — 8 laws
2022 — 15 laws
2023 — 22 laws



In 2021, eight new gun laws were signed into law:

1. AB 173 (Stats. 2021, ch. 253) – Public safety

16

2. AB 1057 (Stats. 2021, ch. 682) – Firearms
3. AB 1191 (Stats. 2021, ch. 683) – Firearms: Tracing
4. SB 264 (Stats. 2021, ch. 684) – Firearms: The OC Fair and Event Center
5. SB 320 (Stats. 2021, ch. 685) – Domestic Violence Protective Orders: Possession of a Firearm
6. SB 715 (Stats. 2021, ch. 250) – Criminal law
7. AB 2061 (Stats. 2020, ch. 273) – Firearms: Inspections
8. AB 2362 (Stats. 2020, ch. 284) – Firearms Dealers: Conduct of Business

In 2022, the year in which the Supreme Court decided *Bruen* (June 23, 2022), California saw almost twice as many new gun laws (15) take effect as the year before:

1. AB 1621 (Stats. 2022, ch. 76) – Firearms: unserialized firearms
2. AB 1594 (Stats. 2022, ch. 98) – Firearms: civil suits
3. AB 228 (Stats. 2022, ch. 138) – Firearms dealers: inspections
4. AB 311 (Stats. 2022, ch. 139) – Firearms: Del Mar Fairgrounds
5. AB 1769 (Stats. 2022, ch. 140) – Firearms: prohibited places
6. AB 1842 (Stats. 2022, ch. 141) – Firearms: restocking fee
7. AB 2156 (Stats. 2022, ch. 142) – Firearms: Manufacturers
8. AB 2239 (Stats. 2022, ch. 143) – Firearms: prohibited persons
9. AB 2571 (Stats. 2022, ch. 77) – Firearms: advertising to minors
10. AB 452 (Stats. 2022, ch. 199) – Pupil safety: parental notification: firearm safety laws
11. AB 2551 (Stats. 2022, ch. 100) – Firearms
12. AB 1929 (Stats. 2022, ch. 154) – Medi-Cal benefits: violence prevention services
13. SB 906 (Stats. 2022, ch. 144) – School safety: homicide threats
14. SB 915 (Stats. 2022, ch. 145) – Firearms: state property
15. SB 1327 (Stats. 2022, ch. 146) – Firearms: private rights of action

In 2023, the number of gun laws again increased exponentially to 22:

17

1. AB 28 (Stats. 2023, ch. 231 – The Gun Violence Prevention and School Safety Act)
2. AB 97 (Stats. 2023, ch. 233) – Firearms: unserialized firearms
3. AB 301 (Stats. 2023, ch. 234) – Gun violence restraining orders: body armor
4. AB 355 (Stats. 2023, ch. 235) – Firearms: assault weapons: exception for peace officer training
5. AB 455 (Stats. 2023, ch. 236) – Firearms: prohibited persons
6. AB 574 (Stats. 2023, ch. 237) – Firearms: dealer records of sale
7. AB 724 (Stats. 2023, ch. 238) – Firearms: safety certificate instructional materials
8. AB 725 (Stats. 2023, ch. 239) – Firearms: reporting of lost and stolen firearms
9. AB 732 (Stats. 2023, ch. 240) – Crimes: relinquishment of firearms
10. AB 762 (Stats. 2023, ch. 241) – California Violence Intervention and Prevention Grant Program
11. AB 818 (Stats. 2023, ch. 242) – Protective orders
12. AB 1089 (Stats. 2023, ch. 243) – Firearms
13. AB 1406 (Stats. 2023, ch. 244) – Firearms: waiting periods
14. AB 1420 (Stats. 2023, ch. 245) – Firearms
15. AB 1483 (Stats. 2023, ch. 246) – Firearms: purchase
16. AB 1587 (Stats. 2023, ch. 247) – Financial transactions: firearm merchants
17. AB 1598 (Stats. 2023, ch. 248) – Gun Violence: firearm safety education
18. SB 2 (Stats. 2023, ch. 249) – Firearms
19. SB 241 (Stats. 2023, ch. 250) – Firearms: dealer requirements
20. SB 368 (Stats. 2023, ch. 251) – Firearms: requirements for licensed dealers
21. SB 417 (Stats. 2023, ch. 252) – Firearms: licensed dealers
22. SB 452 (Stats. 2023, ch. 452) – Firearms

With few constitutional constraints imposed by this Court, each year new proposals are advanced by state legislators seemingly seeking to outdo the restrictions on firearms imposed by the last session of the legislature.

18

## II.    LITIGATION INVOLVING CALIFORNIA GUN LAWS.

Attempting to vindicate the rights of California gun owners has become a full-time job for many gun groups.  This *amicus* brief is the 20th *amicus* brief that some of these *amici* have been required to file to defend the Second Amendment rights of Californians from infringement by California:

1.   Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Petition for Rehearing en Banc, *Jackson v. City & County of San Francisco*, 9th Circuit (July 3, 2014).  This case was a challenge to San Francisco's requirement that handguns in the home must be stored in a locked container or disabled with a trigger lock when not being carried.

2.   Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Petitioners, *Jackson v. San Francisco,* U.S. Supreme Court (Jan. 15, 2015). This was our second brief in a challenge to San Francisco's requirement that handguns in the home must be stored in a locked container or disabled with a trigger lock when not being carried.

3.   Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Appellants and Reversal, *Peruta v. San Diego*, 9th Circuit (Apr. 30, 2015).

This case was a challenge to California's "good cause" requirement for concealed carry permits.

4. Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Appellees and Affirmance, *Harris v. Silvester*, 9th Circuit (June 2, 2015). This case was a challenge to California's 10-day waiting period for firearms purchases.

5. Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Petitioners, *Peruta v. California*, U.S. Supreme Court (Feb. 16, 2017). This was our second brief supporting a challenge to California's "good cause" requirement for concealed carry permits.

6. Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Plaintiffs-Appellees and Affirmance, *Duncan v. Becerra*, 9th Circuit (Sept. 23, 2019). This case was a challenge to California's ban on so-called "large capacity" magazines.

7. Brief *Amicus Curiae* of Gun Owners of California, Inc., et al. in Support of Petitioners, *Rodriguez v. City of San Jose*, U.S. Supreme Court (May 20, 2020). This case was an effort by a San Jose, California resident to recover his firearms after they were improperly seized by the City and not returned.

20

8.   Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Plaintiffs-Appellees and Affirmance, *Rhode v. Becerra*, 9th Circuit (Aug. 7, 2020).  This was GOA's first brief in the current case.

9.   Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Petitioner, *Lange v. California,* U.S. Supreme Court (Dec. 11, 2020).  This case involved a misdemeanor pursuit into a home that involved the seizure of firearms without a warrant.

10.   Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Plaintiffs-Appellees, *Duncan v. Bonta*, 9th Circuit (May 21, 2021). This was our second brief in a challenge to California's ban on so-called "large capacity" magazines.

11.   Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Petitioners, *Duncan v. Bonta*, U.S. Supreme Court (Apr. 1, 2022). This was our third brief in a challenge to California's ban on so-called "large capacity" magazines.

12.   Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. on Remand in Support of Plaintiffs-Appellees*, Duncan v. Bonta* (supplemental

21

brief), 9th Circuit (Aug. 23, 2022). This was our fourth brief in a challenge to California's ban on so-called "large capacity" magazines.

13. Supplemental Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Plaintiffs-Appellees and Affirmance, *Rhode v. Bonta*, 9th Circuit (Sept. 29, 2022). This was GOA's second brief in the current case, following the Supreme Court's decision in *Bruen*.

14. Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Plaintiffs-Appellees and Affirmance, *Boland v. Bonta,* 9th Circuit (June 2, 2023). This case is a challenge to California's "Unsafe Handgun Act" which severely restricts the types of new handguns that are allowed to be sold in California.

15. Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Plaintiffs-Appellees and Affirmance, *Duncan v. Bonta*, 9th Circuit (Dec. 28, 2023). This was our fifth brief in a challenge to California's ban on so-called "large capacity" magazines.

16. Brief *Amicus Curiae* of Gun Owners of America, Inc., et al. in Support of Plaintiffs-Appellees and Affirmance, *Miller v. Bonta*, 9th Circuit

(Dec. 29, 2023). This case is a challenge to California's ban on so-called "assault weapons."

17. Brief *Amicus Curiae* of Gun Owners of California, Inc., et al. in Support of Plaintiff-Appellant and Reversal, *Baird v. Bonta*, 9th Circuit (Apr. 24, 2024). This case is a challenge to California's virtually complete ban on the open carrying of firearms in public.

18. Brief *Amicus Curiae* of Gun Owners of California, Inc., et al. in Support of Plaintiffs-Appellees and Affirmance, *Nguyen v. Bonta*, 9th Circuit (June 4, 2024). This case is a challenge to California's restriction allowing only one handgun to be purchased per month.

19. Brief *Amicus Curiae* of Gun Owners of California, Inc., et al. in Support of Plaintiffs-Appellees and Affirmance, *Fouts v. Bonta*, 9th Circuit (June 14, 2024). This case is a challenge to California's ban on billy clubs.

20. Brief *Amicus Curiae* of Gun Owners of California, Inc., et al. in Support of Plaintiffs-Appellee and Affirmance, *Rhode v. Bonta*, 9th Circuit (July 31, 2024). This is our third brief supporting this challenge.

This long chain of cases demonstrates this Court's unwillingness to constrain Second Amendment violations by California. It even frustrates judges

on this Court who would apply the Second Amendment, and the Supreme
Court's decisions applying, it in a faithful manner. As Judge Van Dyke said
earlier this month, "judges who are more interested in sidestepping than
following the [Supreme] Court's Second Amendment precedent will latch onto
phrases like 'presumptively lawful' and 'law-abiding citizen' while conveniently
overlooking such bothersome details like the government's burden of supplying
relevantly similar historical analogues." *United States v. Duarte*, No. 22-50048
(July 17, 2024). As he stated in frustration, "In the Ninth Circuit, if a panel
upholds a party's Second Amendment rights, it follows automatically that the
case will be taken en banc." *Id*.

## III. THE ATTORNEY GENERAL'S PUBLICLY FUNDED WEBSITE PROMOTES THE NATION'S LEADING ANTI-GUN ORGANIZATIONS AND ANTI-GUN CANDIDATES.

The Attorney General's website has devoted an entire page to what it terms
Gun Violence Prevention. However, the thrust of that page could better be
described as Gun **Ownership** Prevention. A few, select nonprofit organizations
are promoted on that website — all of which are anti-gun to their core. These
nonprofit organizations could reasonably consider this free advertising on a
government website to constitute at least an endorsement, but more correctly in-

24

kind contribution to each political organizations.  For each, a helpful, clickable

link is provided, assisting Californians to participate in the anti-gun activities of

these groups, and make financial contributions.  The Attorney General's website

states:

> Nonprofit organizations exist at the local, state and national levels to shape public policy, increase community awareness and strengthen public safety measures to protect people from gun violence.
>
> Brady: United Against Gun Violence, a nonprofit that promotes education, litigation, and legislation to reduce gun violence.  The organization is named in honor of Jim and Sarah Brady, who advocated for commonsense gun laws after Jim—while serving as President Ronald Reagan's press secretary—was shot during an assassination attempt on President Reagan.  Jim survived another 33 years and he and Sarah dedicated much of their lives to the work of the organization that is now named in their honor.
>
> Giffords Law Center to Prevent Gun Violence, a nonprofit organization that helps draft, implement, and defend laws, policies, and programs to reduce gun violence.  The organization is led by—and named after—former U.S. Congresswoman Gabrielle Giffords, who survived a gunshot wound inflicted during a "Congress On Your Corner" event in Arizona in 2011.
>
> Everytown for Gun Safety, an organization made up of millions of mayors, teachers, survivors, gun owners, students, and everyday Americans to end gun violence and save lives through combining minds in research, policy, litigation, advocacy and grassroots organizing.

One of the organizations promoted with government funds from the budget of the Attorney General is listed as electing candidates to office, presumably including California.  (The *amici* do not know if this type of state promotion of and fundraising for an organization involved in elections violates California law.)

> Students Demand Action, a grassroots student coalition with chapters all over the country that advocates for common sense gun safety laws, **elects gun sense candidates at local, state and national levels**, educates peers and communities on gun safety issues and solutions, registers new voters, and mobilizes their peers to end gun violence.  [Emphasis added.]

## IV.  THE SUPREME COURT'S DECISION IN *RAHIMI* DOES NOT CHANGE *BRUEN'S* METHODOLOGY.

### A.  Appellees' Second Amendment Rights Have Not Yet Been Vindicated Despite over Seven Years of Litigation.

Proposition 63 was proposed, preemptively amended by the California legislature, and then adopted by the voters in November 2016.  It has now taken over seven years for this Court to be even near the verge of deciding this challenge to that Proposition.  The history of this case has included the district court preliminarily enjoining the law in April 2020 (445 F. Supp. 3d 902), immediately followed by a divided panel of this Court staying the injunction (2020 U.S. App. LEXIS 15525), and then ultimately vacating that injunction and remanding the case in light of *Bruen* (2022 U.S. App. LEXIS 32554 (Nov.

26

2022)).  That remand resulted in a January 30, 2024 district court grant of summary judgment to plaintiffs and issuance of a permanent injunction (2024 U.S. Dist. LEXIS 17052), which was followed by another stay by another divided panel of this Court.[33]

This Court's vacating and remanding the district court's preliminary injunction in light of *Bruen* may not have been necessary, but was understandable.  *Bruen* primarily reinforced the text, history and tradition methodology established in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010), but the district court had already followed that approach.

Now, another Supreme Court decision has been decided during the litigation of this case.  Shortly after California filed Appellant's Opening Brief, on May 24, 2024, the Supreme Court decided *United States v. Rahimi,* 144 S.Ct. 1889 (2024) on June 21, 2024.  Since *Rahimi* resulted in a federal restriction on gun rights being upheld, it might be expected that California will rely on it heavily in its reply brief.  Anticipating that argument will be made, these *amici*

---

[33]  Judge Callahan dissented, explaining:  "I would deny the motion for a stay pending appeal.  I do not believe appellant has met his burden of showing a likelihood of success on the merits or irreparable injury will occur absent a stay."  Ninth Circuit, Motions Panel, Order of February 5, 2024.

27

take this opportunity to explain why *Rahimi* did not change the *Bruen* test, and in no way helps California in this case.

**B.    The *Bruen* Test Was Not Changed by *Rahimi*.**

Under *Bruen*, once a challenge is brought by a citizen to a restriction on keeping and bearing of arms, the burden shifts to the government to demonstrate that the regulation "is consistent with the Nation's historical tradition of firearm regulation." *Bruen* at 24.  Further, that "historical tradition" must spring from the Founding era specifically.  "[T]he scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Id.* at 37.  "[P]ostratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Id.* at 36.

In *Rahimi*, the Court made clear again that the burden was still on the government to demonstrate a relevant Founding-era historical analogue for any restriction on the right to keep and bear arms.  *Rahimi* changed nothing in the *Bruen* methodology, resolving only the narrow issue it decided that is not relevant here.

28

### C. *Rahimi* Reinforced *Bruen*'s Presumption that Citizens Are Presumed to Have the Right to Keep and Bear Arms.

*Rahimi* dealt with a narrow portion of 18 U.S.C. § 922(g) — § 922(g)(8)(b)(i) — which prohibits possession by individuals under a very specific type of restraining order issued after actual notice and a hearing with the opportunity to be participate. The Court ruled that: "[w]hen **an individual** poses a **clear threat of physical violence** to another, the threatening individual may be disarmed. Section 922(g)(8)['s] … prohibition on the possession of firearms by those **found by a court** to present a threat to others fits neatly within the tradition … surety and going armed laws represent." *Id.* at 1901 (emphasis added).

*Rahimi* ruled on a statute permitting **temporary** disarmament of an individual who has been **adjudicated dangerous** by a court of law, based on colonial-era surety and "going armed" laws. With regard to surety laws, the Court stressed the "**individualized**" nature of these regimes. *Id.* at 1899. It emphasized the requirement of an individual **determination by a magistrate** that an individual was dangerous before a bond could be required. The constitutional presumption was in favor of keeping and bearing.

29

The Court also reviewed the history of colonial "going armed" laws. In this regard, *Rahimi* must be read in light of *Bruen,* which already addressed "going armed" laws in detail. *Bruen* had noted that "the common law did not punish the carrying of deadly weapons per se, but only the carrying of such weapons 'for the purpose of an affray, and in such manner as to strike terror to the people.'" *Bruen* at 52. "Therefore, those who sought to carry firearms publicly and peaceably in antebellum America were generally free to do so." *Id.* As with surety statutes, "going armed" laws presumed that the citizen had the right to keep and bear arms. *Rahimi* clearly differentiated between 18 U.S.C. § 922(g)(3), which "presumed that individuals had a right to … carry," and the laws overturned in *Heller* and *Bruen*, which "effectively **presumed** that no citizen had such a right, absent a special need." *Rahimi* at 1902 (emphasis added).

The challenged law here shares the defect of the laws struck down in *Heller* and *Bruen*, in that they are based on a deeply flawed understanding of the Second Amendment. While *Rahimi* was decided after the district court's opinion, the lower court's language quoted below is directly on point:

> The [ABC law] turns that **constitutional presumption** the wrong way around. It treats all citizens as if they do not enjoy a right to

buy ammunition. It forces Americans to entreat and supplicate the state for permission. Only when the State is satisfied that a citizen has proven that they meet the qualifications — only then — does the state issue its stamp of authorization. [*Rhode III* at 34-35 (emphasis added).]

*Rahimi* does nothing to weaken the *Bruen* calculus for analyzing ammunition background checks. Indeed, it upholds *Bruen*'s constitutional presumption in favor of the exercise of the right to keep and bear arms — and the ammunition they require to function.

### D.  Background Checks for Ammunition Purchases Are Novel.

In *Rahimi,* the government had two lines of historical analogues to offer. Here, there is a complete void of a historical tradition requiring every ammunition purchaser to undergo a background check repeatedly every time she attempts to purchase ammunition. Accordingly, California's ABC law fails the second *Bruen* metric — whether there is a relevant historical analogue – and *Rahimi* does not weaken that calculus in the slightest.

As this Court has previously determined, the Second Amendment's text, by necessary implication, protects the right to obtain not only firearms, but ammunition to render them operative.

[W]ithout bullets, the right to bear arms would be meaningless. A regulation eliminating a person's ability to obtain or use ammunition

31

could thereby make it impossible to use firearms for their core purpose. *Cf. Heller*, 554 U.S. at 630 (holding that "the District's requirement (as applied to respondent's handgun) that firearms in the home be rendered and kept inoperable at all times . . . makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional"). Thus the right to possess firearms for protection implies a corresponding right" to obtain the bullets necessary to use them. [*Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014).]

And, as this Court has also correctly noted a decade ago, "*Heller* does not include ammunition regulations in the list of 'presumptively lawful' regulations." *Jackson* at 968. Nor, in this case, could it. *Heller* references "longstanding prohibitions on the possession of firearms by felons and the mentally ill … or laws imposing conditions and qualifications on the commercial sale of arms" as "presumptively lawful" measures. *Heller* at 626-627. Nothing about California's ammunition background check is "longstanding" in any sense. As *Bruen* established: "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen* at 26.

The district court concluded that California **"has not identified a single historical law** that required a citizen to pass a background check in order to

32

purchase ammunition. Citizens were free in every state to buy ammunition at any time and without qualification." *Rhode III* at 25 (emphasis added). Historically, this practice was unchanged until California enacted the challenged law in 2016. As the district court correctly noted, "the government is *unable* to do that which it must now do: demonstrate that California's first-of-its-kind sweeping statewide restriction on buying firearm ammunition is consistent with this Nation's historical tradition of firearm regulation." *Rhode III* at 9.

## CONCLUSION

The decision of the district court should be affirmed.

Respectfully submitted,

_/s/ Jeremiah L. Morgan_

JOSEPH W. MILLER
  LAW OFFICES of JOSEPH MILLER, LLC
  P.O. Box 83440
  Fairbanks, AK  99708

JOHN I. HARRIS, III
  SCHULMAN, LEROY & BENNETT, P.C.
  3310 West End Avenue
  Suite 460
  Nashville, TN  37203

JEREMIAH L. MORGAN*
WILLIAM J. OLSON
ROBERT J. OLSON
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, VA  22180-5615
  (703) 356-5070
  jmorgan@lawandfreedom.com
*Attorney of Record
*Attorneys for Amici Curiae*
July 31, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-542

I am the attorney or self-represented party.

**This brief contains** | 6,686 | **words,** including | 13 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Jeremiah L. Morgan | **Date** | 7/31/24

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                      *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of Gun Owners of California, *et al.*, in Support of Plaintiffs-Appellees and Affirmance, was made, this 31st day of July 2024, by the Court's Case Management/ Electronic Case Files system upon the attorneys for the parties.

_/s/Jeremiah L. Morgan_____

Jeremiah L. Morgan
Attorney for *Amici Curiae*