No. 24-542

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KIM RHODE, *et al.*,

*Plaintiffs-Appellees*,

v.

ROB BONTA, in his official capacity as
Attorney General of the State of California,

*Defendant-Appellant.*

On Appeal from the United States District Court,
Southern District of California
No. 3:18-cv-00802-BEN-JLB (Benitez, J.)

## BRIEF OF GUN VIOLENCE PREVENTION GROUPS AS *AMICI CURIAE* IN SUPPORT OF PETITION FOR REHEARING EN BANC

Douglas N. Letter
Shira Lauren Feldman
Tess M. Fardon
BRADY CENTER
TO PREVENT GUN VIOLENCE
840 First Street, N.E., Suite 400
Washington, DC 20002
(202) 370-8100

Esther Sanchez-Gomez
William T. Clark
GIFFORDS LAW CENTER
TO PREVENT GUN VIOLENCE
268 Bush Street #555
San Francisco, CA 94104

Nathan E. Shafroth
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
nshafroth@cov.com
(415) 591-6000

Hassan Ahmad
Alyssa Greenstein
COVINGTON & BURLING LLP
850 Tenth Street, N.W.
Washington, DC 20001

Elias Rivas
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018

August 14, 2025

*Counsel for* Amici Curiae

## CORPORATE DISCLOSURE STATEMENT

Neither *amici* has a parent corporation or stock. Therefore, no publicly held corporation owns ten percent or more of their stocks.

/s/ *Nathan E. Shafroth*
COVINGTON & BURLING LLP
Nathan E. Shafroth

*Counsel for* Amici Curiae

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

INTEREST OF *AMICI CURIAE* ...................................................................... 1

INTRODUCTION .............................................................................................. 2

ARGUMENT ..................................................................................................... 3

I. Given the gun industry's reaction to the panel opinion and the rise in ghost guns, this case presents an exceptionally important question. ............. 3

II. The panel majority's reasoning risks invalidating longstanding, commonsense firearm regulations. ................................................................ 6

III. The panel majority's Second Amendment analysis should have ended with *Bruen*'s first step. ................................................................................ 9

CONCLUSION ................................................................................................ 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*B&L Prods., Inc. v. Newsom*,
 104 F.4th 108 (9th Cir. 2024) ................................................................... 9, 10, 11

*Craghtten v. United States*,
 2025 WL 1886708 (D. Idaho Jan. 31, 2025) ...................................................... 10

*Duncan v. Bonta*,
 83 F.4th 803 (9th Cir. 2023) (en banc) ................................................................ 4

*Gazzola v. Hochul*,
 88 F.4th 186 (2d Cir. 2023) ................................................................................ 11

*Md. Shall Issue, Inc. v. Moore*,
 116 F.4th 211 (4th Cir. 2024) (en banc) ......................................................... 8, 10

*McDonald v. City of Chicago*,
 561 U.S. 742 (2010) ............................................................................................. 8

*McRorey v. Garland*,
 99 F.4th 831 (5th Cir. 2024) ................................................................................ 8

*Mills v. New York City*,
 758 F. Supp. 3d 250 (S.D.N.Y. 2024) ................................................................ 10

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
 597 U.S. 1 (2022) ........................................................................................ 2, 6, 8

*Oakland Tactical Supply, LLC v. Howell Twp.*,
 103 F.4th 1186 (6th Cir. 2024) ....................................................................... 9, 10

*Ocean State Tactical, LLC v. Rhode Island*,
 95 F.4th 38 (1st Cir. 2024) .................................................................................. 6

*Ritrovato v. Donovan*,
 2025 WL 777216 (D. Mass. Mar. 11, 2025) ...................................................... 10

*Rocky Mountain Gun Owners v. Polis*,
 121 F.4th 96 (10th Cir. 2024) ............................................................................ 10

*United States v. Alaniz*,
    69 F.4th 1124 (9th Cir. 2023) ................................................................6

*United States v. Austin*,
    729 F. Supp. 3d 396 (S.D.N.Y. 2024) ..................................................11

*United States v. Avila*,
    672 F. Supp. 3d 1137 (D. Colo. 2023) ..................................................10

*United States v. Carmichael*,
    2024 WL 5079874 (W.D.N.C. Dec. 11, 2024) .....................................11

*United States v. Carter*,
    2023 WL 3319913 (E.D. Mich. May 9, 2023) .....................................11

*United States v. DeFelice*,
    2024 WL 3028425 (D. Conn. June 17, 2024) ...............................10, 11

*United States v. Hudson*,
    2024 WL 4241958 (D.S.C. Sept. 19, 2024) ..........................................10

*United States v. Manney*,
    114 F.4th 1048 (9th Cir. 2024) ..........................................................9, 10

*United States v. McNulty*,
    684 F. Supp. 3d 14 (D. Mass. 2023) .....................................................11

*United States v. Medina-Cantu*,
    113 F.4th 537 (5th Cir. 2024) ...............................................................10

*United States v. Muñoz Benito*,
    2025 WL 1626170 (5th Cir. June 9, 2025) ...........................................11

*United States v. Ortiz-Moreno*,
    2025 WL 1135437 (D. Kan. Apr. 17, 2025) .........................................11

*United States v. Price*,
    111 F.4th 392 (4th Cir. 2024) (en banc) ............................................9, 10

*United States v. Rahimi*,
    602 U.S. 680 (2024) .................................................................................8

*United States v. Saleem*,
   659 F. Supp. 3d 683 (W.D.N.C. 2023) ................................................................10

*United States v. Scheidt*,
   103 F.4th 1281 (7th Cir. 2024) ............................................................................10

*United States v. Turner*,
   2024 WL 4237413 (D. Nev. Sept. 19, 2024) .......................................................10

*United States v. Vlha*,
   142 F.4th 1194 (9th Cir. 2025) .............................................................................10

**Statutes and Regulations**

2016 California Proposition 63

   § 2(5)–(10) .............................................................................................................5

Wash. Rev. Code § 43.43.580(4)(a) ...............................................................................7

**Other Authorities**

Cir. R. 29-2(a) ................................................................................................................1

Fed. R. App. P. 29(b) .....................................................................................................1

## INTEREST OF *AMICI CURIAE*[1]

The Brady Center to Prevent Gun Violence is the nation's longest-standing nonpartisan, nonprofit organization dedicated to reducing gun violence through education, research, legal advocacy, and political action on behalf of victims and communities affected by gun violence. Founded over 30 years ago, Giffords Law Center to Prevent Gun Violence is a nonprofit law-and-policy organization serving lawmakers, advocates, legal professionals, gun violence survivors, and others seeking to reduce gun violence and improve community safety.

*Amici* have a substantial interest in ensuring that the Constitution is construed properly to allow democratically elected officials to address the nation's gun-violence crisis and safeguard the interests of everyone—gun owners or not—in living safe, secure lives. *Amici* have contributed technical expertise and informed analysis in numerous cases involving firearm regulations and constitutional principles affecting gun policy, and many courts, including the Supreme Court, have cited *amici*'s briefs on such issues.

---

[1] *Amici* submit this brief under Federal Rule of Appellate Procedure 29(b) and Circuit Rule 29-2(a). All parties consent to the filing of this brief. Undersigned counsel for *amici* certify that this brief was not authored in whole or in part by any party's counsel; no party or party's counsel contributed money for the brief; and no one other than *amici* has contributed money for this brief.

1

## INTRODUCTION

The panel majority's misapplication of *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), risks throwing into chaos Second Amendment jurisprudence and commonsense firearm regulations across this Circuit. The real-life dangers posed by the panel majority's ruling have already chillingly emerged. The gun industry seized on the panel's ruling hours after it issued, urging customers to stock up on ammunition through deliveries directly to their homes, which otherwise would not have been readily available because of the Ammunition Laws.

As *amici* argued to the panel, where, as here, plaintiffs fail to establish that the challenged regulation burdens the right to lawful armed self-defense, that law is constitutional, and the court need not conduct *Bruen*'s step-two analysis. Courts nationwide have agreed. The panel majority departed from that understanding, and its holding is likely to have far-reaching, deadly results. If the decision stands, even *de minimis* delays, fees, or other firearm-acquisition regulations will be constitutionally suspect, regardless of how reasonable, needed, or longstanding they are.

*Amici* agree with the Attorney General that en banc review is necessary to bring the panel majority's decision in line with Circuit and Supreme Court precedent and prevent it from upending other established firearm regulations.

2

# ARGUMENT

**I. Given the gun industry's reaction to the panel opinion and the rise in ghost guns, this case presents an exceptionally important question.**

The gun industry moved quickly to take advantage of the potential sea change presented by the panel majority's decision. Hours after the opinion issued, ammunition seller Brownells posted a video of ammunition being loaded into a box addressed to California, boasting: "CALIFORNIA CUSTOMERS Congrats on a big win today! We are shipping ammo straight to your door starting now!"[2]



The next day, firearms financing company Credova posted: "California residents:

---

[2] Brownells, Inc. (@BrownellsInc), X (July 25, 2025, 16:43 ET), https://x.com/BrownellsInc/status/1948484300506067263 [https://perma.cc/K78Y-B9F9].

3

today's your day.  Order so much ammo online it breaks the internet.  🧨 📦  We'll finance the freedom."[3,4]

These jubilant posts demonstrate the immediacy and severity of the dangerous practical effects that will result if the panel majority's decision stands.  Indeed, this is not the first time the gun industry has tried to capitalize on an interim order enjoining a gun-violence-prevention law.  *See Duncan v. Bonta*, 83 F.4th 803, 806 (9th Cir. 2023) (en banc) (describing how the gun industry sold "millions" of large-capacity magazines to Californians during week when California's large-capacity-magazine ban was enjoined).

---

[3] Credova (@Credova_us), X (July 25, 2025, 13:30 ET), https://x.com/Credova_us/status/1948798137700859945 [https://perma.cc/TBY6-M6VN]; *see also* GrabAGun.com (@grabagun), X (July 25, 2025, 11:40 ET), https://x.com/grabagun/status/1948770295357038784 [https://perma.cc/C2Z9-NXBK] ("BREAKING: AMMO NOW SHIPPING TO CALIFORNIA"); MidwayUSA (@MidwayUSA), X (July 25, 2025, 9:26 ET), https://x.com/MidwayUSA/status/1948736684364841326 [https://perma.cc/RE2V-Y9YP] (similar).

[4] The Attorney General subsequently reminded the public that the Ammunition Laws remain in effect until this Court's mandate issues, and gun industry members were obliged to walk back their initial proclamations. *Bureau of Firearms*, Cal. Office of the Attorney General, https://oag.ca.gov/firearms [https://perma.cc/A8LC-SHZN]; Brownells, Inc. (@BrownellsInc), X (July 28, 2025, 20:26 ET), https://x.com/BrownellsInc/status/1949989983835623674 [https://perma.cc/2HWM-9LNF] ("Transparency on CA ammo orders: We understand the situation is very frustrating.  The boxes were packed and waiting at the loading dock.…  Once the all clear is sounded we will take CA ammo orders.").

4

Further, the rise of untraceable ghost guns, which the panel majority ignored, compounds the exceptional impact of its decision. With easy access to ghost guns, non-law-abiding individuals can bypass gun-ownership regulations to acquire firearms,[5] but the Ammunition Laws provide a sensible safeguard to ensure that only law-abiding citizens can access ammunition. *See* Prop. 63 § 2(5)–(10). Ammunition-sale background checks ensure firearm disqualifications remain effective, and conducting them on a per-transaction basis increases the likelihood of catching disqualifying events that may be missed by less frequent firearm-sale background checks. *See id.* For example, California requires individuals under civil or domestic-violence restraining orders, or facing serious firearm-related charges, to relinquish their firearms.[6] But relinquishment takes time.[7] In the interim, when non-law-abiding individuals still possess their firearms or ghost guns, the Ammunition Laws prevent them from unlawfully purchasing ammunition.

---

[5] For a detailed description of ghost guns, their dangers, and their relevance to this case, *amici* respectfully direct the Court to their panel brief. Dkt. 16 at 16–27.

[6] *Firearm Relinquishment in California*, Giffords Law Center to Prevent Gun Violence (Dec. 31, 2023), https://giffords.org/lawcenter/state-laws/firearm-relinquishment-in-california/#footnote_0_16023 [https://perma.cc/FE6N-7Q58].

[7] *Domestic Violence & Firearms in California*, Giffords Law Center to Prevent Gun Violence (Oct. 18, 2024), https://giffords.org/lawcenter/state-laws/domestic-violence-and-firearms-in-california/ [https://perma.cc/28ZE-627U] (discussing 24-hour relinquishment period).

Ultimately, the Ammunition Laws would not be the last sensible regulation discarded under the panel majority's flawed reasoning. Indeed, all ghost-gun regulations—including potential licensing, background-check, or registration and serialization requirements—could be deemed unconstitutional despite the unprecedented danger and harm ghost guns continue to generate in modern society.[8] This Court should grant the Petition to prevent these disastrous consequences.

## II. The panel majority's reasoning risks invalidating longstanding, commonsense firearm regulations.

The panel majority concluded that the Ammunition Laws "meaningfully constrain" Californians' access to ammunition (thus implicating the Second Amendment at *Bruen*'s first step) by imposing a $1 fee and brief waiting period. Op. 26–28. Under the panel majority's analysis, nearly any cost or delay—even *de minimis* ones—could be called into question, including those associated with background checks for firearms themselves. As the dissent explains, "[b]ecause it would be fatuous to suggest that only a cheaper and shorter 'constraint' … could pass muster under [Circuit precedent], the panel majority has necessarily concluded

---

[8] The panel majority's failure to analyze ghost guns extends to its unwarranted step-two analysis. As *amici* explained in their panel brief, there is no historical precedent for the dangers posed by ghost guns. Dkt. 16 at 16–27. If the Court reaches step two, it should take the "more nuanced approach" required by the Supreme Court for cases implicating "unprecedented societal concerns or dramatic technological changes." *Bruen*, 597 U.S. at 27; *see United States v. Alaniz*, 69 F.4th 1124, 1129–30 (9th Cir. 2023); *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 43–44 (1st Cir. 2024), *cert. denied*, 2025 WL 1549866.

that *no* regulation on firearm or ammunition acquisition could pass muster." *Id.* at 62 (Bybee, J., dissenting).

Unless it is corrected, the panel majority's flawed interpretation of *Bruen* could have cascading consequences throughout the Circuit, including by invalidating states' firearm-purchase waiting periods[9] or background-check fees as low as $10.[10] *See* Op. 63 (Bybee, J., dissenting) (under the panel majority's reasoning, "laws that require gun purchasers to show proof of their age; fill out a short form providing biographical details; or … even wait a short time at a gun store" must proceed to step two (cleaned up)).

---

[9] *Waiting Periods*, Giffords Law Center to Prevent Gun Violence, https://giffords.org/lawcenter/gun-laws/policy-areas/gun-sales/waiting-periods/ [https://perma.cc/ZV28-MC54] (10-day waiting period in California and Washington, and 14-day waiting period in Hawai'i).

[10] Oregon State Police, *Firearms Instant Check System*, Oregon.gov, https://www.oregon.gov/osp/programs/cjis/pages/firearms-instant-check-system.aspx [https://perma.cc/63RQ-E43A] ($10 background check fee for firearm purchase); Wash. Rev. Code § 43.43.580(4)(a) (at most $18); Nevada State Police, *Federal Firearm Licensed Dealers Page*, Nevada.gov, https://rccd.nv.gov/FeesForms/Point_of_Contact_Firearms_Program/Point_of_Contact_Firearms_Program_(FFLD)/ [https://perma.cc/MH2N-P88G] ($25); *Firearms, Frequently Asked Questions*, Cal. Dep't of Justice, https://oag.ca.gov/firearms/pubfaqs [https://perma.cc/5KNP-RZHS] ($31.19); *Firearms*, Honolulu Police Dep't, https://www.honolulupd.org/police-services/firearms/ [https://perma.cc/LQ6K-55EY] ($43.26).

Most alarmingly, the panel majority's rationale could call into question firearm-background-check laws.[11] Under the panel majority's narrow construction of *Bruen*'s first step, even the fastest background checks or simplest permitting regulations would *always* implicate the "plain text" of the Second Amendment.[12] That understanding flouts the Supreme Court's emphasis—before, after, and in *Bruen*—that longstanding regulations on commercial firearm sales are presumptively constitutional. *See Bruen*, 597 U.S. at 38 n.9; *United States v. Rahimi*, 602 U.S. 680, 735 (2024) (Kavanaugh, J., concurring); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010). By effectively removing limits on what a "meaningful constraint" is, the panel majority invites litigation that the Supreme Court has repeatedly, conclusively foreclosed.

---

[11] That the Ammunition Laws regulate background checks for ammunition, not firearms, is immaterial under the panel majority's logic. A "key premise" to the panel majority's analysis is that "the Second Amendment extends the same protections to both ammunition and firearms." Op. at 70 n.9 (Bybee, J., dissenting).

[12] The majority appears to bless just one kind of regulation that would not be a "meaningful constraint" on the right to lawful armed self-defense: "a minor constraint on the precise locations within a geographic area where one can acquire firearms." Op. at 23 (cleaned up). But, as the dissent correctly noted, this understanding breaks with this Court and several other circuits, "which have found that laws imposing far more meaningful constraints on gun purchases did not implicate the Second Amendment's plain text." *Id.* at 65 (Bybee, J., dissenting) (citing *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 217, 227, 229 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1049 (2025); *McRorey v. Garland*, 99 F.4th 831, 838–40 (5th Cir. 2024)).

### III. The panel majority's Second Amendment analysis should have ended with *Bruen*'s first step.

As this Court and its sister circuits have recognized, the *Bruen* Court did not hold "that every requirement making it slightly more difficult to possess a firearm demands a full historical inquiry into its origin." *United States v. Manney*, 114 F.4th 1048, 1052 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1151 (2025); *Oakland Tactical Supply, LLC v. Howell Twp.*, 103 F.4th 1186, 1195 (6th Cir. 2024) ("*Bruen* does not say that any regulation that affects firearms must satisfy the historical-regulation test."), *cert. denied*, 145 S. Ct. 603 (2024). Instead, the Court set out a framework of two distinct steps, with step two considered *only if* step one's threshold is met. At step one, plaintiffs must prove that the conduct implicated by the challenged regulation falls within the "plain text" of the Second Amendment. *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 117 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1958 (2025). If they fail, as plaintiffs here did, the Second Amendment inquiry ends. *United States v. Price*, 111 F.4th 392, 398 (4th Cir. 2024) (en banc) ("Because we conclude below that [the] challenge falters at step one, we need only address what is required at that phase of the analysis."), *cert. denied*, 145 S. Ct. 1891 (2025). The panel majority improperly disposed of step one as if it were a mere formality. This Court should grant the Petition to ensure uniformity in application of *Bruen*'s prescribed order of operations. *See* Dkt. 79 at 9–17; Op. 57–73 (Bybee, J., dissenting).

9

For example, under *Bruen*, "non-discretionary 'shall-issue' licensing laws are presumptively constitutional and generally do not 'infringe' the Second Amendment … under step one." *Md. Shall Issue*, 116 F.4th at 222; *see also United States v. Vlha*, 142 F.4th 1194, 1199–1200 (9th Cir. 2025) (approving shall-issue licensing regime); *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 120–23 (10th Cir. 2024) (approving age-based firearm restriction).[13] As the Petition argues, because plaintiffs cannot rebut the Ammunition Laws' presumption of constitutionality, the panel majority's step-two analysis was improper. *See* Dkt. 79 at 14–17.

Courts have similarly held at step one that the manufacture and sale of firearms is not conduct protected by the Second Amendment.[14] *See B&L*, 104 F.4th

---

[13] *See also, e.g.*, *Mills v. New York City*, 758 F. Supp. 3d 250, 265–68 (S.D.N.Y. 2024); *Ritrovato v. Donovan*, 2025 WL 777216, at *4 (D. Mass. Mar. 11, 2025).

[14] Likewise, courts have ended the *Bruen* inquiry at step one in numerous other contexts, including regulations relating to (1) restrictions on firearm use, *see Oakland Tactical Supply*, 103 F.4th at 1197–99 (upholding firearms-training zoning ordinance); (2) the purchase of certain types of firearms and accessories, *see Price*, 111 F.4th at 402–08 (firearms with obliterated serial numbers); *United States v. Avila*, 672 F. Supp. 3d 1137, 1143–44 (D. Colo. 2023) (same); *United States v. Saleem*, 659 F. Supp. 3d 683, 692–99 (W.D.N.C. 2023) (short-barreled shotguns and silencers), *aff'd*, 2024 WL 5084523 (4th Cir. Dec. 12, 2024); *United States v. DeFelice*, 2024 WL 3028425, at *6–8 (D. Conn. June 17, 2024) (short-barreled rifles and silencers); *United States v. Hudson*, 2024 WL 4241958, at *3 (D.S.C. Sept. 19, 2024) (machine guns); (3) information required at purchase, *see Manney*, 114 F.4th at 1052–54 (false statements not protected conduct); *United States v. Scheidt*, 103 F.4th 1281, 1284–85 (7th Cir. 2024) (same); *United States v. Turner*, 2024 WL 4237413, at *2 (D. Nev. Sept. 19, 2024) (same); *Craghtten v. United States*, 2025 WL 1886708, at *4–6 (D. Idaho Jan. 31, 2025) (upholding collecting identifying information); and (4) who can lawfully own a firearm, *see United States v. Medina-Cantu*, 113 F.4th 537, 541–42 (continued…)

at 117–20 (sale of firearms and ammunition on state property); *Gazzola v. Hochul*, 88 F.4th 186, 195–98 (2d Cir. 2023) (commercial sale and transfer of firearms), *cert. denied*, 144 S. Ct. 2659 (2024).[15] Like the sale of firearms, ammunition-sale regulations need only be analyzed at step two if such regulations "'meaningfully constrain' the 'core right' to 'keep and bear' arms." Op. 59–60 (Bybee, J., dissenting) (quoting *B&L*, 104 F.4th at 118–19). For the reasons explained in the dissent and in the Petition, the Ammunition Laws impose no such constraint. *See id.* at 61–62 (Bybee, J., dissenting); Dkt. 79, at 10–14.

## CONCLUSION

The Court should grant en banc review.

---

(5th Cir. 2024) (right does not extend to those unlawfully present in the U.S.), *cert. denied*, 145 S. Ct. 1318 (2025); *United States v. Muñoz Benito*, 2025 WL 1626170, at *1 (5th Cir. June 9, 2025) (same); *United States v. Ortiz-Moreno*, 2025 WL 1135437, at *1–2 (D. Kan. Apr. 17, 2025) (same); *United States v. Carter*, 2023 WL 3319913, at *1–2 (E.D. Mich. May 9, 2023) (same for those with felony convictions); *United States v. Carmichael*, 2024 WL 5079874, at *2–3 (W.D.N.C. Dec. 11, 2024) (similar).

[15] *See also, e.g.*, *United States v. Austin*, 729 F. Supp. 3d 396, 406–07 (S.D.N.Y. 2024) (commercial sale of firearms); *United States v. McNulty*, 684 F. Supp. 3d 14, 19–21 (D. Mass. 2023) (same); *DeFelice*, 2024 WL 3028425, at *5 (same).

Respectfully submitted,

*/s/ Nathan E. Shafroth*

| | |
|---|---|
| Douglas N. Letter<br>Shira Lauren Feldman<br>Tess M. Fardon<br>BRADY CENTER<br>TO PREVENT GUN VIOLENCE<br>840 First Street, N.E., Suite 400<br>Washington, DC 20002<br>(202) 370-8100<br><br>Esther Sanchez-Gomez<br>William T. Clark<br>GIFFORDS LAW CENTER<br>TO PREVENT GUN VIOLENCE<br>268 Bush Street #555<br>San Francisco, CA 94104<br><br>August 14, 2025 | Nathan E. Shafroth<br>COVINGTON & BURLING LLP<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105<br>nshafroth@cov.com<br>(415) 591-6000<br><br>Hassan Ahmad<br>Alyssa Greenstein<br>COVINGTON & BURLING LLP<br>850 Tenth Street, NW<br>Washington, DC 20001<br><br>Elias Rivas<br>COVINGTON & BURLING LLP<br>620 Eighth Avenue<br>New York, NY 10018<br><br>*Counsel for* Amici Curiae |

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** No. 24-542

I am the attorney or self-represented party.

**This brief contains 2,584 words,** including 28 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Nathan E. Shafroth     **Date** August 14, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

13

## CERTIFICATE OF SERVICE

I certify that on August 14, 2025, I filed the foregoing Amicus Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate Case Management System (ACMS).

I certify that all participants in the case are registered ACMS users and that service will be accomplished by ACMS.

<i>/s/ Nathan E. Shafroth</i><br>
Nathan E. Shafroth