No. 24-542

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————

KIM RHODE, ET AL.,

*Plaintiffs-Appellees,*

v.

ROB BONTA, in his official capacity as Attorney General
of the State of California,

*Defendant-Appellant.*

———————————————

On Appeal from the United States District Court
for the Southern District of California
No. 3:18-cv-00802-BEN-JLB
Hon. Roger T. Benitez

———————————————

**BRIEF OF EVERYTOWN FOR GUN SAFETY AS AMICUS CURIAE
IN SUPPORT OF REHEARING OR REHEARING EN BANC**

———————————————

Freya Jamison
Everytown Law
P.O. Box 14780
Washington, D.C. 20044
(202) 517-6620
fjamison@everytown.org

Janet Carter
William J. Taylor, Jr.
Everytown Law
450 Lexington Avenue
P.O. Box 4184
New York, NY 10163

August 18, 2025

**CORPORATE DISCLOSURE STATEMENT**

Everytown for Gun Safety (formally, Everytown for Gun Safety Action Fund) has no parent corporations. It has no stock; hence, no publicly held company owns 10% or more of its stock.

## TABLE OF CONTENTS

**INTEREST OF AMICUS CURIAE** .................................................... **1**

**INTRODUCTION AND SUMMARY OF ARGUMENT** ...................... **1**

**ARGUMENT** ............................................................................. **3**

   I.   Ammunition Background Checks Are a Critical Public Safety
       Tool ............................................................................. 3

   II.  The Panel Majority's Extreme Reasoning Is Out of Step with
       *Bruen* and Has Dangerous Implications for Other Gun Violence
       Prevention Laws ............................................................ 9

**CONCLUSION** ...................................................................... **18**

# TABLE OF AUTHORITIES

## Cases

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ................................................................ 11

*McRorey v. Garland,*
    99 F.4th 831 (5th Cir. 2024) ........................................... 12, 15

*Md. Shall Issue, Inc. v. Moore,*
    116 F.4th 211 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1049
    (2025) .................................................................................. 12

*New York State Rifle & Pistol Ass'n v. Bruen,*
    597 U.S. 1 (2022) ......................................................... passim

*United States v. Rahimi,*
    602 U.S. 680 (2024) ................................................... 2, 3, 13

*United States v. Vlha,*
    142 F.4th 1194 (9th Cir. 2025) ......................................... 14

## Statutes

18 U.S.C. § 922(g) ................................................................. 3, 13

18 U.S.C. § 922(g)(1) ................................................................. 4

18 U.S.C. § 922(g)(8) ............................................................... 4, 5

18 U.S.C. § 922(g)(9) ................................................................. 4

18 U.S.C. § 922(t)(1) .................................................................. 15

Cal. Penal Code § 27540(d) ..................................................... 15

Cal. Penal Code § 27545 .......................................................... 15

Cal. Penal Code § 28050 ........................................................... 15

Cal. Penal Code § 28220 .......................................................... 15

Cal. Penal Code § 29825 .......................................................... 5

Cal. Penal Code § 30305(a) ............................................... 4, 5, 13

## Other Authorities

Cal. Dep't of Just., Armed and Prohibited Persons System Report 2023
    (2023), oag.ca.gov/system/files/media/2023-apps-report.pdf. ....... 7, 8, 9

Cal. Dep't of Just., Armed and Prohibited Persons System Report 2024
    (2024),
    https://oag.ca.gov/system/files/media/2024-apps-report.pdf ......... 5, 7, 9

Cal. Dep't of Just., Bur. of Firearms, Firearm Prohibiting Categories
    (2025), https://oag.ca.gov/system/files/media/Firearms-Prohibited-
    Categories.pdf ........................................................................ 4

Cal. Dep't of Just., California Firearm Laws Summary (2021),
    https://oag.ca.gov/system/files/media/cfl2021.pdf................................. 4

Cal. Dep't of Just., Off. of Gun Violence Prevention, California's Fight
    Against the Ghost Gun Crisis: Progress and New Challenges (2024),
    https://oag.ca.gov/system/files/media/ogvp-report-ghost-guns.pdf ....... 5

Cal. Dep't of Justice, Bureau of Firearms, *Frequently Asked Questions –
    Public*, https://perma.cc/LX5D-7M8Y ................................................ 15

iv

## INTEREST OF AMICUS CURIAE

Everytown for Gun Safety (formally, Everytown for Gun Safety Action Fund; hereafter "Everytown") is the nation's largest gun-violence-prevention organization, with over ten million supporters across the country. Everytown was founded in 2014 as the combined effort of Mayors Against Illegal Guns, a national, bipartisan coalition of mayors combating illegal guns and gun trafficking, and Moms Demand Action for Gun Sense in America, an organization formed after a gunman murdered twenty children and six adults at an elementary school in Newtown, Connecticut. Everytown also includes a large network of gun-violence survivors who are empowered to share their stories and advocate for responsible gun laws, as well as a national movement of high school and college students working to end gun violence.[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

The constitutionality of California's ammunition background check requirement is clear from *New York State Rifle & Pistol Ass'n v.*

---

[1] No party's counsel authored this brief in whole or part and, apart from Everytown, no person contributed money to fund its preparation or submission. All parties consent to this brief's submission.

*Bruen*, 597 U.S. 1 (2022), *United States v. Rahimi*, 602 U.S. 680 (2024), and this Court's precedents. Both Judge Bybee's dissent and the State's petition ably identify the several analytical mistakes the panel majority made in invalidating this important law. Everytown submits this amicus brief to expand on the importance of correcting the panel majority's critical errors.

*First*, ammunition background checks save lives. In the few years since its enactment, California's law has kept lethal ammunition out of the hands of hundreds of dangerous people who are prohibited from possessing it. More than that, ammunition background checks are a critical law enforcement tool: A failed check alerts law enforcement that a prohibited person may illicitly possess a firearm, enabling them to investigate and seize deadly weapons and ammunition.

*Second*, the panel majority's flawed reasoning threatens to upend other longstanding gun-violence-prevention laws. *Bruen* settled that background check requirements are constitutional unless put to "abusive ends." 597 U.S. at 38 n.9. The panel majority ignored this guidance and created a new test that conflicts with binding precedent and casts doubt on a range of lifesaving—and constitutional—

2

regulations. Rehearing or rehearing en banc is necessary to harmonize the decision in this case with Supreme Court precedent and make clear that background checks, whether for firearms or ammunition, are compatible with the Second Amendment.

## ARGUMENT

### I.  Ammunition background checks are a critical public safety tool

Ammunition background checks are a critical component of California's efforts to ensure that only law-abiding, responsible persons have access to lethal firepower. They deter people who are prohibited from possessing ammunition from attempting to purchase it, and they prevent the sales that prohibited people do attempt. And when those attempts yield a failed background check, those denials provide an important tool for law enforcement to identify and investigate Californians who illicitly possess firearms.

Federal law prohibits the possession of firearms and ammunition by "categories of persons thought by a legislature to present a special danger of misuse." *Rahimi*, 602 U.S. at 698 (citing *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)); *see* 18 U.S.C. § 922(g) (listing disqualifying conditions). Prohibited groups include people with felony

convictions, people subject to qualifying restraining orders, and people with misdemeanor domestic violence convictions. *See* 18 U.S.C. § 922(g)(1), (8), (9). California law separately disqualifies people in several categories from possessing firearms or ammunition. *See* Cal. Dep't of Just., Bur. of Firearms, Firearm Prohibiting Categories (2025), https://oag.ca.gov/system/files/media/Firearms-Prohibited-Categories.pdf; Cal. Penal Code § 30305(a).

The firearm restrictions in these lifesaving laws are enforced in large part through firearm background checks, which screen for prohibiting histories at the point of sale. These checks are an important tool for keeping firearms out of dangerous hands. But they are not a complete solution. There are multiple ways in which people who are legally disqualified from possessing a firearm might get hold of one. They might, for example, turn to the black market to purchase a gun that was stolen from its lawful owner or was illegally acquired from a dealer by a "straw purchaser"—a person presenting themselves as a bona fide purchaser but in fact buying the gun to sell or give to someone else. *See* Cal. Dep't of Just., California Firearm Laws Summary 8 (2021), https://oag.ca.gov/system/files/media/cfl2021.pdf. They might

4

unlawfully obtain an unserialized, untraceable "ghost gun" through 3D printing or other means. *See* Cal. Dep't of Just., Off. of Gun Violence Prevention, California's Fight Against the Ghost Gun Crisis: Progress and New Challenges 36 (2024), https://oag.ca.gov/system/files/media/ogvp-report-ghost-guns.pdf. Or they might retain a firearm that they purchased before becoming prohibited.[2]

Firearms, moreover, are durable goods: once a prohibited person has illegally acquired or retained a gun, whether through theft, straw purchase, 3D printing, or some other means, that gun will probably last for years. Ammunition, by contrast, is a consumable good: someone who possesses ammunition will likely use it up, through training, criminal

---

[2] For example, a Californian might purchase a firearm after passing a background check, and then, months or years later, they might become subject to a domestic violence restraining order. At that point, they would be no longer legally authorized to own or possess firearms or ammunition. *See* 18 U.S.C. § 922(g)(8); Cal. Penal Code §§ 29825, 30305(a). California law requires that they relinquish any firearms and ammunition in their possession upon that disqualification. *See* Cal. Dep't of Just., Armed and Prohibited Persons System Report 2024, at 2 (2024) [hereinafter "2024 Cal. DOJ Report"], https://oag.ca.gov/system/files/media/2024-apps-report.pdf (explaining that California law generally requires prohibited persons to provide verification that they promptly surrendered their firearms upon becoming prohibited). But not all prohibited people do. *See id*. at 2-4.

5

activity, or otherwise—and will need to acquire more in order to continue using their firearm. Ammunition background checks, therefore, are a particularly important way to help prevent prohibited persons from wielding deadly firepower.

California's ammunition background check requirement has already proven immensely effective in disarming dangerous people. Since it became law in 2019, the requirement has prevented hundreds of Californians from illegally purchasing the ammunition needed to make firearms effective. Petition for Rehearing or Rehearing En Banc at 1, Dkt. No. 79.1 (hereinafter "Pet."). More than that, it has an immeasurable deterrent effect—most prohibited Californians will not even attempt to purchase ammunition because they know that the background check will reveal their prohibited status and their purchase will be denied. California's law keeps ammunition out of dangerous hands, both through direct denials and deterrence.

California's ammunition background check requirement also aids law enforcement in locating and seizing firearms from prohibited persons. An attempt to purchase ammunition that yields a denied background check "signal[s] to [California Department of Justice]

6

agents that a prohibited person still possesses and may be actively using a firearm." 2024 Cal. DOJ Report at 40. After all, ammunition has little use without a gun.

An example shows this process in practice. In January 2023, a Californian failed an ammunition background check. Cal. Dep't of Just., Armed and Prohibited Persons System Report 2023, at 9 (2023) [hereinafter "2023 Cal. DOJ Report"], oag.ca.gov/system/files/media/2023-apps-report.pdf. Law enforcement reviewed the denial and confirmed that the would-be ammunition purchaser was prohibited from possessing firearms because he had previously been committed for mental health concerns. *Id*. They obtained a search warrant and discovered the items pictured below in the man's possession:



*Id.* In total, law enforcement seized "one unregistered assault weapon, five rifles, three shotguns, one handgun, one large capacity magazine, six standard capacity magazines, and approximately 3,700 rounds of ammunition" from the prohibited would-be purchaser. *Id.* These items could have caused untold harm, and they may not have come to the State's attention if not for its ammunition background check system.

This story illustrates a much broader pattern. In 2023, the California Department of Justice received 155 reports of prohibited individuals attempting to purchase ammunition. 2023 Cal. DOJ Report at 33. It investigated all 155 of those reports, and because of those investigations, seized 34 firearms, along with 70 magazines and 6,091

8

rounds of ammunition. *Id*. The impact was even greater last year. In 2024, the California Department of Justice received 191 reports of prohibited individuals attempting to purchase ammunition and ultimately seized 52 firearms, 70 magazines, and 8,712 rounds of ammunition from those individuals. 2024 Cal. DOJ Report at 40. Again, this illegally possessed weaponry may not have come to the State's attention if not for its ammunition background check system.

California's ammunition background check requirement is an important and effective aspect of the State's efforts to keep both guns and ammunition out of the hands of dangerous people. Since the requirement became law, hundreds of prohibited people have been denied the ability to purchase ammunition, and law enforcement has seized unlawfully possessed firearms and ammunition from hundreds more. This Court should uphold California's lifesaving law.

## II. The panel majority's extreme reasoning is out of step with *Bruen* and has dangerous implications for other gun violence prevention laws

By enabling unchecked sales of ammunition to people deemed too dangerous to possess firearms and ammunition, the panel opinion undermines the safety of Californians and casts aside their collective

judgment about how best to protect their communities. And it does so without basis. As Judge Bybee explains in dissent, the panel majority's approach is out of step with both circuit and Supreme Court precedent. *See generally* Op. 55-73 (Bybee, J., dissenting). The panel's extreme reasoning also has the potential to undermine a range of other critical gun violence prevention laws nationwide. For one, it is hard to see how firearm backgrounds checks would be constitutional under the panel majority's flawed reasoning. Indeed, litigants around the country are already relying on the panel's opinion in challenges to a variety of other lifesaving laws.

In *Bruen*, the Supreme Court invalidated New York's firearms licensing law, which required applicants to show a special need for armed self-defense. 597 U.S. at 12, 71. But it was careful to note that "nothing in [its] analysis … suggest[s] the unconstitutionality of" 43 other states' "shall-issue" firearms licensing regimes. *Id.* at 38 n.9. Those regimes, the Court observed, "often require applicants to undergo a background check." *Id. Bruen*'s analysis cast no doubt on the constitutionality of such requirements, the Court explained, because they are designed to ensure that only "law-abiding, responsible citizens"

10

have access to firearms—a limitation supported by the Second Amendment's text and historical tradition. *Id.* (quoting *Heller*, 554 U.S. at 635); *see also Heller*, 554 U.S. at 626-27 & n.26 (deeming laws aimed at prohibiting firearm possession by people in categories judged to present a risk of danger when armed—specifically, "felons and the mentally ill"—to be "presumptively lawful").

Justice Kavanaugh, joined by the Chief Justice—at least one of whose votes was necessary for the *Bruen* majority—also emphasized the constitutionality of background checks in a concurrence. He explained that the regimes of the 43 "shall-issue" states may, among other things, "require a license applicant to undergo fingerprinting, a background check, [and] a mental health records check." *Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring). Those regimes, he continued, "*are constitutionally permissible*," subject only to as-applied challenges if misused. *Id.* (emphasis added).

*Bruen* also left open the possibility of as-applied challenges to regimes "put toward abusive ends," such as laws that impose such lengthy wait times or exorbitant fees that they effectively "deny ordinary citizens their right to public carry." 597 U.S. at 38 n.9; *see id.*

11

at 80 (Kavanaugh, J., concurring). But, absent those concerns, *Bruen* settled that the components of shall-issue licensing regimes—including background checks—are constitutional.

In the wake of *Bruen*, courts have upheld firearm background check requirements based on straightforward application of this guidance. For instance, the en banc Fourth Circuit recently rejected a Second Amendment challenge to Maryland's background check and firearms safety training requirements, noting that those requirements "fall[] easily within the scope of 'shall-issue' licensing laws that the Supreme Court has indicated are presumptively constitutional." *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 217, 225 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1049 (2025). Similarly, in upholding a federal background check requirement, the Fifth Circuit cited *Bruen*'s discussion of shall-issue licensing regimes and explained that the challenged law would only be "subject to *Bruen*'s historical framework" if it operated "as a *de facto* prohibition on possession." *McRorey v. Garland*, 99 F.4th 831, 837-40 (5th Cir. 2024).

The constitutionality of California's ammunition background check requirements follows directly and unavoidably from the

12

constitutionality of firearm background check requirements. The federal and state laws that prohibit people with felony convictions and other dangerous histories from possessing firearms *also* prohibit them from possessing ammunition. *See* 18 U.S.C. § 922(g) ("It shall be unlawful for any person [in any of nine listed categories] … [to] possess … any firearm *or ammunition*[.]" (emphasis added)); Cal. Penal Code § 30305(a) ("No person prohibited from owning or possessing a firearm … shall own [or] possess … any ammunition[.]"); *see also Rahimi*, 602 U.S. at 764-65 (Thomas, J., dissenting) (explaining that federal law "criminalizes nearly all conduct related to covered firearms and ammunition" and "captures virtually all commercially available firearms and ammunition"). Accordingly, checking to ensure that a purchaser does not have a felony conviction or other prohibiting history is justified for ammunition just as much as for a firearm: both checks work to ensure that only people who are not prohibited by law from possessing lethal firepower are able to acquire it.

Nor is there any basis to find that California's ammunition background check requirement has been put to abusive ends. Indeed, as the State explains, *see* Pet. 16, no plaintiff alleges that they were

13

"den[ied] [their] right to public carry" by lengthy delays or hefty fees,
*see Bruen*, 597 U.S. at 38 n.9. Because challengers "have not shown any
such abuse here," their "constitutional challenge as to this statute fails."
*See United States v. Vlha*, 142 F.4th 1194, 1200 (9th Cir. 2025).

In ruling for Plaintiffs, however, the panel majority diverged from
*Bruen* and appeared to create a new and different test for ammunition
background checks. It determined that California's ammunition
background check requirements implicated the Second Amendment's
text where they (1) apply to "each ammunition acquisition," (2) require
payment of a fee, and (3) can involve delays. Op. 26-28; *see also id.* at
70-71 (Bybee, J., dissenting) (noting that the majority "invented a new
criterion for evaluating the lawfulness of a background check
regulation—the frequency of the check"). Then—rather than consider
whether those delays and costs were so burdensome that they denied
Plaintiffs the right to armed self-defense—the majority required the
State to show that the challenged laws are rooted in the regulatory
principles underlying the Second Amendment. *See id.* at 31.

As the petition—and Judge Bybee—warn, the panel majority's
faulty approach to Second Amendment analysis, if left in place, could

14

potentially put even *firearm* background check requirements at risk. *See* Pet. 13-17; Op. 64-65, 73 (Bybee, J., dissenting). Firearm background check requirements apply to "each … acquisition" of a firearm. Op. 26; *see, e.g.*, 18 U.S.C. § 922(t)(1) (federal law mandating background checks prior to all firearm sales from licensed dealers); Cal. Penal Code §§ 27540(d), 27545, 28050, 28220 (requiring all firearm purchases to be completed through a licensed dealer and subject to a background check). They "require[] [applicants] to pay" processing fees, *see* Op. 26, which are currently over $30, *see* Cal. Dep't of Justice, Bureau of Firearms, *Frequently Asked Questions – Public*, https://perma.cc/LX5D-7M8Y (explaining that the "total state fee" when "purchasing a firearm" is $37.19, including the "DROS fee [of] $31.19 which covers the costs of the background checks and transfer registry"). And they can involve delays, *see* Op. 26-27—in the case of some federal background checks, up to ten business days, *see McRorey*, 99 F.4th at 834-35, 839-40. These features of firearm background check regimes, which are presumptively lawful according to the Supreme Court, would seem to raise constitutional concerns for the panel majority.

15

Moreover, the potential impact of the panel's opinion is not limited to background check laws. As Judge Bybee noted, "it is difficult to imagine a regulation on the acquisition of ammunition or firearms that would *not* 'meaningfully constrain' the right to keep and bear arms under the majority's new general applicability standard." Op. 64-65 (Bybee, J., dissenting); *see also* Pet. 10-13 (explaining that under a faithful application of circuit precedent, a law only "meaningfully constrain[s]" the right to bear arms if it "effectively constrains access to firearms or ammunition" (quoting *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 680 (9th Cir. 2017) (en banc)) (citation modified)). Litigants nationwide are already echoing the panel majority's error, as they seek to strike down a range of lifesaving—and constitutional—gun violence prevention laws. In the weeks since the panel majority issued its opinion, plaintiffs across the country have cited the decision in support of Second Amendment challenges to numerous, critically important measures, including:

16

- New York's ammunition background check requirements, *see* Appellants' Notice of Suppl. Auth., *N.Y. State Firearms Ass'n v. James*, No. 24-1290 (July 25, 2025), Dkt. No. 39.1;

- Maine's law imposing a 72-hour waiting period on certain firearm sales, *see* Appellees' Notice of Suppl. Auth., *Beckwith v. Frey*, No. 25-1160 (July 25, 2025), Dkt. No. 118318246;

- New Mexico's law imposing a 7-day waiting period on certain firearm sales, *see* Appellants' Notice of Suppl. Auth., *Ortega v. Grisham*, No. 24-2121 (July 25, 2025), Dkt. No. 82; and

- the District of Columbia's concealed carry licensing and firearm registration requirements, *see* Pls.' Notice of Suppl. Auth., *Millard v. District of Columbia*, No. 22-cv-02672 (July 25, 2025), Dkt. No. 67.

The panel's decision, if left uncorrected, could create dangerous precedent that is inconsistent with controlling caselaw. Allowing it to stand could have wide-reaching ramifications, not only for background check laws, but for a range of other gun violence prevention efforts as well. The Court should grant rehearing or rehearing en banc to clarify that background checks—regardless of whether they apply to firearm

17

purchases or ammunition purchases—are constitutional unless challengers demonstrate that they have been put to abusive ends.

## CONCLUSION

The Court should grant California's petition for rehearing or rehearing en banc and vacate the panel opinion.

Respectfully submitted,

Dated: August 18, 2025

/s/  Freya Jamison
Freya Jamison

Freya Jamison
Everytown Law
P.O. Box 14780
Washington, D.C. 20044
(202) 517-6620
fjamison@everytown.org

Janet Carter
William J. Taylor, Jr.
Everytown Law
450 Lexington Avenue, P.O. Box 4184
New York, NY 10163

*Counsel for amicus curiae*
*Everytown for Gun Safety*

18

## CERTIFICATE OF SERVICE

I certify that on August 18, 2025, I filed the foregoing amicus brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate Case Management System (ACMS) system.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

/s/  Freya Jamison
Freya Jamison

19

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | 24-542

I am the attorney or self-represented party.

**This brief contains** | 3,047 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [            ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Freya Jamison | **Date** | 08/18/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*