No. 24-542

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

KIM RHODE, et al.,

*Plaintiff-Appellee,*

v.

ROB BONTA, in his official capacity as Attorney General of the State of California

*Defendant-Appellant.*

———————————

On Appeal from the United States District Court for the
Southern District of California, No. 3:18-cv-00802-BEN-JLB

———————————

## RESPONSE IN OPPOSITION
## TO PETITION FOR REHEARING EN BANC

———————————

C.D. MICHEL
SEAN A. BRADY
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444

PAUL D. CLEMENT
ERIN E. MURPHY
MATTHEW D. ROWEN
JEFFREY C. THALHOFER
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Plaintiffs-Appellees*

August 29, 2025

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.l(a), Able's Sporting, Inc., R&S Firearms, Inc., and California Rifle & Pistol Association certify that they do not have a parent corporation and that no publicly held corporation owns more than ten percent of their stock. AMDEP Holdings, LLC, certifies that its parent organization is JHP Partners, LLC, and that no publicly held corporation owns more than ten percent of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES.................................................................................... iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

    A.    Factual Background............................................................................. 2

    B.    Procedural Background ....................................................................... 5

    C.    The Panel Decision.............................................................................. 5

ARGUMENT ........................................................................................................... 8

I.      The Panel Decision Faithfully Applies Circuit Precedent............................. 8

II.    This Case Does Not Involve A "Shall-Issue" Licensing Regime, And California's Novel Ammunition Regime Is Abusive In All Events ............. 12

III.   The Panel Decision Is Supported By Multiple Alternative Grounds For Affirmance And Raises No Question Of Exceptional Importance ................................................................................................. 15

CONCLUSION ..................................................................................................... 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*B&L Prods., Inc. v. Newsom*,
 104 F.4th 108 (9th Cir. 2024)...............................................................6, 8, 10, 11

*C&A Carbone, Inc. v. Town of Clarkstown*,
 511 U.S. 383 (1994)...........................................................................................16

*Dean Milk Co. v. Madison*,
 340 U.S. 349 (1951)...........................................................................................16

*District of Columbia v. Heller*,
 554 U.S. 570 (2008)...........................................................................................14

*Duncan v. Bonta*,
 133 F.4th 852 (9th Cir. 2025)..........................................................................2, 6

*Jackson v. City & Cnty. of San Francisco*,
 746 F.3d 953 (9th Cir. 2014)...............................................................................6

*McRorey v. Garland*,
 99 F.4th 831 (5th Cir. 2024)..............................................................................12

*Md. Shall Issue, Inc. v. Moore*,
 116 F.4th 211 (4th Cir. 2024).............................................................................12

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
 597 U.S. 1 (2022)...........................................................................................7, 14

*Nguyen v. Bonta*,
 140 F.4th 1237 (9th Cir. 2025).............................................................6, 9, 10, 11

*Ortega v. Grisham*,
 --- F.4th ----, 2025 WL 2394646 (10th Cir. Aug. 19, 2025) ...............................14

*Rhode v. Becerra*,
 445 F.Supp.3d 902 (S.D. Cal. 2020)....................................................................4

*Rhode v. Bonta*,
 713 F.Supp.3d 865 (S.D. Cal. 2024)................................................ 9, 14, 16, 17

*Teixeira v. Cnty. of Alameda*,
  873 F.3d 670 (9th Cir. 2017) ............................................................6, 11

*United States v. Manney*,
  114 F.4th 1048 (9th Cir. 2024) .............................................................12

*United States v. Vlha*,
  142 F.4th 1194 (9th Cir. 2025) .............................................................12

*Yukutake v. Lopez*,
  130 F.4th 1077 (9th Cir. 2025) .............................................................13

**Statutes**

18 U.S.C. §922(t)(1) ................................................................................13

11 CCR §4263(a)(2) ..................................................................................5

11 CCR §4282(b) .......................................................................................2

11 CCR §4283(a) .......................................................................................2

Cal. Pen. Code §30312(a)(1) .....................................................................2

Cal. Pen. Code §30314(a)-(b) ................................................................. 4

Cal. Pen. Code §30370(a) .........................................................................2

## INTRODUCTION

This case involves a one-of-a-kind regulatory scheme that imposes onerous and arbitrary burdens on the exercise of a fundamental right. Although California claims that its ammunition-purchase regime serves only as a modest check to ensure that those who keep and bear arms in the state are law-abiding, the record confirms that the system is riddled with glitches and traps for the unwary—and that it has stymied tens of thousands of law-abiding citizens from acquiring ammunition for months on end. The panel decision holding that this unique—and uniquely unworkable—regime violates the Second Amendment does not portend a similar fate for traditional licensing regimes; the opinion is inherently and explicitly limited to the particular constraints California's idiosyncratic ammunition regime imposes. The panel faithfully applied this Court's precedents at each stage of the Second Amendment inquiry, and, unsurprisingly, given the one-off nature of this regime, created no conflict with the cases of any sister court. That is reason enough to deny rehearing, but the problems with California's novel regime extend beyond the Second Amendment, and the judgment is supported by multiple alternative grounds that the majority declined to address but the district court correctly concluded independently doom California's laws. The Court should deny the petition.

## BACKGROUND

### A.    Factual Background

California's ammunition-background-check regime is byzantine; the panel spent 10 pages just providing an overview. Op.8-18. In brief, California prohibits residents from "taking possession of … ammunition"—without which "the right to bear arms would be meaningless," *Duncan v. Bonta*, 133 F.4th 852, 866 (9th Cir. 2025) (en banc)—until after "the California Department of Justice" has "approved" the transaction, which must be "conducted by or processed through a licensed ammunition vendor" physically located in California and must take place "face-to-face." Op.8-10 & n.1 (quoting Cal. Pen. Code §§30312(a)(1), 30370(a)).

There are "four ways that a person can obtain authorization to purchase ammunition." Op.10. Two are most relevant here. The first, the "Standard Check" is quickest and cheapest. It costs $5 and—if CDOJ will run a check, which, shockingly, it often will not—usually takes only a few minutes. 11 CCR §4282(b); 3-ER-410; *see* Pet.5 n.2 (noting recent increase from $1 to $5). Virtually everyone chooses this option—albeit sometimes to no avail. 3-ER-410; *see* Op.28 n.19. The second option, the "Basic Check," costs $19, 11 CCR §4283(a), and takes on average five to six days. Op.11.[1]

---

[1] The other two, which California relegates to a footnote, are to buy a new firearm along with the sought-after ammunition, or to submit to an expensive "Certificate of

In a Standard Check, CDOJ runs a purchaser's name through the Armed Prohibited Person System ("APPS"), which CDOJ uses to track persons prohibited from possessing firearms. If the purchaser is not in APPS, he gets an 18-hour window to complete his single permitted purchase. Op.12 & n.3. But APPS is not comprehensive; it comprises only individuals who are in California's Automated Firearm System ("AFS") database, which contains firearm ownership and transfer records recorded with the state. And if a would-be-purchaser is not in AFS, the state will not run a Standard Check at all. Op.11-12.

In fact, CDOJ often refuses to run a Standard Check even when a buyer *is* in AFS. The system requires an exact match between the purchaser's ID and the information in AFS. 3-ER-412. If there are even trivial discrepancies, like typos or a new mailing address, CDOJ will not run a check. And because AFS is not updated to reflect changes the state learns of through other means, CDOJ will reject a transaction if any of a purchaser's information has changed since she last purchased a firearm.

As a result of these bugs (or, perhaps, features), many more *non*-prohibited buyers are erroneously turned away than prohibited buyers are prevented from

---

Eligibility" process. *See* Op.12-14. The former comes with a 10-day waiting period (and, of course, requires buying a new firearm); the application for the latter costs far more than most ammunition purchases. *See* Op.17-18; Ans.Br.16-17.

accessing ammunition. In the first half of 2023, CDOJ processed 538,359 Standard Checks, only 141 of which (0.03%) identified a prohibited buyer. But it *refused to run another 58,087 checks* (10.8%), due to mundane things like spelling mismatches in its own systems. 3-ER-410, 423; *see* Op.28 n.19. And roughly 37% of those whose efforts to submit to a Standard Check were rejected still had not been able to purchase ammunition *six months later*, and many beyond that. 3-ER-415, 426.

Buyers without an AFS record may use the Basic Check, which is slower and costlier. The added time and expense stems from CDOJ's more labor-intensive check against four databases—a process which, in about 75% of cases, requires a manual investigation. While approval through a Basic Check is valid for 30 days, 1-SER-275, it can be used for only one transaction. And CDOJ does not add the information to AFS or APPS afterward, so the buyer must go through the full check all over again (and pay $19) every time he wants to buy ammunition. *See Rhode v. Becerra*, 445 F.Supp.3d 902, 921 (S.D. Cal. 2020). It is undisputed that this $19 fee can dwarf the cost of an ammunition purchase. *See* 4-ER-669-70.

The requirement that an "ammunition vendor" process requests for CDOJ approval also means that Californians cannot bring home any ammunition acquired outside of the state. Op.14. Residents who purchase ammunition out of state must have it shipped to an approved vendor in California for in-person processing. Cal. Pen. Code §30314(a)-(b). These favored in-state vendors are not required to process

such transactions, giving them veto (and market) power, and "[i]f the purchaser will not be present for immediate delivery of the ammunition," they may "charge an additional storage fee" in any amount they desire. 11 CCR §4263(a)(2); *see* Op.14-17.

**B.    Procedural Background**

Plaintiffs sought a preliminary injunction shortly after California's regime took effect in 2019. The district court granted the motion, finding that California's regime likely violates the Second Amendment and the Commerce Clause. This Court then granted a stay pending appeal. C.A.9.No.20-55437.Dkts.4, 13-1.

Following a remand in light of *Bruen*, the district court permanently enjoined California's regime on three grounds: it violates the Second Amendment; the anti-importation provisions violate the Commerce Clause; and the restriction on transporting into California ammunition acquired out of state is expressly preempted by 18 U.S.C. §926A, which protects the right of lawful firearm owners to transport firearms and ammunition across state lines.

**C.    The Panel Decision**

The panel affirmed. It began with three premises that come directly from Circuit precedent. First, "[l]aws that impose 'conditions and qualifications on the commercial sale of arms'" implicate the Second Amendment and so require historical scrutiny "if they 'meaningfully constrain' the right to keep and bear arms."

Op.26 (quoting *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 118-19 (9th Cir. 2024)). Second, "the right to keep and bear arms includes the right to keep operable arms." Op.26; *see Duncan*, 133 F.4th at 866-67. Third, "a person who wants to keep an operable firearm must necessarily acquire ammunition." Op.26 (citing *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014)); *see also* Op.25 ("California does not dispute that … ammunition is entitled to protection under the Second Amendment.").

Applying those precedent-backed premises, the panel held that "California's ammunition background check meaningfully constrains the right to keep operable arms." Op.26. Unlike the laws in *B&L*, which "did not affect firearm sales on privately owned property," and *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc), which "applied to one county," this regime "applies on its face to all ammunition transactions entered into by California residents, including transactions that occur in another state." Op.30. And this regime "on its face[] delays the ability of California residents to bear operable arms by requiring the completion of background checks prior to all ammunition acquisitions." Op.30. That makes it unconstitutional for the same reasons as "the 'one gun a month law'" this Court struck down in *Nguyen v. Bonta*, 140 F.4th 1237 (9th Cir. 2025). Op.30. Furthermore, this regime imposes fees that can dwarf the cost of ammunition. Op.26-27. "Considering together the costs, delays and geographic scope," the panel

"conclude[d] that California's ammunition background check regime meaningfully constrains the right to keep and bear arms."  Op.30-31.

Turning to historical tradition, the panel concluded that none of California's proposed analogues "is within the relevant time frame, or is relevantly similar to California's ammunition background check regime."  Op.46.  "In doing so," the panel "compare[d] the 'how and why' of the historical analogues proffered by California to the 'how and why' of California's ammunition background check regime."  Op.31; *see* 32-46.  Finally, the panel rejected the argument that "*Bruen*'s footnote" regarding "shall-issue licensing regimes" saves California's one-of-a-kind regime, which "requires an ammunition purchaser to undergo a background check prior to each ammunition transaction, regardless of when the last background check occurred," and thus "is not analogous to the 'how' of a shall-issue licensing regime wherein a person receives a license that is valid for a period of years."  Op.46-48; *see N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 38 n.9 (2022).

Because it held that "California's ammunition background check regime violates the Second Amendment," the majority declined to reach "the alternative grounds" on which the district court "conclud[ed] that the regime was unlawful (the dormant Commerce Clause and preemption under §926A)."  Op.54 n.34.

Judge Bybee dissented.  Op.55-79.

**ARGUMENT**

**I.     The Panel Decision Faithfully Applies Circuit Precedent.**

California begins by accusing the panel of ignoring Circuit precedent and "abrograt[ing] *Bruen*'s first step."  Pet.9.  In fact, it is the state that "seriously misunderstands," *id.*, both *Bruen* and this Court's precedents.

As the panel explained, this Court's *Bruen* step-one precedent begins by asking if a law "'meaningfully constrain[s]' the right to keep and bear arms."  Op.26 (quoting *B&L*, 104 F.4th at 118-19).  Yet while California insists the challenged laws "do[] not constrain access to … ammunition" *at all*, either "on their face, or otherwise," Pet.11-12, that claim is refuted by both law and the undisputed factual findings below.  The whole point of the challenged regime is to restrict access to ammunition, and the district court concluded that it does just that far more often than it should, "finding that 'Californians are denied the Second Amendment right to buy ammunition for self-defense at least 11% of the time because of problems with the background check system.'"  Op.28 n.19.  California did not challenge that finding on appeal, which is not clearly erroneous anyway.  *Id.*  To be clear, the 58,037 individuals captured in that 11% were not rejected because they were found to be prohibited persons; they were turned away because the ammunition-background-check system (which is wholly separate from the NICS system used for *firearm* background checks) is so error-ridden that CDOJ refused to run a background check

8

*at all*. Tens of thousands of people thus "were blocked from buying ammunition" via California's novel regime through no fault of their own—and, *six months later*, more than a third of them still had not purchased ammunition. *Rhode v. Bonta*, 713 F.Supp.3d 865, 876-77 (S.D. Cal. 2024); 3-ER-415, 426; p.4, *supra*.

All of that makes California's repeated claim that the challenged regime has not constrained access to ammunition inexplicable. After all, the state claims not to "dispute that the [Second Amendment] right requires reliable access to ammunition." Pet.17. Yet it insists that laws that have precluded tens of thousands of law-abiding citizens from acquiring ammunition, for months on end, do not even *implicate* the Second Amendment. Neither *Bruen* nor any decision of this Court remotely supports the state's seeming view that the only laws that trigger Second Amendment scrutiny are those that ban arms or ammunition altogether.

Indeed, it is telling that California ignores this Court's unanimous decision in *Nguyen*, which held that California's novel one-gun-a-month law meaningfully constrained the right to keep and bear arms and flouted historical tradition. 140 F.4th at 1249. California argued there that its law did not implicate the Second Amendment, and thus required no scrutiny, because even assuming the Second Amendment protects a right to more than one firearm (it does, but the state argued otherwise), "restricting the frequency of purchase does not *prevent* someone from acquiring multiple firearms." *Id.* at 1242 (emphasis added). This Court rejected that

theory out of hand, holding that "the Second Amendment prohibits not just bans but any 'meaningful constraints on the right to acquire firearms.'" *Id.* at 1243 (quoting *B&L*, 104 F.4th at 118). And, most relevant here, *Nguyen* held that "monthly metering of firearm purchases meaningfully constrains the right to purchase and possess firearms." *Id.*

Rather than grapple with *Nguyen*, California rehashes arguments *Nguyen* squarely rejected. *See* Pet.12 (asserting that "[t]he challenged laws" impose no meaningful constraints because they "do not prohibit any person from acquiring ammunition, other than those who are already disqualified by law from possessing it, and do not impose any limit on the quantity of ammunition that firearm owners may purchase"). But as *Nguyen* unanimously made clear, "the Second Amendment is more robust than California accepts." 140 F.4th at 1243; *see also id.* at 1249 (Owens, J., concurring) ("I concur fully in the majority opinion."). The state does not ask this Court to revisit *Nguyen*, let alone supply any reason to do so. That alone should preclude en banc rehearing, since this case follows *a fortiori* from *Nguyen*.

Instead of focusing on this Court's most recent precedent, the state reaches back to *B&L* and *Teixeira*. But as the majority explained at length, Op.28-31, those cases are readily distinguishable here for the same reasons as in *Nguyen*. *Teixeira* held that an ordinance effectively barring new gun stores in one county did not "meaningfully constrain[]" Second Amendment rights because there were already

ten stores in the county, including one just 600 feet from the plaintiff's proposed store. 873 F.3d at 679-80. *B&L* held the same about a law banning firearm sales on certain state land; the plaintiff there "ma[de] no allegation that [the ban] would impair a single individual from keeping and bearing firearms," and "the record suggest[ed] that no individual's access to firearms would be limited," since the law did not impact any brick-and-mortar retailers. 104 F.4th at 119. But, again, the record in *this* case shows that tens of thousands of individuals *have* faced substantial constraints on their ability to access ammunition as a direct result of the challenged laws. Indeed, if being forced to wait six months to obtain ammunition is not a meaningful constraint, it is difficult to see what is.

The state objects that the Court "did not uphold the regulations challenged in those cases merely by looking to the location where they applied." Pet.12. In fact, that was a critical factor in both cases. *B&L* concluded that "a minor constraint on *the precise locations* within a geographic area where one can acquire firearms" does not meaningfully constrain the right to keep and bear arms. 104 F.4th at 119 (emphasis added; discussing *Teixeira*). In all events, *Nguyen* makes clear that "[l]imiting where firearms may be sold, when there are other reasonably available options, is a significantly lesser interference with an individual's ability to acquire (and therefore possess) firearms than banning the purchase of more than one firearm in a 30-day period." 140 F.4th at 1242. Here, too, California's ammunition-

background-check regime, being a gatekeeper to the means of exercising the right to self-defense (ammunition)—and one that too often unreasonably locks the gate—imposes a significantly greater interference than laws that simply limit where firearms can be sold while leaving citizens free to acquire them down the street.[2]

## II. This Case Does Not Involve A "Shall-Issue" Licensing Regime, And California's Novel Ammunition Regime Is Abusive In All Events.

Unable to muster an intra-circuit conflict, California contends that the panel opinion conflicts with the Supreme Court's guidance on "shall-issue" licensing regimes, as well as *McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024), and *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211 (4th Cir. 2024) (en banc). But this case does not involve a traditional licensing or background-check regime, and the panel went out of its way to make clear that it was not calling either into question.

As the panel explained, "the 43 states' shall-issue licensing regimes cited in *Bruen* generally provided individuals with a license to engage in a course of conduct for a year or several years." Op.47. But "California's ammunition background

---

[2] *United States v. Manney*, 114 F.4th 1048 (9th Cir. 2024), and *United States v. Vlha*, 142 F.4th 1194 (9th Cir. 2025), are even more clearly distinguishable. *Contra* Pet.12-13. In *Manney*, the "regulated *conduct*"—lying—was "unrelated to the possession of a firearm." 114 F.4th at 1053. And in *Vlha*, the court held that "requiring commercial firearm manufacturers to obtain licenses" does not "meaningfully constrain would-be purchasers from obtaining firearms," since there are over 3,500 licensed firearms manufacturers from whom to buy. 142 F.4th at 1200. Here, California's ammunition regime constrains each purchase made by every California resident, *even outside of California*.

check regime requires an ammunition purchaser to undergo a background check prior to each ammunition transaction, regardless of when the last background check occurred." Op.48. *That* is why the panel held that *Bruen* footnote 9 "sheds little light on the question whether a scheme requiring background checks every time a person seeks to purchase ammunition infringes on an ordinary citizen's right to public carry." Op.48; *see* p.7, *supra*. And while "one-time background checks on firearm purchases" are transaction based, one does not need to obtain a firearm repeatedly to exercise Second Amendment rights. Op.31 n.23. Moreover, Congress at least placed an outer limit on how long such a check may delay a purchase (three days). 18 U.S.C. §922(t)(1)(B)(ii). California's innovation of a per-transaction check for each purchase of the consumable good essential to the Second Amendment right is entirely novel, imposes far more serious constraints on the right, and breaks sharply from both traditional licensing regimes and background checks for firearms.[3]

In all events, even if one were to reconceptualize this regime as a (distant) cousin of a shall-issue licensing regime, the result would stay the same. As the state

---

[3] That also distinguishes *Yukutake v. Lopez*, 130 F.4th 1077 (9th Cir. 2025), recently taken en banc. *See* Pet.2. *Yukutake* concerns the permissible length of a *firearm*-acquisition permit and the requirement that a gun, once acquired, be brought to the police for inspection. 130 F.4th at 1099-1104. Those firearm-acquisition issues are far afield of California's idiosyncratic ammunition regime. That said, because even the state agrees that the two cases present "distinct questions," Pet.3, this Court would be better served to hear both cases in tandem than to hold this case for *Yukutake* if it is inclined to reconsider the panel's analysis.

admits, *Bruen* recognized that "any permitting scheme can be put toward abusive ends"—providing as examples schemes in which "lengthy wait times in processing license applications or exorbitant fees" preclude "ordinary citizens" from exercising their rights. 597 U.S. at 38 n.9; *see* Pet.16. This is that case. *See Rhode*, 713 F.Supp.3d at 878. As the district court detailed, "record data mismatches, lengthy and occasionally infinite wait times, and sometimes exorbitant fees, are currently denying ordinary citizens their right to public carry." *Id.* at 876. The state now claims otherwise, *see* Pet.16, but it simply ignores the record evidence—and, as explained, the state did not challenge the district court's factual findings on appeal (or have any basis to do so). All of that likewise distinguishes traditional licensing and background-check regimes, as the problems with California's scheme are as unique as the scheme itself.

Nor can the state find refuge in the dictum from *District of Columbia v. Heller*, 554 U.S. 570 (2008), regarding "laws imposing conditions and qualifications on the commercial sale of arms." Pet.14 (quoting 554 U.S. at 626-27 & n.26). Whatever force that language may have after *Bruen*, it does not govern here. As the Tenth Circuit recently explained, what *Heller* actually "instructed" is that it should not "be taken to cast doubt on *longstanding* … laws imposing conditions and qualifications on the commercial sale of arms." *Ortega v. Grisham*, --- F.4th ----, 2025 WL 2394646, at *4 (10th Cir. Aug. 19, 2025) (emphasis added) (alterations in original).

14

And as California cannot deny, the Nation's first-ever ammunition-background-check regime is about as far as it gets from "longstanding." *See* Op.47 (citing statement from Governor Newsom hailing California's "first-in-the-nation required point-of-sale background checks for the purchase of ammunition").

### III. The Panel Decision Is Supported By Multiple Alternative Grounds For Affirmance And Raises No Question Of Exceptional Importance.

**A.** Even if there were reason to question the panel's application of *Bruen*'s "first step" or the Supreme Court's "presumptively lawful" dictum, reconsidering those issues would not be a good use of the Court's resources given the multiple alternative bases to affirm.

1. As the district court held, 18 U.S.C. §926A preempts California Penal Code §30314, which makes it a crime for residents to personally bring into the state ammunition that is legal for them to have in the state. Section 926A creates a federal-law entitlement to transport ammunition from one place where it is legal to possess to another place where it is legal to possess. While California (subject to the Second Amendment) can prohibit possessing or carrying certain types of firearms or ammunition within its borders, it cannot override the federal-law entitlement that §926A confers to bring into the state arms and ammunition that the state permits.

Judge Bybee insisted that §30314 escapes Section 926A's reach because §30314 makes it unlawful to "possess and carry" ammunition that was not transferred consistent with its point-of-sale requirements. Op.78-79. But California

15

places no restriction on *possession* of ammunition brought into its borders. And by Judge Bybee's circular logic, California could defeat §926A entirely by simply prohibiting the possession of any arm brought from another state. The district court's judgment thus could be affirmed as to §30314 based on its §926A preemption holding alone.

2. California's regime also violates the Commerce Clause by discriminating against out-of-state economic interests. *See Rhode*, 713 F.Supp.3d at 885-86 (so holding). Judge Bybee resisted that conclusion, arguing that "[a] California ammunition retailer faces the same burden as a Nevada or North Carolina ammunition retailer—Either operate a physical location in California or contract with a business that does." Op.75. But that reasoning is foreclosed by Supreme Court precedent: A law that discriminates against out-of-state businesses "is no less discriminatory because in-state [businesses] are also covered by the prohibition." *C&A Carbone, Inc. v. Town of Clarkstown,* 511 U.S. 383, 391 (1994); *see Dean Milk Co. v. Madison*, 340 U.S. 349, 354 n.4 (1951).

**B.** Finally, California claims that preserving its novel regime is exceptionally important because "the background checks [it requires] have prevented hundreds of prohibited persons from acquiring ammunition, for potential use in illegally obtained firearms," and because, since the panel's decision, vendors have purportedly offered to ship ammunition to California residents. Pet.17-18. In other words, California

16

argues that it has an exceptional need to enforce an unprecedented regime that became effective in 2019, was unheard of for at least 240 years before that, and even now exists (somewhat) in only one other state. The district court's unchallenged findings belie that claim. From January to June 2023, the state subjected 583,359 people to ammunition background checks, and deprived tens of thousands of them of ammunition for no rational reason—with only *141* prohibited persons to show for it. *Rhode*, 713 F.Supp.3d at 877. And California has demonstrated little interest in pursuing the few prohibited persons it has turned up. In the second half of 2019, the regime "prompted the arrests of 15 individuals which led to six criminal convictions." *Id.* That is hardly the stuff of exceptional importance.

Perhaps anticipating that problem, California frets that the panel decision "may not be confined to the context of the ammunition background check requirements." Pet.18. But the panel made clear that California's unprecedented ammunition regime differs in critical respects from other background-check regimes. Op.48-49. Again, it is plainly not a licensing regime: Law-abiding citizens do not obtain a license to acquire ammunition once they pass the state's new check; all they obtain is permission to conduct one transaction. They must then go through that same process, again and again, each time they want to purchase ammunition— no matter how many checks they have already passed or how recently. And unlike a firearm, which can be used indefinitely (so long as one has ammunition),

ammunition is good for one use only, so it must be restocked regularly unless one can afford to stockpile it (which hardly seems like something California wants to encourage). The regime thus imposes a much more substantial burden on Second Amendment rights than licensing regimes and background checks to acquire firearms—which likely explains why ammunition background checks were nonexistent for nearly the first two-and-a-half centuries of our Nation.

In sum, this decision is cabined by the extreme, novel features of California's ammunition regime. It does not merit en banc review.

## CONCLUSION

The Court should deny the petition.

Respectfully submitted,

s/ Erin E. Murphy

C.D. MICHEL
SEAN A. BRADY
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
sbrady@michellawyers.com

PAUL D. CLEMENT
ERIN E. MURPHY
MATTHEW D. ROWEN
JEFFREY C. THALHOFER
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Plaintiffs-Appellees*

August 29, 2025

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Circuit Rule 40-1(b) because it contains 4,198 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

August 29, 2025

s/Erin E. Murphy

Erin E. Murphy

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system. I certify that all participants in this case are registered ACMS users and that service will be accomplished by the ACMS system.

s/Erin E. Murphy
Erin E. Murphy